UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

FLOR I. ARRIAZA DE PAREDES and
FRANCISCO HERNAN TEJADA LOPEZ,

    Plaintiffs,

v.

ZEN NAILS STUDIO, LLC,
PHONZ NGUYEN and
LINH NGUYEN,

    Defendants.

Civil Action No. TDC-20-2432

## POST-TRIAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiffs Flor I. Arriaza De Paredes and Francisco Hernan Tejada Lopez filed this action against Defendants Zen Nails Studio, LLC, Phonz Nguyen ("Mr. Nguyen"), and Linh Nguyen ("Ms. Nguyen"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219 (2018), and the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Labor & Empl. § 3–401–417 (West 2017). The Court conducted a five-day bench trial from January 23, 2023 to January 27, 2023. Pursuant to Federal Rule of Civil Procedure 52(a), the Court now provides its findings of fact and conclusions of law. For the reasons set forth below, the Court finds Defendants liable for the claims under the FLSA and the MWHL. Accordingly, the Court will enter judgment for Plaintiffs and award damages as detailed in the accompanying Judgment.

## FINDINGS OF FACT

### FLSA Coverage

***Statutory Requirements***

1. Zen Nails Studio, LLC owned and operated Zen Nails Studio ("Zen Nails"), a nail salon located in Oxon Hills, Maryland which earned over $500,000 in revenue in each year from 2017 to 2020.

2. From 2017 to 2020, Defendants purchased supplies in Virginia every week and transported them into Maryland for use at Zen Nails.

***Employee Status***

3. During certain time periods from 2017 to 2020, De Paredes and Lopez worked at Zen Nails as cleaning staff.

4. Nail salons are subject to various regulations related to sanitation, such that Plaintiffs' cleaning work was integral to and necessary to the operation of the nail salon.

5. During their time working at Zen Nails, neither Plaintiff had any other regular employment.

6. Plaintiffs performed unskilled work and did not have any licenses, certifications, specialized training, or degrees to perform their work at Zen Nails.

7. Neither Plaintiff supervised or employed any other individuals to complete their cleaning assignments.

8. With very limited exceptions, Plaintiffs used supplies provided by Defendants to perform their work.

9. Plaintiffs had a regular weekly schedule under which they were required to be present at Zen Nails during certain hours each workday. Any significant deviations from this schedule required management approval.

10.     Both Mr. Nguyen and Ms. Nguyen supervised Plaintiffs' work, assigned duties to Plaintiffs, and set their work schedules.

*Employer Status*

11.     Mr. Nguyen was a 51 percent owner of Zen Nails Studio, LLC, and Ms. Nguyen was a 49 percent owner.

12.     Mr. Nguyen and Ms. Nguyen both had the authority to hire and fire Plaintiffs and other employees.

13.     Mr. Nguyen and Ms. Nguyen both exercised control over Plaintiffs' work activities and supervised their work.

14.     Mr. Nguyen and Ms. Nguyen set Zen Nails' business hours and Plaintiffs' and other employees' work schedules.

15.     Mr. Nguyen and Ms. Nguyen created, maintained, and had access to records relating to employment at Zen Nails, including paycheck stubs, bank records relating to payment of wages, and text messages memorializing approved absences.

## Wage Claims

*Wage Payments*

16.     From mid-April 2017 to December 3, 2017, De Paredes was paid $90 per day, regardless of the number of hours worked, except for the pay periods of August 28, 2017 to September 3, 2017 and October 16, 2017 to October 22, 2017, during which De Paredes was paid $100 per day. From December 4, 2017 to March 8, 2020, De Paredes was paid $100 per day, regardless of the number of hours worked. From June 22, 2020 to July 18, 2020, De Paredes was paid $110 per day, regardless of the number of hours worked, except for the pay periods between July 6, 2020 and July 18, 2020, during which De Paredes was paid $100 per day.

17. From August 18, 2017 to February 24, 2019, Lopez was paid $100 per day, regardless of the number of hours worked. From February 25, 2019 to July 18, 2020, Lopez was paid $110 per day, regardless of the number of hours worked.

18. Plaintiffs were paid half of their weekly pay by check and half in cash, such that the number of days worked in a specific week can be determined by the existence and amount of the paycheck.

19. Plaintiffs were not given additional pay at 1.5 times the regular rate for hours worked over 40 hours in a week.

20. On various Friday nights or Saturday nights, Plaintiffs received cash payments of $10 to $20 each in recognition of hard work, staying later than usual, or both.

