IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

FLOR I. ARRIAZA DE PAREDES, *et al*.,

    *Plaintiffs*,

    v.

ZEN NAILS STUDIO LLC, *et al*.,

    *Defendants*.

Civil Action No.: 20-2432-TDC

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION FOR ATTORNEY'S FEES AND COSTS**

**INTRODUCTION**

Plaintiffs' counsel seek $344,738.64 in attorney's fees and $39,951.56 in costs. The $344,738.64 figure is after Plaintiffs made a voluntary reduction in the attorney's fees. The amount of the voluntary reduction is $131,303.26, which represents an overall reduction of 27.6%.

Plaintiffs brought action against Defendants seeking unpaid straight-time, minimum wages and overtime wages under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; and the Maryland Wage and Hour Law ("MWHL"), Labor & Empl. Art. §§ 3-415 and 3-427. ECF No. 1. Plaintiffs prevailed on every issue following lengthy litigation, protracted discovery, and a 4.5-day trial. And they recovered $66,991.64 in damages.

Defendants litigated the case to the bitter end in a scorched-earth manner, contesting nearly every conceivable issue and they vigorously objected to witness testimony and proposed exhibits. Defendants' choice to litigate the case aggressively means that they are not in a position to complain about the amount of fees incurred by Plaintiffs' counsel. *See City of Riverside v. Rivera*, 477 U.S. 561, 580 n. 11 (1986). Defendants' last two settlement offers were inadequate. The Defendants' last offer was for $175,000 inclusive of damages and attorney's fees and costs and it

1

was made on January 22, 2023, the day before trial. The previous offer was for $100,000, also inclusive of damages, fees and costs and it was made on March 16, 2022. For the reasons explained below and in light of Plaintiffs 27.6% reduction, the Court should grant the motion and award the attorney's fees sought, including any supplemental fees incurred by Plaintiffs in connection with preparing their reply brief.

## ARGUMENT

### I.      GOVERNING LEGAL PRINCIPALS AND PREVAILING PARTY STATUS

Under the FLSA, a successful plaintiff is entitled to recover his "reasonable attorney's fee[,]" as well as "costs of the action[,]" against a defendant. 29 U.S.C. § 216(b). Plaintiffs prevailed on all claims and obtained liquidated damages. ECF Nos. 219 at 14-16, 239. Accordingly, Plaintiffs are prevailing parties. The Fourth Circuit utilizes the three-step "Lodestar Analysis" to calculate the appropriate award of attorneys' fees. *Grissom v. The Mills Corp.*, 549 F.3d 313, 320–21 (4th Cir. 2008); *Lyle v. Food Lion, Inc.*, 954 F.2d 984, 988 (4th Cir. 1992). Step one requires the Court to compute the loadstar by multiplying the "reasonable hourly rate," by a "reasonable number of hours expended." *Id*. A "strong presumption" exists that the lodestar is a reasonable fee and this presumption is overcome only "'in those rare circumstances where the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" *McAfee v. Boczar*, 738 F.3d 81, 88-89 (4th Cir. 2013), as amended (Jan. 23, 2014) (quoting *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 554 (2010)). The Court's loadstar analysis considers twelve factors set forth in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974) (the "*Johnson* Factors"). 738 F.3d at 88.

## II.     PLAINTIFFS' COUNSEL'S RATES ARE REASONABLE

### A.  PLAINTIFFS' COUNSEL IS ENTITLED TO CURRENT MARKET RATES TO COMPENSATE THEM FOR THE TIME VALUE OF MONEY SINCE THIS CASE HAS BEEN PENDING FOR NEARLY THREE YEARS

A prevailing plaintiff in fee-shifting litigation is entitled to attorney's fees at "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). "A reasonable attorney's fee is one that is adequate to attract competent counsel, but . . . [that does] not produce windfalls to attorneys." *Id*. at 893-94. Because Counsel began representing Plaintiffs on July 29, 2020, almost three years ago and to date, has not received any payment for services, O. Melehy Decl., Ex. B, ¶ 29, current market rates are appropriate,[1] *Missouri v. Jenkins*, 491 U.S. 274, 283 (1989). "'[C]ourts have regularly recognized the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value.'" *Id*. at 282 (quoting *Pennsylvania v. Delaware Valley Citizens' Council*, 483 U.S. 711, 716 (1987)). *See also Perdue v. Kenny A*., 559 U.S. at 556 (same). Awarding compensation at current rates "roughly approximate[s] periodic compensation adjusted for inflation and interest ...." *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983), disapproved on other grounds, *Pennsylvania v. Delaware Valley Citizens' Council*, 483 U.S. at 171 n.4.

Therefore, the Court should award Plaintiffs current market rates.

---

[1] In *Johannssen v. District No. 1-Pacific Coast Dist, MEBA Pension Plan*, 292 F.3d 159 (4th Cir. 2002) the time that had elapsed between the filing of the law suit and the trial court's fee award was five years. *Id*. at 167. The trial court declined to award the prevailing party current market rates and the Fourth Circuit reversed. *Id.* at 180. It noted that "consideration of the effect on the value of the fee is mandatory as part of a consideration of what is reasonably compensatory." *Id*.

**B. THE RATES SOUGHT BY PLAINTIFFS ARE BELOW CURRENT MARKET RATES IN BALTIMORE FOR EMPLOYMENT LAWYERS OF SIMILAR SKILL AND EXPERIENCE**

This Court has frequently awarded rates set forth in Appendix B of the Local Rules of this Court, but it has sometimes departed from it.[2] However, Appendix B is meant only to provide "practical guidance to lawyers and judges when requesting, challenging and awarding fees." Appendix B (3), n.6. If there is "an increase in the cost of legal services since the adoption of the guidelines," that would justify higher rates. *Id.* There are several reasons why Appendix B does not reflect current market rates for employment attorneys in Baltimore or in Maryland generally. First, it was last updated on July 1, 2014, which is almost nine years ago. *See Morataya v. Nancy's Kitchen of Silver Spring, Inc.*, GJH-13-01888, 2016 WL 6634856, at *3 n.2 (D. Md. Nov. 8, 2016). Since that time, attorney fee rates have indisputably increased. In addition, the schedule does not adequately account for experience above 20 years, which has significant value in the marketplace. The Fitzpatrick Matrix compiled by the United States Attorney's Office, includes brackets for less than one year of experience to 35 years of experience, which more accurately reflects the realities of the marketplace. *See* Fitzpatrick Matrix, Ex. B.

The rates sought by Plaintiffs are as follows:

| | | |
|---|---|---|
| Omar Vincent Melehy (36 years of experience): | $625 per hour; |
| Suvita Melehy:          (27 years of experience): | $575 per hour; |
| Andrew Balashov:       (7 years of experience): | $350 per hour; |
| Law Clerks and Paralegals: | $180 per hour. |

M&A is a firm located in Montgomery County Maryland and the above rates are its normal and customary rates and those currently charged to paying clients. *See* Melehy Decl. ¶ 28, Ex. B.

---

[2] *See e.g. Duvall v. O'Malley, No*. No.: ELH-94-2541, 2016 WL 3523682, at *14 (D.Md. June 28, 2016).

These rates are consistent with current market rates for attorneys of similar skill and experience practicing employment law in Baltimore. In July 2021, Joseph Espo, a partner at Brown Goldstein & Levy, LLP ("BGL") in Baltimore provided an opinion in *Carrrera v. EMD Sales Inc.*, No. JKB-17-3066 (D. Md. Northern Division) about market rates for attorneys with similar experience in the field of employment law. According to Mr. Espo, two years ago, his firm charged an hourly rate of $625 per hour for partners with comparable experience to Mr. Melehy (then 34 years), between $525 and $595 per hour for attorneys with comparable experience to Ms. Melehy (then 26 years), and $360 per hour for attorneys with comparable experience to Mr. Balashov (then 5 years). Espo Decl. ¶¶ 1, 4-5, Ex. D. BGL's rates are reflective of market rates in July 2021 because the firm reviews and considers rates charged by other firms and attorneys in Maryland when it sets its rates. *Id.* ¶ 6. Additionally, Mr. Espo opined that both BGL's rates and the rates sought by Plaintiffs are at or below market rates for attorneys in Baltimore that practice employment law. *Id.* ¶¶ 6, 9.