21. Defendants did not keep or maintain accurate pay records for Plaintiffs.

*Work Schedule*

22. As relevant to this case, De Paredes worked between August 21, 2017 and March 8, 2020 and from June 22, 2020 to July 18, 2020, and Lopez worked between August 21, 2017 and March 15, 2020 and from June 22, 2020 to July 18, 2020 (collectively, "the relevant time period").

23. During the relevant time period, Lopez typically worked six days per week, from Monday to Saturday, and De Paredes typically worked five days per week, from Tuesday to Saturday.

24. The posted store hours for Zen Nails were 10:00 a.m. to 8:00 p.m. on Mondays through Thursdays; 9:00 a.m. to 8:00 p.m. on Fridays and Saturdays; and 11:00 a.m. to 5:00 p.m. on Sundays.

25. Typically, Plaintiffs arrived at Zen Nails approximately one hour before the store's posted opening time, at approximately 9:00 a.m. on Mondays, Tuesdays, Wednesdays, and Thursdays; 8:00 a.m. on Fridays and Saturdays; and 10:00 a.m. on Sundays on which they worked.

26. On average, Plaintiffs left work approximately 30 minutes after the posted closing time, at approximately 8:30 p.m. on Mondays through Saturdays, and at approximately 5:30 p.m. on Sundays.

27. Based on text messages about their work schedule, and the fact that either Mr. Nguyen or Ms. Nguyen was typically present at Zen Nails until or after Plaintiffs left for the day, Defendants were aware of the hours worked by Plaintiffs.

*Time Off*

28. Plaintiffs' work schedule did not include any formal breaks. Each was generally permitted to take breaks, including a lunch break, if the other was engaged in cleaning. In some instances, De Paredes or Lopez was interrupted and called upon to work during an informal lunch break.

29. Plaintiffs were permitted to leave Zen Nails without requesting specific permission for brief periods of time, such as to buy lunch and bring it back to the nail salon. Otherwise, Plaintiffs were required to request and receive permission, usually via text message, to leave Zen Nails during regular working hours, such as to attend church, attend to legal matters, pick up De Paredes's daughter or attend school events, handle car repairs, or address medical issues.

30. Including uninterrupted lunch breaks, short departures from Zen Nails, and longer, approved absences from Zen Nails, De Paredes typically took approximately 5.5 hours of time off from the regular work schedule each week.

31. Including uninterrupted lunch breaks, short departures from Zen Nails, and longer, approved absences from the nail salon, Lopez typically took approximately 6.0 hours of time off from the regular work schedule each week.

***Regular Pay Rates***

32.     Based on the findings above, De Paredes typically worked 54 hours per week during a standard five-day work week, and Lopez typically worked 65 hours per week during a standard six-day work week.

33.     Based on the findings above, for a typical 54-hour work week, De Paredes had effective regular pay rates of $8.31 per hour when she was paid $90 per day and $9.26 per hour when she was paid $100 per day. The effective regular pay rate differed in certain weeks based on differences in the number of days or hours worked, or the daily pay rate.

34.     Based on the findings above, for a typical 65-hour work week, Lopez had effective regular pay rates of $9.23 per hour when he was paid $100 per day and $10.15 per hour when he was paid $110 per day. The effective hourly pay rate differed in certain weeks based on differences in the number of days or hours worked.

## Good Faith

35.     In 2016, Defendants received and posted a Fair Labor Standards Act poster at Zen Nails describing employees' rights and were aware of an employer's general obligation to pay minimum wage and overtime pay to its employees.

36.     In establishing and maintaining Plaintiffs' pay arrangements, including not paying an overtime premium rate for hours exceeding 40 hours in a week, Defendants did not obtain the advice of an attorney or consult any legal materials. Although Mr. Nguyen retained an accountant for Zen Nails, he did not seek or receive advice from the accountant on whether Plaintiffs' pay arrangements complied with the FLSA or state wage laws.

37.     In 2017, Defendants retained ADP, a management services company, to assist with payroll and tax issues. On one occasion, an ADP representative told Mr. Nguyen that workers who set

their own schedules are independent contractors, and workers who work pursuant to a schedule set by their company are employees. Defendants otherwise neither sought nor received any guidance on whether their pay arrangements for Plaintiffs complied with the FLSA or state wage laws.