The rates sought by M&A are also supported by the declaration of Michal Shinar, Senior Counsel at Joseph Greenwald and Laake, a firm located in Greenbelt, Maryland. Michal Shinar practices employment law and she opined that the rates being sought in this case by Omar Melehy, Suvita Melehy and Andrew Balashov and their paralegals and law clerks "are at or below prevailing market rates in the locality where this action is pending, which is the Southern Division of the Maryland District Court located in Greenbelt, Prince George's County." Shinar Decl. ¶¶ 1, 4, 11, 12. Moreover, she opined that such rates are consistent with those charged to fee paying clients. *Id.* ¶ 13.

Furthermore, the rates sought by Plaintiffs here are far less than those charged by larger firms practicing employment law in the Baltimore area. For example, Littler Mendelson, P.C., a

firm well-known in the employment law field, submitted an application for final allowance of fees and costs incurred in a Bankruptcy case in November 2020 in the Southern Division (Greenbelt). *See* Final Application, *In re: Creative Hairdressers, Inc*., *et al*., Case No. 20-14583, ECF No. 778. Littler was hired by the debtors as "Special Employment Counsel" and its role in the bankruptcy case was "solely with respect to labor and employment issues." *Id*. at 3. The rates applied for by Littler, as employment counsel, were as follows:

| | | |
|---|---|---|
| Bruce R. Millman | (then 47 years of experience) | $830 per hour; |
| Steven J. Friedman | (then 35 years of experience) | $850 per hour; |
| Robert C. Long | (then 41 years of experience) | $840 per hour; |
| Shawn M. Clark | (then 8 years of experience)[3] | $470 per hour. |

*Id*. at 6. Littler represented to the Court that those rates "are the normal and customary rates charged . . . for its services to debtors, trustees and committees in other bankruptcy cases ***and to clients in matters not involving bankruptcy in the Baltimore area."*** *Id.* at 11 (Emphasis supplied). And the Bankruptcy Court approved them on December 22, 2020. *Id*. ECF No. 793. Moreover, the 2021 Wolters Kluwer survey of law firm rates shows that average rates for attorneys practicing labor and employment law in Baltimore in 2021 were $645 for partners and $514 for associates. Walters Kluwer Real Rate Report, Ex. E. Those rates are higher than the normal and customary rates charged by Plaintiff's counsel.

 The rates Plaintiffs seek are below current market rates for Baltimore employment lawyers and therefore, those rates should be awarded to Plaintiffs' counsel.

---

[3] These dates were obtained from Littler's website: www.littler.com.

## C. APPENDIX B RATES ARE NOT CONSISTENT WITH CURRENT MARKET RATES BECAUSE THEY HAVE NOT BEEN UPDATED IN NINE YEARS AND BECAUSE THE LAST BRACKET (FOR 20-PLUS YEARS) DOES NOT ACCURATELY REFLECT MARKET RATES FOR ATTORNEYS WITH SUBSTANTIALLY MORE YEARS OF EXPERIENCE.

By all accounts, the cost of legal services in Baltimore has risen substantially since July 1, 2014, when Appendix B was last updated. This is evident from the declaration of Joe Espo. From 2015 to July 2021, Mr. Espo's (who has been practicing for 31 years) hourly rate increased from $475 per hour to $595 per hour, an increase of 25%. Ex. D ¶ 7. During the same time frame, the rates charged by more experienced lawyers (with 30-plus years of experience) in his firm were much higher to begin with and then increased a more modest amount (from $575 per hour to $625 per hour). *Id*.

Appendix B rates must therefore be adjusted to reflect current market rates. A recognized method for doing so is to apply the Legal Services Index ("LSI"). The LSI is part of the Consumer Price Index ("CPI") and the data is contained on the Bureau of Labor and Statistics ("BLS") web site. Wilson Decl. ¶¶ 1,2, Ex. F. And Courts utilize the LSI to update fee schedules. *See Interfaith Community Organization v. Honeywell Intern., Inc*., 726 F.3d 403, 415 (3d Cir. 2013) (Approving application of the LSI in updating the Laffey Matrix to reflect current rates). In *Sullivan v. Sullivan*, 958 F.2d 574 (4th Cir. 1992), the Fourth Circuit was faced with the question of whether to bring the Equal Access to Justice ("EAJA") Fee Schedule current by utilizing either the general CPI (cost of living) or the LSI (cost of legal services). *Id*. at 575. The Court held the EAJA, by its restrictive language, permitted increases only based on the general CPI and it directed the trial court to utilize that methodology. *Id*. at 578. However, the Court noted that the use of the LSI would have yielded the "prevailing market rates," which was not the intent of Congress when it enacted the EAJA. *Id*. at 577-78.

Even the Local Rules for the United States Bankruptcy Court for the District of Maryland contain a provision which provides for the ***automatic adjustment*** of the presumptively reasonable rates that practitioners can charge for certain bankruptcy cases. *See* Local Rules for the Maryland Bankruptcy Court, Ver. 16.1 (August 1, 2016), Appendix F. That provision states that the presumptively reasonable fee shall be updated beginning April 1, 2016, and every three years thereafter, based on the increase in the Consumer Price Index for All Urban Consumers. *Id*. Appendix B contains no analogous provision to adjust the rates for inflation.

If the Appendix B rates are adjusted using the LSI, the resulting rates (hereinafter referred to as the "Adjusted Appendix B rates") are as follows:

| Appendix B Category | Current Appendix B Rates | Rate Adjustment Based on LSI |
|---|---|---|
| Lawyers admitted to the bar for less than 5 years | $150-225 | $192[4]-$287 |
| Lawyers admitted to the bar for 5-8 years | $165-$300 | $211-$383 |
| Lawyers admitted to the bar for 9-14 years | $225-$350 | $287-$447 |
| Lawyers admitted to the bar for 15-19 years | $275-$425 | $351-543 |
| Lawyers admitted to the bar for 20 or more years | $300-$475 | $383-606 |
| Paralegals and Law Clerks | $95-$150 | $121-192 |

*See* Wilson Decl. ¶¶ 4, Ex. F; LSI Adjustments to Appendix B, Ex. G.

Moreover, Appendix B's 20-plus years bracket underestimates market rates for attorneys with more than 25 years of experience. After the adjustments, the rates sought by Mr. Balashov (7 years), Ms. Melehy (27 years) and M&A's Law Clerks and paralegals all fall within the adjusted Appendix B rates. Mr. Melehy's rate (at 36 years of experience) does not. This is the result of the one size-fits-all 20 plus years bracket. The other brackets involve 3-5-year time spans, but the final 20-year-plus bracket encompasses anywhere from 20 to 50 years of experience. The problem with

---

[4] Amounts have been rounded up to the nearest dollar.

the 20-year bracket is that in reality, attorneys with 25 or more years of experience have higher rates than the top adjusted Appendix B rate. For example, from 2015 to the present, rates at BGL for attorneys with comparable experience to Mr. Melehy were $575 per hour in 2015 and rose to $625 per hour in 2021. Ex. D ¶ 7.

Therefore, the rates sought by Plaintiffs in this case are reasonable.

## II.   INITIAL LODESTAR – THE HOURS EXPENDED BY PLAINTIFFS ARE REASONABLE UNDER THE LODESTAR AND JOHNSON-FACTORS ANALYSIS.