**Loan**

38.     Currently, Lopez owes Defendants $1,200 on a loan issued to him by Mr. Nguyen.

### CONCLUSIONS OF LAW

1.     Under the FLSA, no employer shall "employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). To prevail on a FLSA overtime claim, Plaintiffs must show that: (1) they were employed by Defendants; (2) they worked overtime hours for which they were not properly compensated; and (3) Defendants had knowledge of the hours worked. *See Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986); *Bailey v. Cnty. of Georgetown*, 94 F.3d 152, 157 (4th Cir. 1996).

2.     When an employer fails to maintain accurate pay records, the employee must produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Upon such a showing, the burden shifts to the employer to present evidence of the exact number of hours worked or "evidence to negat[e] the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687–88.

7

3. The MWHL requires that employers "pay an overtime wage of at least 1.5 times the usual hourly wage." Md. Code Ann., Labor & Empl. § 3–415(a). The requirements under the MWHL mirror those of the federal law. *McFeeley v. Jackson Street Entm't, LLC*, 47 F. Supp. 3d 260, 267 n.6 (D. Md. 2014). Accordingly, Plaintiffs' overtime claims under the MWHL stand or fall on the success of their claims under FLSA. *See id.*

4. Maryland law required that employers pay employees a minimum wage of $9.25 per hour between July 1, 2017 and June 30, 2017; $10.10 per hour between July 1, 2018 and December 31, 2019; and $11.00 per hour between January 1, 2020 and December 31, 2020. Md. Code Ann., Labor & Empl. § 3–413(c). The failure to pay an employee at the minimum wage violates the MWHL. *Id.* § 3–413(b).

5. During the relevant time period, Zen Nails was "an enterprise engaged in commerce or the production of goods for commerce" that had annual gross sales of at least $500,000. 29 U.S.C. §§ 203(s)(1), 207(a)(1). Zen Nails was therefore an employer covered by the FLSA.

6. Under the FLSA, whether an individual is an employee, rather than an independent contractor, is determined based on consideration of the following non-dispositive factors: (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business. *Schultz v. Cap. Int'l Sec., Inc.*, 466 F.3d 298, 304–05 (4th Cir. 2006). Based on the Findings of Fact relating to these factors, Plaintiffs were employees of Zen Nails Studio, LLC for purposes of the FLSA.

7. Under the FLSA, whether an individual is properly deemed to be an "employer" is determined based on the "economic reality test," which requires consideration of the following non-dispositive factors: whether the alleged employer (1) had power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 83 (4th Cir. 2016). Based on the Findings of Fact relating to these factors, Mr. Nguyen and Ms. Nguyen were employers of Plaintiffs for purposes of the FLSA.

8. Under the FLSA, an employer must pay an employee at the overtime rate of one and one-half times the regular rate for any hours worked over 40 hours per week. 29 U.S.C. § 207(a). The employer must have had knowledge, either actual or constructive, of the overtime work performed. *Bailey*, 94 F.3d at 157.

9. For purposes of the FLSA, work is defined as physical or mental exertion, whether burdensome or not, controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business. *Tenn. Coal, Iron & R.R. Co. v. Muscoda Loc. No. 123*, 321 U.S. 590, 598 (1944); *Roy v. Cnty. of Lexington*, 141 F.3d 533, 544 (4th Cir. 1998). Time spent taking breaks is excluded from hours worked for purposes of the FLSA if the employees use the time for their own benefit rather than predominantly for their employer's benefit. *Roy*, 141 F.3d at 544. Here, the uninterrupted lunch breaks and excused absences referenced in the Findings of Fact are properly excluded from Plaintiffs' hours worked for FLSA purposes.

10. Total compensation applicable to the determination of an employee's regular pay rate does not include amounts paid "in recognition of services performed during a given period if," as

9

relevant here, "the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly." 29 U.S.C. § 207(e)(3). Such payments are also not creditable toward overtime compensation owed to the employee. *Id.* § 207(h). Accordingly, the periodic $10 or $20 extra payments paid to Plaintiffs on certain weekend nights are not creditable toward the payment of minimum wage or overtime pay.

11. Based on the Findings of Fact above, Defendants violated the FLSA and MWHL by failing to pay overtime to De Paredes in each week that she worked during the relevant period. In most weeks, De Paredes worked 54 hours, so Defendants failed to pay the overtime premium on 14 hours during those weeks. In certain other weeks, the number of overtime hours differed based on the number of days worked as determined by the paycheck for that week.