Plaintiffs have categorized the time spent by reference to the Appendix B "litigation phase" categories, and where appropriate, they have added subcategories. In the proceeding sections, Plaintiffs explain why the time expended in each category was reasonable and necessary to the successful litigation of this case. To put the work into context, Plaintiffs rely upon the affidavit testimony of their lead counsel, Omar Vincent Melehy (Ex. B) and Suvita Melehy (Ex. H).

### A. VOLUNTARY REDUCTIONS BASED ON THE EXERCISE OF BILLING JUDGMENT.

Omar Melehy reviewed each individual time entry and no-charged entries that were duplicative, redundant or unnecessary or for time spent pursuing motions which were completely unsuccessful. *Id*. Specifically, Mr. Melehy also no-charged time where two or more attorneys attended a hearing (with the exception of the pre-trial hearing and trial) or met with one another. In those instances, Plaintiffs are only seeking the time for the senior attorney. *Id*. ¶ 30. After the no charges, the value of the time was reduced from $476,041.90 to $422,695.90, a reduction of $53,346.00. Ex. B ¶ 30. Mr. Melehy then made percentage reductions to the certain categories of work to account for the large number of hours spent on some aspects of the case. These reductions included:  Discovery (15%), Trial Preparation (20%), Trial Attendance (20%) and Fee Petition Preparation (20%) (the categorical reductions are collectively valued at $59,813.13, bringing the

new total to $362,882.78.) *Id.* ¶ 30. Following the categorical reductions, Mr. Melehy applied a

5% across-the-board reduction (valued at $18,144.14) to account for the degree of success,

bringing the total to $344,738.64. *Id.* ¶ 30. The spreadsheet showing the time for which

compensation is sought (and also showing no-charges) is Ex. A. *Id.* ¶¶ 30,31. All in all, Plaintiffs

have voluntarily reduced their attorney's fees by $131,303.26.

### B. AN ACROSS-THE-BOARD REDUCTION OF NO MORE THAN 5% IS WARRANTED FOR PLAINTIFFS' DEGREE OF SUCCESS (OBTAINING 60% OF THE DAMAGES THAT THEY SOUGHT AT TRIAL)

At trial, Plaintiffs sought total damages of $111,946.72 but received a total of $66,991.64

(60% of the amount sought). P's Exs. 57A, 58A; ECF No. 108. This degree of success warrants

no more than a 5% across-the-board reduction.

The first question is whether Plaintiffs prevailed on all claims and if the answer is yes (as

it is here), then the Court must evaluate the degree of success, *Hensley v. Eckerhart*, 461 U.S. 424,

434-35 (1983), which means "'compar[ing] the amount of damages sought to the amount

awarded,'" *McAfee v. Boczar*, 738 F.3d at 92-93 (quoting *Mercer v. Duke Univ.*, 401 F.3d 199,

204 (4th Cir. 2005)) along with the public benefit advanced by the case, *see City of Riverside v.

Rivera*, 477 U.S. 561, 575 (1986). In this district, reductions for partial success have been made

only when relief obtained is significantly less than half of the relief sought. *See also Saman v.

LBDP, Inc.*, Civil Action No.: DKC 12-1083, 2013 WL 6410846 *8 (December 6, 2013) (No

reduction for degree of success, when a FLSA plaintiff sought $33,000 but obtained $28,000

(essentially 85% success)). In this case, Plaintiffs recovered 60% of what they sought and therefore

only a 5% across-the-board reduction is appropriate. *See Ramirez v. 316 Charles, LLC*, Civil Case

No.: SAG-19-03252, 2021 U.S. Dist. LEXIS 31327 at 18-22, 2021 WL 662185 at *7 (D. Md.

February 19, 2021) (Reducing attorney's fees by 5% because the plaintiff's "overall recovery

[was] 54% of the amount originally sought"); *Matias Guerra v. Teixeira*, Civil Action No.: TDC-16-0618, 2019 WL 3927323 *9-10 (D. Md. August 20, 2019) (reducing loadstar by only 5% when the plaintiff recovered 62% of what he sought).

Therefore, an across-the-board reduction of 5% is appropriate based on the degree of Plaintiffs' success.

### C. THE COURT SHOULD NOT CONSIDER PROPORTIONALITY BETWEEN THE AMOUNT OF THE UNDERLYING JUDGMENT AND THE AWARD OF ATTORNEY'S FEES AND COSTS.

No reduction in attorney's fees is warranted or appropriate merely because the amount of attorney's fees and costs exceeds Plaintiffs' total recovery. The Supreme Court has rejected such a proportionality requirement. *See City of Riverside v. Rivera*, 477 U.S. at 574 (affirming a $245,000.00 fee award which was more than seven times the $33,000 recovery). The *Riverside* Court concluded that "[a] rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts and would be totally inconsistent with Congress' purpose of ensuring sufficiently vigorous enforcement of civil rights." *Id.* at 561. *See Jones v. Southpeak Interactive Corp. of Del.*, 777 F.3d 658, 676 (4th Cir. 2015). The FLSA is a civil rights statute and the *Riverside* principles apply. *See Jackson v. Estelle's Place*, LLC, 391 Fed. Appx. 239, 248 (4th Cir. 2010) ("Thus, the public interest promoted by civil rights statutes, such as the FLSA, 'is perhaps most meaningfully served by the day-to-day private enforcement of these rights, which secures compliance and deters future violations'").

In *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311 (4th Cir. 2006), the Court noted that:

Awards of attorney's fees substantially exceeding damages are not unusual in civil rights litigation. *See, e.g., Mercer v. Duke Univ.,* 401 F.3d 199, 211–12 (4th Cir.2005) (affirming $349,244 in attorney's fees awarded in Title IX suit yielding only nominal damage award); *Wadsworth v. Clindon,* 846 F.2d 265, 266–67 (4th Cir.1988) (affirming $13,317

in attorney's fees awarded in Fair Housing Act suit yielding $1,000 in compensatory damages); *Northington v. Marin,* 102 F.3d 1564, 1570–71 (10th Cir.1996) (affirming $93,649 in attorney's fees awarded in § 1983 suit yielding $5,000 judgment); *Estate of Borst v. O'Brien,* 979 F.2d 511, 517 (7th Cir.1992) (affirming $47,254 in attorney's fees in § 1983 suit yielding $500 in compensatory damages and $500 in punitive damages).

*Id.* at 328 n.20. *See also Thurairajah v. City of Fort Smith, Arkansas*, 3 F.4th 1017, 1028-30 (8th Cir. 2021) (Affirming award of $15,100.00 in attorney's fees when the amount of the judgment was $1.00); *Cook v. Greenleaf Township, Michigan*, 861 Fed. Appx. 31, 37-39 (6th Cir. June 15, 2021) (Affirming award of $137,725.50 in attorney's fees when the plaintiff obtained a judgment of $500).

In this case, Plaintiff is seeking an award of $384,690.20 for attorney's fees and costs, which is approximately 5.7 times the amount of the judgment. This difference alone does not justify a reduction in the attorney's fees and costs.

### D. THE TIME AND LABOR EXPENDED (1st Johnson Factor)

All time and attorneys' fees values listed below are before the across-the-board reduction of 5%.

### 1. CASE DEVELOPMENT (13.2 hours valued at $5,845.50) (no categorical reduction)

The work in this category spans the duration of this case. This category includes various case management duties including reviewing the case management orders, the scheduling orders, preparing status reports, conducting some discussions with the Plaintiffs about development of the case and other similar tasks. Plaintiffs wrote off 5.4 hours as no charges. The remaining time was reasonable and compensable, as it was handled mainly by lower-level time-keepers.

**2.      PLEADINGS (7.5 hours with a value of $2,746.00) (no categorical reduction)**

This category concerns all time related to the Complaint and the Answer, amendments to the Complaint and Answer, and service of the Complaint, including the preparation and filing of affidavits of service. This work was mandatory and the time spent was modest and reasonable.