12. Based on the Findings of Fact above, Defendants violated the FLSA and MWHL by failing to pay overtime to Lopez in each week that he worked during the relevant period, with the exception the weeks beginning on November 20, 2017 and November 27, 2017. In most weeks, De Paredes worked 65 hours, so Defendants failed to pay the overtime premium on 25 hours during those weeks. In certain other weeks, the number of overtime hours differed based on the number of days worked as determined by the paycheck for that week.

13. Based on the Findings of Fact above, Defendants violated the MWHL by failing to pay De Paredes the minimum wage in all weeks during the relevant time period except for the weeks from October 16, 2017 through July 1, 2018.

14. Based on the Findings of Fact above, Defendants violated the MWHL by failing to pay Lopez the minimum wage during the relevant time period in all weeks except for the weeks

beginning on August 21, 2017, October 2, 2017, October 9, 2017, October 23, 2017, November 20, 2017, December 25, 2017, January 1, 2018, March 12, 2018, and May 21, 2018; the weeks from February 25, 2019 to May 12, 2019; the weeks from May 20, 2019 to June 16, 2019; the week beginning on June 24, 2019; the weeks from July 8, 2019 to October 20, 2019; the weeks beginning on October 28, 2019 and November 11, 2019; and the weeks from December 2, 2019 to December 22, 2019.

15. Based on the Findings of Fact above, Defendants failed to pay De Paredes legally owed overtime pay and minimum wages in the amount of $14,932.18 and failed to pay Lopez legally owed overtime pay and minimum wages in the amount of $19,163.64.

16. The FLSA provides for mandatory liquidated damages in an amount equal to the unpaid overtime compensation. 29 U.S.C. § 216(b); *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 375 (4th Cir. 2011). The MWHL provides for mandatory liquidated damages in an amount equal to the difference between the wages paid to an employee and the wages required to be paid under the MWHL. Md. Code Ann., Labor & Empl. § 3–427(d)(1)(ii).

17. The FLSA further provides that "if the employer shows to the satisfaction of the court that the act or omission giving rise to [the FLSA] action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA] . . . the court may, in its sound discretion, award no liquidated damages or award any amount thereof" not to exceed the statutory maximum. 29 U.S.C. § 260. To find that an employer acted in good faith, the factfinder must find that the employer acted in good faith on a reasonable belief that there was a legal basis to fail to pay wages. *Roy*, 141 F.3d at 548–49; *Perez*, 650 F.3d at 375–76; *McFeeley v. Jackson Street Entm't, LLC*, 825 F.3d 235, 245 (4th Cir. 2016). While a defendant need not "seek an opinion letter" to avoid paying liquidated damages, *Roy*, 141 F.3d at 548–59, a defendant

11

may not avoid liquidated damages based on a "mere assumption" that its pay practices complied with the FLSA. *McFeeley*, 825 F.3d at 245. Rather, the good faith exception requires a showing not just that there was a reasonable basis for failing to comply with the FLSA, but that there were "reasonable grounds for believing that [the employer's] act or omission was not a violation of the [FLSA]" as demonstrated by some reliance on legal advice or the equivalent. 29 U.S.C. § 260; *see McFeeley*, 825 F.3d at 245; *Roy*, 141 F.3d at 548–49; *Perez*, 650 F.3d at 375–76. Where Defendants neither sought nor obtained any guidance regarding compliance with the FLSA with the possible exception of the information provided by the ADP representative, and where under that guidance Plaintiffs would plainly qualify as employees because they worked schedules set by Defendants, Defendants have failed to establish the good faith exception and are therefore liable for liquidated damages.

18. Pursuant to 29 U.S.C. § 216(b) and Md. Code Ann., Labor & Empl. § 3–427(d)(1)(ii), Defendants are liable for liquidated damages in the amount of $14,932.18 to De Paredes and $19,163.64 to Lopez. In total, Defendants are liable for damages in the amount of $29,864.36 to De Paredes and $38,327.28 to Lopez.

18. To establish a breach of contract under Maryland law, a plaintiff must prove "that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001). Based on the parties' stipulation, Lopez breached a contractual obligation to repay a loan provided by Mr. Nguyen and is liable in the amount of $1,200.

Date: February 24, 2023

THEODORE D. CHUANG
United States District Judge