**3.      INTERPRETING (134.8 hours with a value of $24,422.50) (no categorical reduction)**

The Plaintiffs were both unable to speak English and they were only able to speak and understand Spanish. Therefore, they needed interpreters for all meetings and verbal communications with counsel, for mediations or court hearings that they attended, including the portions of the trial that were not interpreted by Court-certified interpreters. They also needed some translation of written documents. The verbal interpreting was done by the Firm's Spanish-speaking paralegals and the written translations were also done by them and on some occasions by English-speaking paralegals using "Google Translate."  The Spanish-speaking paralegals were Maria Aguilar and Mirian Martinez. Emily Wilson performed some of the written translations.

Interpretation is a necessary part of litigation involving clients who only speak Spanish. If not for the translation, Plaintiffs' counsel would not be fully carrying out their fiduciary functions of adequately communicating with clients. Since the translation piece was absolutely necessary, the time is compensable.  And given the length of these proceedings and the fact that there were two mediation sessions along with a 4.5-day trial, the time spent was reasonable.

**4.      FACTUAL INVESTIGATION (47.7 hours with a value of $15,298.40) (no categorical reduction)**

This category involved factual inquiries of the Plaintiffs and efforts to locate, communicate with, and obtain declarations from third-party witnesses who were not part of the formal discovery process (*i.e.* who were not deposed). The time is modest and therefore reasonable and necessary.

**5.  DISCOVERY MOTION (35.40 hours valued at $13,294.00) (no categorical reduction)**

This category includes any time spent on discovery disputes, including time spent communicating with opposing counsel about those disputes, efforts to involve the Court in resolving those disputes, motions to modify the scheduling order to allow more time for discovery or to enlarge deadlines for expert disclosures or other deadlines. This category does not include attending live or telephonic hearings with the Court to resolve discovery disputes. That time is recorded under a different category – Hearing Attendance.

After receiving Defendants' responses to discovery, Plaintiffs sent two letters – a 19-page letter sent on 07/30/21 and 17-page letter sent on 08/06/21 - which identified deficiencies. Decl. of S. Melehy, Ex. H ¶19. The Parties' counsel then conferred on July 13, 2021, and August 10, 2021, for 3.6 hours total. *Id*. They discussed, *inter alia*, Defendants' refusal to identify which of 70 plus witnesses in this case they intended to call at trial and their failure to provide accurate contact information for most of the potential witnesses. *Id.* The Parties did not resolve this dispute. Also, during Linh Nguyen's deposition on July 9, 2021, Mr. Lebowitz made speaking objections and instructed her not to answer certain questions about, *inter alia*, how Plaintiffs were paid, and withholdings from their pay. *Id.* On September 8, 2021, Plaintiffs asked the Court to compel Ms. Nguyen to answer those questions. ECF No. 41. Plaintiffs also moved to extend discovery and expert deadlines. ECF No. 40. The Court initially denied this request. ECF No. 43.

On September 16, 2021, Judge Sullivan: (1) modified his earlier ruling and extended just the expert deadline because Defendants produced certain records late, giving Plaintiffs no time to identify an expert; (2) found that Defendants' counsel improperly instructed Linh Nguyen not to answer certain questions, admonished Defendants' counsel for the instruction, and permitted Plaintiffs to propound additional interrogatories to Ms. Nguyen on the subjects of the questions

14

she was instructed not to answer in lieu of having her sit for a second deposition; (3) compelled Defendants to produce the time records in Excel form, and Ms. Nguyen's handwritten journal; and (4) ordered Defendants to produce all documents they previously agreed to produce within 14 days. ECF No. 45.

Plaintiffs' digital forensic document examiner reviewed the metadata contained in the additional spreadsheets (produced on 09/20/21) and concluded they had been irreversibly modified after the deposition of Linh Nguyen, when their existence was first revealed.  Ex. H ¶ 20. On October 14, 2021, Plaintiffs filed a request for sanctions against Defendants for modifying the spreadsheets. ECF No. 51. *Inter alia,* Plaintiffs sought to have those spreadsheets excluded at trial.

On November 23, 2021, Judge Sullivan granted Plaintiffs' earlier request to compel production under Federal Rule 37(a) and ordered Defendants to produce additional spreadsheets prepared by Mr. Nguyen with employee hours, which had not been altered. ECF No. 60. The Court granted Plaintiffs' request to extend the expert discovery deadline over Defendants' objection. *Id*. The Court did not award sanctions. *Id*. Nonetheless, Judge Sullivan pointed out Plaintiffs can argue at trial the records are unreliable, were modified during the litigation, and are inconsistent with Mr. Nguyen's own testimony. *Id*. Ultimately, after Plaintiffs hired a digital forensic document examiner who concluded they were altered, Defendants chose not to introduce them at trial. Ex. H ¶ 21. On October 13, 2021, Plaintiffs filed a second motion to extend the expert deadline. ECF Nos. 50, 53, 56.

On December 13, 2021, Plaintiffs requested to extend the admissions deadline (which Defendants opposed). ECF No. 62. On December 20, 2021, Judge Sullivan granted this request over Defendants' objection. ECF No. 68. A dispute also arose during the deposition of Francisco Lopez on November 10, 2021, because Defense counsel asked him to identify his current

employer, which Plaintiff objected to for fear of retaliation. Judge Sullivan overruled the objection but as a "precaution," ordered Defendants to confer with Plaintiffs' counsel before issuing a third-party subpoena to any former or current employer of Plaintiff. ECF No. 58.

Plaintiffs' efforts paid off. Ex. H ¶ 22. The additional, unaltered, Excel spreadsheets they obtained, for earlier periods before their employment began, were completely different than the supposed time records Defendants were relying on because they did not show the start and end times for hourly employees and only had information for nail technicians. *Id*. This compelling evidence solidified Plaintiffs' position that the time records were false. *Id.* In the end, Defendants decided not to introduce the records at trial. *Id. ¶* 21.

Plaintiffs largely prevailed on all the discovery disputes noted above. Ex. H ¶ 22. For any dispute where Plaintiffs were not successful in obtaining any of the relief requested, they are not seeking fees for the corresponding time. *See* ECF Nos. 58, 61, 64.

### 6.   DISCOVERY (347.4 hours valued at $134,171.50, but after categorical reduction of 15% (a total of 20,125.73), the total sought is $114,045.77)

This category includes written and deposition discovery. It does not include any motions related to discovery or communications, letters or motions related to discovery disputes. That is covered in another category – Discovery Motions. The discovery period lasted for 8 months but was stayed for part of this time pending the conclusion of mediation. During discovery, Plaintiffs contacted third-party witnesses and obtained sworn declarations, deposed Defendants and 1 third-party witness, served 8 record subpoenas, obtained an expert report, propounded interrogatories, document requests and requests for admissions, responded to the same, and reviewed thousands of pages of documents produced in the case by Defendants and third parties. *See* Fee Spreadsheet, Ex. A. Plaintiffs needed to conduct discovery on every element of their wage claims because Defendants disputed all the predicate factual allegations, denied liability, and raised 21 affirmative

16

defenses (*see* Amended Answer to Complaint, ECF No. 38-1 at 5-8). Plaintiffs were also efficient in conducting discovery because they delegated most of the work to lower-level billing professionals such as paralegals and associate attorney Andrew Balashov. *Id.*

The following issues were disputed and required discovery:

A. **Mr. and Mrs. Nguyen's Status as Employers**: Both Phonz and Linh Nguyen disputed that they were statutory employers. Ex. H ¶ 7. To prove it, Plaintiffs conducted discovery on each element of the economic reality test, each Defendant's ownership interest in Zen Nails, and the control they each exercised over management and operations at Zen Nails and Zen Nails' corporate funds. *Id.* ¶ 8. Plaintiffs needed to review several thousand pages of records they obtained from two banks – TD and Truist – which demonstrated that the individual Defendants had control over the corporate funds, and regularly paid expenses and wrote checks to employees. *Id.*

B. **Whether Plaintiffs worked overtime:** Defendants denied Plaintiffs worked overtime and claimed they had no damages in this case. Ex. H ¶ 9. Early on, the Defendants produced what they alleged were Plaintiffs' time records showing Plaintiffs took breaks each day of up to 4 hours and arrived and left work hours earlier than Plaintiffs claimed. *Id.* Plaintiffs demonstrated the time records were fabricated and as a result, Defendants did not rely on them at trial. Id. ¶¶ 9, 11, 21. Plaintiffs did so through witness testimony, forensic analysis of the records by their expert witness, and showing the time records were inconsistent with payroll records for Defendants' other employees. *Id.* ¶ 11. The initial time records Defendants provided in July 2021, were not time records at all but summaries of other records. *Id.* It was not until September 30, 2021, that the actual records (at least as alleged by Defendants) were produced. *Id.* Plaintiffs' forensic digital document examiner analyzed those records and determined they had all been altered after the litigation commenced. *Id.* ¶ 20. Plaintiffs then located and spoke to several former co-workers

whose testimony about their work hours was inconsistent with the time records.  *Id*. ¶¶ 11, 15.

Plaintiffs subpoenaed their own mobile telephone records from three different providers. *Id*. ¶ 12. They did so because the records: (1) would show Plaintiffs' location during the work day when they made or received telephone calls, which is relevant to the issue of their work hours; (2) show the frequency of their telephone communications with Defendants, which goes to the issue of their status as statutory employers; and (3) are probative of whether Plaintiffs took breaks during the work day of up to 4 hours – *i.e.* were they actively on their phone during the work day. *Id*. Finally, Additionally, on October 29, 2021 (at P. Nguyen's deposition), Defendants testified for the first time that Plaintiffs left work no later than 7:00 p.m. (which is several hours earlier than Plaintiffs alleged) because they relied on the metrobus to get home and the bus did not run past 7:00 p.m. *Id*. ¶ 10. Plaintiffs obtained the bus schedules from WMATA which proved this was false. *Id*.

C. **Plaintiffs' Employer or Independent Contractor Status:** On November 9, 2021, mere weeks before the close of discovery, Defendants took the position Plaintiffs were independent contractors. Ex. H ¶ 13. This required discovery on each factor relevant to the factually complex independent contractor analysis. *Id.*

D. **Whether Defendants Were Entitled to an Offset for De Minimis Tips Plaintiffs Received:** Defendants testified that Plaintiffs received extra cash payments, which they could claim as an offset. But Defendants did not identify when the payments were made or the amount of the payments. Ex. H ¶ 14. Other than on very few sporadic occasions when the Plaintiffs received *de minimis* amount in tips, the Plaintiffs denied that they received any regular cash payments from the Defendants. *Id.* Plaintiffs conducted discovery relating to these alleged cash payments, including contacting, or attempting to contact numerous nail technicians (with

knowledge of the tip payments) to refute the Defendants' contentions. *Id.*

E. **Third-Party Witnesses:** Defendants identified dozens of individuals as possible witnesses with knowledge relevant to this case. Ex. H ¶ 15. But they refused to narrow the list of witnesses and identify those on whose testimony they would rely. *Id.* Plaintiffs attempted to contact the witnesses to avoid surprise at trial, but most of the telephone numbers and addresses provided by Defendants were incorrect or invalid. *Id.* For example, the Defendants deliberately gave an incorrect telephone number for Michelle Williams, a former receptionist who testified at trial. *Id.* The potential number of witnesses was approximately 77, as Defendants employed dozens of nail technicians and over a dozen receptionists and up to 8 cleaning people during the Plaintiffs' tenure at Zen Nails. *Id.* Plaintiffs attempted to contact nearly all the 77 witnesses identified by Defendants. *Id.* They did this to avoid surprise at trial since Defendants would not narrow their witnesses to those whose testimony they intended to rely upon. *Id.*

This was a tedious and difficult process. *Id.* Many of the witnesses did not speak English but spoke Spanish or Vietnamese and required the assistance of an interpreter. *Id.* In some instances, Plaintiffs were only able to locate a witness after extensive research of public records, speaking to other witnesses, sending letters to multiple addresses, attempting to serve them multiple times with a private process server, and repeated telephone calls and voicemails which often went unanswered. *Id.* Plaintiffs were able to secure declarations from 5 witnesses which supported their testimony about the hours they worked, and showed Defendants' time records were fabricated. *Id.* Plaintiffs attempted to serve at least 6 witnesses with deposition subpoenas (*see* ECF No. 61 identifying the people). They successfully served 4 witnesses and took the deposition of witness Shania McDonald, in addition to the Defendants. *Id.* The following witnesses provided affidavit or deposition testimony which corroborated Plaintiffs' testimony about the hours they

worked: (1) Mike Hau; (2) Yessly Vasquez; (3) Camille Davis; (4) Michelle Williams; and (5) Marcela Rodriguez. *Id.*

F. **Good Faith Defense:** Defendants raised the FLSA's good faith defense (ECF No. 38 at 6). This required discovery about Defendants' knowledge of FLSA, what advice they received about their FLSA obligations, their pay practices vis-à-vis other employees of Zen Nails, and prior complaints against them for unpaid wages. Ex. H ¶ 16. Plaintiffs also reviewed time records and pay checks for numerous nail technicians, receptionists, and cleaning people, who Defendants employed during the relevant statutory period, to determine if they were paid lawfully. *Id.*

G. **Willfulness under the FLSA:** Plaintiffs alleged Defendants' violation of the FLSA was willful thereby extending the limitations period (under FLSA) to 3 years instead of 2. Ex. H ¶ 17. Defendants denied that they committed a willful violation. *Id.* Ultimately the Court determined that it did not need to decide the issue; however, it was an issue during discovery. *Id.*

H. **Enterprise Coverage Under FLSA:** Defendants disputed they were covered by FLSA. Ex. H ¶ 18. This required discovery of Defendants' financial records, including bank statements and checks from TD Bank and Truist Bank, and records from Defendants' merchant service processor (BB&T) to determine the amount of Defendants' revenue along with whether it had employees engaged in commerce or the production of goods in commerce. *Id.*

### 7. TRIAL PREPARATION (262.2 hours valued at $119,710.00 with a categorical reduction of 20%, bringing the total value to $95,768.00)

Prior to trial, Defendants made it clear that they were contesting every potential issue which included the following: (1) that Plaintiffs were employees; (2) that Mr. and Mrs. Nguyen were not employers; (3) that Zen Nails, LLC was not an enterprise engaged in commerce; (4) that Plaintiffs did not work overtime hours and that they were entitled to no damages.

20

Over the course of a four-and-one-half day trial, Plaintiffs called 9 witnesses and Defendants called 5 witnesses. Plaintiff introduced 43 Exhibits and Defendants introduced 20 Exhibits. Trial preparation included the following tasks: reviewing and compiling the exhibits to be introduced at trial; preparing objections to Defendants' exhibits; preparing a pre-trial statement, including a witness list and an exhibit list; outlining depositions that were taken; speaking with clients about evidence and preparing them for their testimony; preparing stipulations of fact and communicating with opposing counsel about them; arranging for court-certified interpreters; identifying and locating third-party witnesses, preparing subpoenas and arranging for service of subpoenas; preparing for the examination of witnesses; drafting a trial memorandum concerning legal issues; researching the admissibility of the damage calculations; researching when extra payments are an offset for overtime and minimum wage obligations and other issues. *See* Ex. A.

Because of the number of issues which Plaintiff was required to prove, the hours spent preparing for trial were reasonable and necessary.

8. **TRIAL ATTENDANCE (120 hours valued at $56,079.50, with a categorical reduction of 20%, making the final fees sought in this category $44,863.60)**

Plaintiffs seek attorneys' fees for the attendance (and travel time) of three individuals at trial: (1) Omar Vincent Melehy – lead counsel; (2) Suvita Melehy – co-lead counsel; and (3) Emily Wilson – litigation paralegal. *See* Ex. A. Under the Local Rules, there is no prohibition on whether more than one attorney can be compensated for attending trial. *See* Appendix B at 124 n.5. Rather, it depends on the complexity of the case and each lawyer's role. Moreover, "[i]t is not unreasonable that the number of attorneys used by the defendant at trial should serve as a gauge of the appropriateness of the plaintiff's use of multiple attorneys." *Finch v. Hercules Inc.*, 941 F. Supp. 1395, 1425–26 (D. Del. 1996). The complexity and length of the trial may also justify staffing the

trial with a paralegal. *Id.* Because two lawyers were involved, Plaintiffs have voluntarily reduced the fees sought in this category by 20% to account for any duplication of efforts. *See* Ex. A.

Here, the fees sought are justified by the factual complexity of this case, the number of contested issues, witnesses and exhibits as well as the length of trial, and the presence of two attorneys on behalf of Plaintiffs justifies Plaintiffs' request for attorneys' fees for Mr. and Mrs. Melehy's attendance on each day of trial. It was essential for Plaintiffs to have two trial counsel because of the number of witnesses and the dividing of roles. Ex. B ¶ 40. Mr. Melehy examined Mr. and Mrs. Nguyen and Shania McDonald and took responsibility for closing argument, given his extensive knowledge of wage and hour law. *Id.* Suvita Melehy took responsibility for the remaining witnesses. *Id.* Moreover, both actively participated in the trial, by examining witnesses and arguing objections. *Id.* The presence of Ms. Wilson, a litigation paralegal, was also necessary for note taking and the presentation of exhibits electronically. *Id*. ¶ 41. Ms. Wilson even assisted defense counsel at times with exhibit presentation. *Id*. She was also the person most familiar with the exhibits because she prepared them and could quickly locate materials when they were needed by Mr. or Mrs. Melehy. *Id*. By having Ms. Wilson in the courtroom, Plaintiffs' counsel was able to focus on trial strategy and ensure the seamless and orderly presentation of evidence in Plaintiffs' case in chief. *Id*. This would not be possible if Plaintiffs' counsel had to manipulate the exhibits themselves. *Id*.

9.      **DAMAGES CALCULATION (22.6 hours valued at $4,881.00) (no categorical reduction)**

Plaintiffs' counsel no charged 10.4 hours on this task. The write-off was for work performed by another paralegal, Christopher Grau, before it was reassigned to Emily Wilson, who performed the final calculations and testified at trial as a foundation witness. This was somewhat complicated since there were no time records and Plaintiffs' counsel needed to base their

calculations on records indicating the weeks when either Plaintiff took full days off, their work schedule, and their testimony about when they arrived and departed work or the time off, they took in the middle of the work day for errands or appointments. The work was performed efficiently, since most of it was performed by Emily Wilson, a lower-level timekeeper. The fees sought are therefore reasonable.

### 10.    ADR/SETTLEMENT (49.50 hours with a value of $19,905.00) (no categorical reduction)

From the inception of the case, Plaintiffs' counsel spent a great deal of time in furtherance of settlement. This category includes all time spent in that regard, including communicating with the opposing counsel, speaking to the clients about it, preparing written settlement demands, attending two mediation sessions, one on August 15, 2021 and a second on March 16, 2022, communicating with the Plaintiffs in preparation for the mediation and following conclusion of the sessions, and preparing mediation statements. Ex. A. Given that two mediation sessions occurred in the case, the time spent was reasonable and necessary.

### 11.    HEARING ATTENDANCE (6.9 hours valued at $3,695.00) (no categorical reduction)

This does not include time spent at the trial. That time is billed under a separate category – Trial Attendance. It includes the time spent at any hearing or conference held by the Court, including status conferences, discovery dispute hearings and the pre-trial conference, along with any associated travel time. Except for time spent traveling to and from trial, time spent traveling to the hearings is being billed in an amount no more than 2 hours each way. *See* Appendix B of the Local Rules. *See* also Ex. A. Plaintiffs are entitled to the time spent at the hearings because they achieved some level of success at all of them.

23

**12.    FEE PETITION (65.10 hours valued at $2,647.50, but with a categorical reduction of 20%, the amount sought is $18,118.00)**

Prevailing parties are entitled to reasonable attorneys' fees and costs incurred in seeking fees and costs, or "fees on fees." The duration of the case, the amount of attorneys' fees and costs at issue, and the fact that the case went to trial, all justify the amount of time spent preparing the fee petition. This case was in active litigation for almost three years, and it was resolved only after a merits trial. Therefore, all of the "litigation-phase" categories apply, and Plaintiffs had to expend considerable time sorting through several thousand individual time entries in this case into the appropriate categories. Plaintiffs took a serious approach to their obligation to exercise billing judgment before submitting their request to the Court. This required their lead counsel to undertake a two-stage review of the billing records and review every time entry.

The petition itself is detailed, and supported with robust legal argument, detailed time records, and multiple affidavits from Plaintiffs' counsel and other counsel from this jurisdiction who opine about the reasonableness of the rates sought. Plaintiffs also prepared a bill of costs, filed contemporaneously with the petition, and prepared a detailed spreadsheet of their non-statutory costs which they are seeking outside the bill of costs.

Plaintiffs are also entitled to the fees sought for complying with the Local Rules and preparing and sending quarterly reports to the Defendants and for time spent conferring with Defendants' counsel, pursuant to Court order about the fees and costs, and submitting the joint status report to the Court.

**D. THE NOVELTY AND DIFFICULTY OF THE QUESTIONS RAISED AND THE SKILL REQUIRED TO PERFORM THE LEGAL SERVICES RENDERED (*JOHNSON* FACTORS 2 AND 3).**

First, this is a FLSA case, which requires counsel with specialized knowledge. *Grimm v. Moore*, 4:14CV329, 2015 WL 4776077, at *2 (E.D. Tex. 2015). While not all FLSA cases present

novel or difficult questions, this case did, such as standards of proof in the absence of time records. *Fields v. Luther*, JH-84-1875, 1988 WL 121791, at *2 (D. Md. July 12, 1988) (standard of proof in light of lack of records was novel issue in FLSA case). The case also involved multiple disputed legal issues which is uncommon in a FLSA case.  These issues include whether and to what extent gratuitous payments, or tips may offset an employer's FLSA obligations, whether Plaintiffs were engaged to wait, or waiting to be engaged during short breaks or while the salon was slow, whether they were independent contractors, whether Defendants were statutory employers, whether enterprise coverage or individual coverage existed under FLSA, and whether Defendants could invoke the good faith defense. *See* ECF No. 78 at 1-18. Thus, the case was complex, both in terms of the types of issues, and the number of issues involved.

### E. OPPORTUNITY COSTS IN PRESSING THE INSTANT LITIGATION (*JOHNSON* FACTOR 4).

Plaintiffs' counsel had substantial opportunity costs. Plaintiffs' counsel has a practice that is made up of mostly wage and hour cases for which counsel is compensated on a contingent hourly basis. Ex. B ¶¶ 27, 28. During the time that Plaintiffs' counsel was conducting discovery, preparing for trial and attending trial, they were prevented from performing work on other cases.  During the time Plaintiffs' counsel spent on this case, they could have worked on other cases. For example, for all cases brought under the District of Columbia wage statutes, Omar Melehy and Suvita Melehy are entitled to receive, by statute, attorneys' fees at the rates specified in the Legal Services Index Laffey Matrix, which is currently $997 per hour for any attorney with 20 years of experience or more. *See Id*. ¶ 38. *See Herrera v. Mitch O'Hara LLC*, 257 F.Supp.3d 37, 46 (D.D.C. 2017) ("Because the Salazar court utilized the attorneys' fee matrix that has been updated to account for inflation using the Legal Services Index of the Bureau of Labor Statistics (the "LSI Laffey matrix"), the statute's plain language requires use of the LSI Laffey matrix to determine the

applicable rate"); *Serrano v. Chicken-Out, Inc.*, 209 F.Supp.3d 179, 197 (D.D.C. 2016) (same).

When Plaintiffs' counsel began discovery in this case, they had 12 D.C. Wage Law cases. Ex. B ¶

37. And when Plaintiffs' counsel began preparing for trial in this case, they had 23 cases under the

D.C. wage laws pending. *Id*.

### F.  THE CUSTOMARY FEE FOR LIKE WORK (*JOHNSON* FACTOR 5).

*See* Argument, Section II regarding Plaintiffs' rates, above.

### G.  EXPECTATIONS AT THE OUTSET OF LITIGATION (*JOHNSON* FACTOR 6).

Plaintiffs' counsel took this case on a full contingency basis, expecting to be paid upon the

conclusion of the case either through a negotiated settlement, or by petitioning this Court for a fee

award. *See* Ex. B ¶ 28; Retainer Agreements, Ex. K. In doing so, Plaintiffs' counsel accepted all

the risk associated with a pure contingency agreement including the possibility that they would

have to litigate this case, and advance costs, for an extended period without any compensation. *Id*.

The case has been pending for 2 years and 7 months during which time Plaintiffs' counsel has not

received any compensation for the time expended in this case, which has been significant, and has

advanced all of the costs. The full-contingency nature of the agreement justifies a "risk premium."

*See Blake v. Baltimore County, Md.*, 12 F. Supp. 3d 771, 776 (D. Md. 2012); *Xiao-Yue Gu v.*

*Hughes STX Corp.*, 127 F. Supp. 2d 751, 768 (D. Md. 2001) (risk associated with full contingency

agreement can be a factor in the court's analysis of whether fees are reasonable).  Additionally,

while Plaintiffs' counsel understands that many district court judges are awarding fees at Appendix

B rates, Plaintiffs' counsel had an expectation that, at this juncture, the matrix being nine years

old, it would at least have been updated. Ex. B ¶ 36.

## H. TIME LIMITATIONS IMPOSED BY THE CLIENT OR THE CIRCUMSTANCES (*JOHNSON* FACTOR 7).

The three-year statute of limitations will operate to bar any portion of Plaintiffs' claims which accrued more than three years before the complaint was filed (in this case prior to August 24, 2020) and places an importance on moving as quickly as possible to develop and file the case. In this case, Plaintiff De Paredes retained the firm on July 29, 2020, and with each passing day, more and more of her claims fell outside of the statute of limitations. *See* Ex. K. With respect to Plaintiff Francisco Lopez, who retained the firm on the same day, he would begin losing claims after August 1, 2020, three years after he began employment with Defendants. *Id*. Thus, Plaintiff's counsel needed to move quickly in investigating and preparing the complaint. In addition, there was some pressure on Plaintiffs' counsel to bring the case to conclusion quickly because Plaintiffs were not entitled to pre-judgment interest under the MWHL or the FLSA. Thus, because of the time value of money, the value of their claims erodes the longer it takes to bring the case to conclusion.

## I. THE AMOUNT IN CONTROVERSY AND THE RESULTS OBTAINED (*JOHNSON* FACTOR 8).

Plaintiffs' counsel achieved a good result in the case by obtaining a judgment of $66,991.64, which is 60% of the amount sought at trial. Plaintiffs' counsel has already made an across-the-board reduction of 5% to account for the degree of success. The Court must also consider the important public interests served by this litigation as part of Plaintiffs' overall success. *See Quaratino v. Tiffany & Co.*, 166 F.3d 422, 426 (2d Cir. 1999) (the public interest promoted by civil rights statutes "is perhaps most meaningfully served by the day-to-day private enforcement of these rights, which secures compliance and deters future violations"); *see also Wales v. Jack M. Berry, Inc.,* 192 F.Supp.2d 1313, 1327 (M.D. Fla. 2001) ("FLSA is an important piece of social

legislation. Accordingly, the public derives a benefit from the plaintiffs' recovery on their FLSA claims"). *See also Villano v. City of Boynton Beach*, 254 F.3d 1302, 1305-06 (11th Cir. 2001); *Fegley v. Higgins*, 19 F.3d 1126, 1132 (6th Cir. 1994).

### J. THE EXPERIENCE, REPUTATION AND ABILITY OF COUNSEL (*JOHNSON* FACTOR 9).

Counsel's skill is best reflected in the quality of their work product. This case was skillfully litigated, skillfully briefed and skillfully tried to a judge. Mr. and Mrs. Melehy served as lead counsel throughout the case. Mr. Melehy currently has 36 years of litigation experience, and one additional year clerking for a Judge on the Maryland Court of Appeals, Maryland's highest state court. Ex. B, ¶¶ 1–6. Mr. Melehy (1) has tried 19 cases to juries, (2) has been lead counsel in 32 bench trials, seven of which were wage and hour cases, (3) has conducted approximately 19 administrative evidentiary hearings in employment cases where he was lead counsel, (4) has been lead counsel in approximately 30 appeals in state or federal court, and (5) has been involved in three class/collective actions, two of which were wage cases pending before this Court. *Id*. ¶¶ 10-15.

Mr. Melehy's reputation as a skilled litigator, trial lawyer, and plaintiff's employment lawyer is on par with the high-quality representation that he demonstrated during the present litigation and is consistent with his vast experience. Mr. Melehy has achieved an "AV" rating – the highest rating available – from Martindale-Hubbell. *Id*. ¶ 18. This AV rating is directly related to his reputation as a highly skilled litigator because attorneys and judges provide the reviews that form the basis of the AV rating. *Id*. Mr. Melehy was also the president of the Metropolitan Washington Employment Lawyers Association from 2021 to 2023. *Id*. ¶ 8.

Michal Shinar, an employment law practitioner, opined that Omar Melehy and the firm of Melehy & Associates are deserving of the rates they are seeking because they have a very high

level of experience, and the skill and knowledge necessary to command prevailing market rates in this locality. Ex. I ¶ 14. She further states that "Mr. Melehy is known in the employment law field as a talented plaintiff-side employment lawyer with a deep knowledge of wage and hour laws, civil litigation practice, and trial practice" and that "[h]e is considered a leading lawyer in the field and has been recognized by his peers through his election to leadership positions within MWELA and repeated invitations to speak." *Id*. ¶ 14.

Suvita Melehy is the Firm's managing attorney. Ex. H ¶ 2. She has practiced in the area of employment law for 24 years and specifically in the area of wage and hour law since 2000. *Id*. ¶ 3. In her career, Ms. Melehy has handled approximately 48 bench trials or evidentiary hearings in state and federal court. *Id*. ¶ 4. Ms. Melehy is also responsible for managing all aspects of the Firm's discovery process and she expertly handled all of the discovery in this case. *Id*. ¶ 5. She has extensive training and experience in the field of e-Discovery. *Id*. In her career, she has taken more than 68 depositions and argued numerous discovery motions and disputes before state and federal courts. *Id*. ¶ 6. But for Ms. Melehy's tenaciousness in pursuing discovery in this case in the face of stiff opposition from Defendants, Plaintiffs would not have been able to prove their case or even get to trial.

Associate attorney Andrew Balashov also worked extensively on this case. He has been at the Firm since 2015, when he was admitted to the Bar and primarily practices in the field of wage and hour litigation. Ex. F ¶ 19. Mr. Balashov assisted with preparing discovery responses, drafting the motions to compel, drafting other procedural and discovery motions, preparing for trial and working on this motion for attorney's fees and costs.

### M. UNDESIRABILITY OF THE CASE (*JOHNSON* FACTOR 10).

The contingent nature of the case and the fact that a wage case can be met with staunch opposition from a usually well-financed employer-defendant, makes cases such as this undesirable to many attorneys. Ex. B ¶ 29. What also makes them undesirable is the relatively modest damages awards that are often made. *See Warnick v. True Commun., Inc.*, 1:15CV1377 (GBL/JFA), 2016 WL 7031306, at *4 (E.D. Va. Apr. 15, 2016).

### N. NATURE AND LENGTH OF THE ATTORNEY-CLIENT RELATIONSHIP (*JOHNSON* FACTOR 11).

Plaintiffs were unknown to counsel until the Firm began to represent them in this case. The attorney-client relationship has been ongoing since July 2017. The Firm has not represented Plaintiffs in any other matters besides this case. Ex. B ¶ 39.

### O. ATTORNEY'S FEES AWARDS IN SIMILAR CASES (*JOHNSON* FACTOR 12).

Plaintiffs' counsel was awarded attorneys' fees at rates at or near the rates they seek herein in a FLSA case in the Greenbelt District Court where they prevailed by default. *See Quijano, et al., v. Mizpah Building Services, LLC, et al.*, Case No. 19-00038-PJM. In that case, Plaintiffs' counsel Omar Vincent Melehy was awarded an hourly rate of $500.00 and $600.00, depending on when the time was incurred; Suvita Melehy was awarded an hourly rate of $450.00 and $550.00 and Andrew Balashov was awarded an hourly rate of $285.00 and $325.00. The firm was awarded rates of $155.00 and $175.00 for paralegals and law clerks. *See* ECF Nos. 13-4, and 15 in Case No. 19-00038-PJM. Moreover, on August 24, 2021, in a FLSA case in which Plaintiff's counsel was involved, the Court awarded the following rates, concluding that they were reasonable:

| | |
|---|---|
| Omar Vincent Melehy: | $625 per hour; |
| Andrew Balashov: | $350 per hour; |
| Law Clerks and Paralegals: | $180 per hour. |

*See Boyd v. SFS Communications, LLC*, Civil No. 15-cv-3068 PJM, ECF No. 195-2 at 28 (motion for attorney's fees); ECF No. 197 (Order). More recently, on August 22, 2022, in the case *Orellana v. ACL Cleaning Services, et al*., a single-Plaintiff FLSA case where Plaintiff prevailed by default judgment, Judge Chasanow awarded Plaintiff's counsel Omar Melehy fees at the rate of $600.00 per hour, Suvita Melehy at the rate of $550.00 per hour and Plaintiff's counsel Andrew Balashov at the rate of $300.00 per hour. *See* ECF No. 67 in Case No. 1:19-cv-02318-DKC. In her opinion, she justified the higher rates in part because the "guideline rates for these position shave not been updated in eight years." *Id*. at 5.

### III.    THE PLAINTIFFS ARE ENTITLED TO THEIR REASONABLE COSTS.

Plaintiffs seek costs in this case of $39,951.56 (less any costs which are taxed by the Clerk), which have been paid by Melehy & Associates LLC during the pendency of this case. Part of the total costs are taxable pursuant to 28 U.S.C. §1920, and included in a Bill of Costs being contemporaneously filed with this Motion. Plaintiffs are not seeking a double recovery of costs, but to the extent the Clerk finds any of Plaintiffs' costs requested in the Bill of Costs are not taxable, Plaintiffs ask the Court to award them as out-of-pocket expenses which Plaintiffs are entitled to as prevailing parties under the FLSA and MWHL.

The Court has discretion to determine the costs that will be taxed against losing defendants in FLSA cases pursuant to 29 U.S.C. § 216(b). *Roy v. County of Lexington,* 141 F.3d at 549. The costs that may be recovered are "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir.1988) (internal citations omitted). Recoverable costs include but are not limited to, travel, depositions and transcripts, computer research, postage, court costs, and photocopying. *Vaughns v. Board of Educ. of Prince George's County*, 598 F.Supp. 1262,

1289–90 (D.Md.1984). Plaintiffs seek the following costs:

### A.   COSTS WHICH ARE ALSO SOUGHT IN THE BILL OF COSTS.

Plaintiffs have filed a Bill of Costs pursuant to 28 U.S.C. §1920. For any costs sought therein, but not taxed, Plaintiffs ask that the Court award them a reasonable and necessary litigation expense that the Firm would ordinarily charge a fee-paying client. Plaintiffs incorporate, by reference herein, their Bill of Costs and Memorandum in support. An itemized list of all costs sought (taxable and non-taxable), along with the backups are attached hereto as Exhibit J.

### B.   OTHER NON-TAXABLE COSTS

All of the following costs are passed along to the Firm's fee-paying clients and are not part of the hourly rates charged by the Firm. Ex. B ¶ 32. The Firm has paid all of these costs in this case. *Id*. The requested costs and expenses have bene verified by Plaintiffs' counsel who confirms they are accurate and supported with adequate records. *Id*. ¶ 35. They are summarily described as:

Postage. Plaintiffs are entitled to recover reasonable and necessary postage expenses. *Kabore v. Anchor Staffing, Inc.*, CIV. L-10-3204, 2012 WL 5077636, at *10 (D. Md. Oct. 17, 2012) (awarding postage); *Coggins v. Davis,* CV WGC-05-248, 2007 WL 9782488, at *3 (D. Md. Aug. 22, 2007) (awarding federal express delivery costs).

Westlaw and Nexis Legal Research Database Charges. Appendix B permits recovery of costs for "computerized on-line research." *See* Appendix B(4)(a); *1899 Holdings, LLC v. 1899 LLC*, CCB-12-297, 2015 WL 6560014, at *7 (D. Md. Oct. 27, 2015) (awarding $6,000.00 in Westlaw charges).  Plaintiffs also utilized the Pacer database for research purposes to review documents and briefs filed in other cases. Ex. B ¶ 34.

E-Discovery Cost. Plaintiffs seek e-discovery costs which include: (1) data storage fees charged by Logikcull, including the upload fee (which is a flat rate) of $250, and a storage fee at

the rate of $50.00 per gigabyte per month. E-discovery storage and expert costs are typically passed along to the clients by employment law firms. The Plaintiffs were responsible for "all expenses reasonably necessary to prosecute their claims," and which were advanced by the Firm during litigation. Ex. B ¶ 32. These expenses are excluded from the Firm's hourly fees and include "document reproduction costs." *See* Retainers, Ex. K.

<u>Trial – Travel, Parking and Meals</u>.  The Firm seeks reimbursement of parking costs and mileage expenses, and the cost of meals during trial preparation and the trial. The mileage expenses were calculated at the IRS current reimbursement rate of $.65 per mile. Ex. B ¶ 42. Plaintiffs seek the mileage incurred by Omar Vincent Melehy and Suvita Melehy (one charge since they traveled together) and for Senior Paralegal Emily Wilson, who assisted at trial. Parking expenses are sought for Mr. and Mrs. Melehy and for Ms. Wilson to attend the pre-trial conference and the trial for 5 days. Ex. A; Ex. B ¶ 43.

Plaintiffs are also seeking the cost of meals at trial and during trial preparation when Plaintiffs' counsel worked late into the evening and usually with Plaintiffs present. *Id*. Counsel utilized the mealtimes to meet with the Plaintiffs and prepare for examination and discuss trial strategy. Therefore, it was necessary to have the meals delivered to avoid everyone having to travel off-site to get meals. *Id*.

## CONCLUSION

Because the requested fees and costs are reasonable, this Court should enter judgment against Defendants and in favor of Plaintiff for attorneys' fees of $344,738.64 and costs of $39,951.56 and grant Plaintiffs leave to supplement this petition when they file their reply brief in support.

Respectfully Submitted,


/s/Omar Vincent Melehy
Omar Vincent Melehy
Maryland Bar No. 05712
MELEHY & ASSOCIATES, LLC
8403 Colesville Rd., Suite 610
Silver Spring, MD 20910
Telephone: (301) 587-6364
Facsimile:      (301) 587-6308
Email: ovmelehy@melehylaw.com

*Attorney for Plaintiffs*