IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | | |
|---|---|---|
| FLOR I. ARRIZA DE PAREDES, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No.: TDC-20-2432 |
| ZEN NAILS STUDIO, LLC, *et al.*, | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**DECLARATION OF OMAR VINCENT MELEHY**

I, Omar Vincent Melehy, hereby declare and state the following:

**I.   Qualifications of Counsel and His Staff**

    **A.   Omar Vincent Melehy**

1. I am a resident of the State of Maryland, admitted to practice law in the District of Columbia and the State of Maryland. I was admitted to the Maryland Bar on January 7, 1987 and to the District of Columbia Bar on December 7, 1988. I am one of the founding principals of Zipin & Melehy LLC, a former private law firm located in Silver Spring, Maryland, and Melehy & Associates LLC, a private law firm currently located in Silver Spring, Maryland, which concentrates its practice in employment law, including employment discrimination and wage and hour.

2. I graduated from the University of Texas in 1982. In May, 1986, I graduated from the Antioch School of Law.

3. Aside from being a member of the District of Columbia and Maryland bars, I am also admitted to practice in the United States Court of Appeals for the Fourth Circuit, the United States Court of Appeals for the District of Columbia Circuit, the United States Court of Appeals

**EXHIBIT B**

for the Federal Circuit, the United States District Court for the District of Maryland, and the United States District Court for the District of Columbia.

## 2. Employment History and Experience

4. Following graduation from law school, I served as a law clerk for the Honorable Judge William H. Adkins II of the Maryland Court of Appeals, Maryland's highest state court.

5. In September 1988, I joined the Maryland Office of the Attorney General where I worked as a staff attorney in the Civil Litigation Division. While at the Attorney General's Office, I worked on civil suits against the State of Maryland, including employment discrimination suits and actions brought under 42 U.S.C. §1983. I also represented the State in administrative proceedings of various types, including appeals of disciplinary suspension or removal of State employees.

6. In September 1990, I became an Assistant Attorney General and represented the Maryland Department of Transportation. During this time, I participated as co-counsel and lead counsel in the defense of numerous law suits including tort suits, eminent domain proceedings, and discrimination cases in federal court. At this time, I had a total of eight jury trials and served as lead counsel in seven of those trials.

7. In May, 1997, together with my wife, Suvita Melehy, I founded Melehy & Melehy LLC. This firm later became Zipin & Melehy, LLC, and later Melehy & Associates LLC (the "Firm"). While the size of the Firm has fluctuated over the years, the Firm presently has one principal, one managing attorney, one associate attorney, three paralegals and two office assistant.

8. From 2021 to 2023 I served as the President of the Metropolitan Washington Employment Lawyers' Association ("MWELA"). I also serve on on the Board of Directors of a non-profit corporation – the Washington Lawyer's Committee for Urban Rights and Civil Affairs.

9. Since entering private practice, I have served as lead counsel in over 100 cases filed in the United States District Court for the District of Columbia, the United States District Court for the District of Maryland and the Superior Court for the District of Columbia, in the areas of discrimination in employment and wage and hour law.

10. I have also been involved in three class action/collective actions: *Adam Claverie, et al. v. MobileRev LLC*, *et al*., Case No.: 8:14-cv-02875-MAB (D. Md)(a wage and hour collective action) and *Boyd, et al. v. SFS Communications, LLC*, *et al*., Case No.: 8:15-cv-03068-PJM (D. Md.) (a wage and hour Rule 23 class and FLSA collective action) and *Dante Gilliam, et al. v. HBE Corporation, et al*., Case No.: 99-596-CIV-ORL-22C (a Rule 23 class action case involving discrimination in public accommodation).

11. I have been lead or trial counsel in approximately 19 civil jury trials in state and federal courst – three of which were approximately three weeks in length; I have also been lead counsel in approximately 32 bench trials in state and federal court. Seven of the bench trials were in wage and hour cases.

12. In 2001, I served as trial counsel in a high profile employment contract case – *Michael Conte v. Towson University* – which was litigated in the Circuit Court for Baltimore County, Maryland. The verdict in the case was in excess of $900,000. I was also lead counsel in a whistleblower retaliation case filed in United States District Court for the District of Columbia – *Mohamed Amin Kakeh v. United Planning Organization,* where following a three-week jury trial, judgement was entered for $420,000.

13. I was also lead counsel in a whistleblower retaliation case filed in United States District Court for the District of Columbia under the District of Columbia and Federal False Claims Acts and the District of Columbia Whistleblower Protection Act – *Mohamed Amin Kakeh v. United*

*Planning Organization*. In December, 2008, following a three-week jury trial, I obtained a substantial verdict, in excess of $900,000.00, which was ultimately reduced to $420,000. The case was ultimately settled while on appeal for $821,000.

14. In 2017, I served as lead counsel for the plaintiff in *Karla Saunders v. Chris Pilkerton, Acting Administrator, Small Business Administration*, No. 1:11-cv-00486-RMC, which involved a six-week jury trial in the United States District Court for the District of Columbia. The case resulted in a jury verdict for the plaintiff and the case was settled on appeal for the sum of $821,000.

15. I have also served as Lead Counsel in approximately 15 cases before the Merit Systems Protection Board ("MSPB"), five of which resulted in evidentiary hearings.

16. I have served as Lead Counsel in approximately 35 cases which were adjudicated administratively before the Equal Employment Opportunity Commission ("EEOC"), resulting in approximately 14 evidentiary hearings.

17. I have been lead counsel in approximately 32 appeals in state and federal court. I have been lead counsel in approximately 8 employment-related appeals in the Maryland appellate courts, Federal Circuit, the Fourth Circuit, the D.C. Circuit, and the District of Columbia Court of Appeals.

18. I have an AV rating from Martindale-Hubbell. The AV rating is "a significant rating accomplishment - a testament to the fact that a lawyer's peers rank him or her at the highest level of professional experience." The AV rating is the highest level rating that a lawyer can achieve from Martindale-Hubbell. Further, the AV rating score specifically relates to my reputation as a skilled litigator within the local legal community, as Martindale-Hubbell sends confidential invitations to attorneys and the judiciary to voluntarily provide a review of lawyers about whom

they have personal knowledge.

## II.     The Legal Professionals at Melehy & Associates LLC that Worked on the Case.

19.     **Andrew Balashov.** He is a 2010 graduate of the University of Maryland at College Park. He graduated magna cum laude from the University Of Baltimore School Of Law in May 2015. While there, he served as a member of the Journal of Land and Development. He worked as a law clerk at the Firm beginning February 2015 until December 2015 when he joined as an associate attorney. He was admitted to the Maryland Bar in December 2015. Since coming to the firm, his primary focus has been wage and hour litigation and his secondary focus is employment discrimination.  Since joining firm, Mr. Balashov has performed at a high level. He regularly drafts trial court and appellate briefs in response to motions for summary judgment or motions to dismiss. He is extensively involved in discovery and handles discovery disputes. Mr. Balashov has handled trials in state court and has second-chaired a bench trial in federal court. Andrew is considered a Senior Associate.

20.     **Maria Aguilar**. During the time this case was pending, Maria Aguilar worked at the firm as a paralegal from early 2019 until March 2023 as a bi-lingual paralegal. At the time she departed, she was considered a Senior Paralegal. She is fluent in both English and Spanish. She attended Bowie State University where she majored in criminal justice with a concentration in social justice. He graduated from Bowie State University Magna Cum Laude in 2019 and received a bachelor's degree. Ms. Aguilar is extremely talented in oral and written translations. She frequently translated conversations between Spanish speaking clients and the attorneys or other paralegals, which occurred in the office, in depositions, in mediations and at trial. She also translated documents from Spanish to English and vice versa.  She also was responsible for

implementing a segment of the firm's ESI protocol, whereby date is collected from new client cell phones.

21. **Mirian Martinez.** Ms. Martinez is a bi-lingual paralegal at the Firm. She originally worked for the Firm for approximately 8 months in 2018 and 2019. She then left the Firm to obtain a Bachelor of Arts in psychology and a Minor in social work from UMBC which she obtained in December 2021. Ms. Martinez is considered a Senior Paralegal. She returned to work at the Firm as a bilingual paralegal in January of 2022 and is still employed by the firm in that capacity. She is fluent in both English and Spanish. She frequently called upon to interpret conversations between the attorneys and existing clients and prospective new clients. She also translates written documents for clients and attorney's at the firm. She was also responsible for implementing a segment of the Firm's e-discovery protocol for new cases, including working with new clients to preserve their mobile telephone data using several different programs to collect and store this data. She also drafted written discovery and some routine motions.

22. **Emily Wilson.** Ms. Wilson has worked as a discovery paralegal at Melehy & Associates since August of 2021. Ms. Wilson is considered a Senior Paralegal. Ms. Wilson holds a Bachelor's Degree from Texas A&M University. She was in the honors college and graduated *summa cum laude*. She majored in International Studies and minored in Arabic and Economics. While in college she tutored other college students in algebra and geometry. Ms. Wilson is very talented in creating Excel Speadsheets and performs many of the damage calculations in cases at the firm.  She also handles complex E-discovery issues and works with clients to develop facts in cases, helps prepare attorneys for trial for depositions.  She also drafted written discovery and

routine motions and she reviews, edits and cite checks briefs that are filed in trial or appellate courts.

23.     **Sarah Lorber.** Sarah Lorber has worked as a discovery paralegal at Melehy & Associates from the summer of 2021 to the present. Ms. Lorber holds a Bachelor's Degree from Brandeis University and a Certificate in Paralegal Studies from Framingham University.

24.     **Christopher Grau.** Christopher Grau worked at the Firm as a paralegal at the Firm from February 2020 to January 2021. Mr. Grau is a 2020 graduate of the University of Maryland, College Park, where he received a Bachelor of Arts degree in Government. While at the Firm, Mr. Grau worked on a variety of cases, including discrimination cases, wage-and-hour cases, and this case.

25.     **Eric Valdez.** During the time this case was pending, Eric Valdez worked on this case as a legal assistant.  Mr. Valdez started at the firm in 2021 and left four months later.

**III.    The Firm's Billing Practices.**

26.     The Firm's time-keepers record time in one-tenth of one hour increments. All timekeepers keep track of time with time and billing software known as Abacus Law until March of 2022, when the Firm switched to a new billing software called Clio. The Firm's timekeeper's all keep time records contemporaneously with the expenditure of time in accordance with the Firm's policies. In this case specifically, all time keepers kept contemporaneous time records.

27.     I founded the Firm in 1997, in part to gain the independence to take cases that are personally rewarding. I have focused my practice on civil rights cases, employment, primarily discrimination, retaliation and wage and hour violations. Although the civil rights work is personally rewarding, it is difficult to sustain as civil rights plaintiffs are rarely able to afford the full cost of representation. Even in cases where contingency fee arrangements may be possible,

these cases are only made feasible by the prospect of recovering fees under fee shifting provisions such as the ones at issue in this case which award fees at market rates.

29. The Firm has established rates for all its attorneys and staff that I set as the Firm's standard or normal and customary billing rates. These rates were developed by examining rates charged by other firms in Maryland and are at or below prevailing market rates in Maryland for attorneys in the field of employment law. They are the rates that the firm charges to paying clients. Those rates are as follows:

| | |
|---|---|
| Omar Vincent Melehy | $625.00 per hour; |
| Suvita Melehy | $575.00 per hour; |
| Andrew Balashov | $350.00 per hour; and |
| Paralegals and Law Clerks | $180.00 per hour. |

### IV. The Fee Agreements for this Case

29. The Firm entered into the applicable retainer agreements with the Plaintiffs in this case on July 29, 2020. In general terms the Agreements are full contingency agreements. When I took this case I was aware of the significant financial risks for my small Firm. However, I was also aware that an injustice might continue unrectified but for my willingness to accept the case on a contingency fee basis. At the time of this Declaration, the Firm of Melehy & Associates LLC has received no compensation for any of the attorneys' fees incurred in this case and have had to advance all costs on behalf of the Plaintiffs.

### V. Billing Judgment

30. Mr. Melehy then made percentage reductions to the certain categories of work to account for the large number of hours spent on some aspects of the case. These reductions included: Discovery (30%), Trial Preparation (30%), and Fee Petition Preparation (20%) (the categorical reductions are collectively valued at $53,346.00, bringing the new total to $422,695.90. Following the categorical reductions, Mr. Melehy applied a 5% across-the-board reduction (valued

8

at $18,144.14), bringing the total to $344,738.64, which is Plaintiffs' lodestar. All in all, Plaintiffs have voluntarily reduced their attorney's fees by $131,303.26.

**VI.  The Fee Spreadsheet Presented to the Court**

31.  Ex. A is a true and accurate copy of the Firm's time records in this case.

**VII.  Costs.**

32.  The Plaintiffs in this case are responsible for all costs advanced by the Firm during the course of the case, including postage, Federal Express charges, courier expenses, Westlaw and LexisNexis legal research database costs, Pacer database search fees, Court reporter fees, deposition transcript costs, the cost of hearing transcripts, the storage costs of any electronically stored information on Logikull (a digital document review platform), the cost for any outside IT consultant and mileage reimbursement for time spent by counsel traveling to depositions and court hearings. These expenses are typically and customarily charged by the Firm to its fee-paying clients and they are not built into the Firm's regular hourly rates.

33.  Plaintiffs utilized Federal Express on one occasion to send discovery documents to opposing counsel which were time sensitive and needed to arrive by a date certain.

34.  Charges incurred by the Firm for using the Westlaw legal research database, the LexisNexis and Pacer databases are tracked on a monthly basis according to the specific client or case on behalf of whom the research is performed or the database is used in the case of Pacer. Upon logging into Westlaw, LexisNexis, or Pacer, the user is prompted to enter the client's name or other identifier. In this case, the names used were "De Paredes." On a monthly basis, Westlaw and LexisNexi prorate the monthly cost attributable to each client based on that client's usage of the database as measured in seconds. The reports which document all of the legal database costs incurred by the Plaintiff in this case are attached hereto as part of Exhibit J. Pacer charges are

billed on periodic invoices based on the function performed - $.10 to access dockets and perform searches and a per-page fee of $.10 for downloading documents. Pacer was utilized to search for legal documents and in some instances to obtain copies of documents filed in this case.

35.     Exhibit J attached to the motion for attorneys' fees contains an itemized list of all expenses incurred and paid for by the Firm in this case. I have verified that all of the expenses were actually incurred, paid, and if applicable, the associated work performed or service rendered. The attached supporting documents contained in Exhibit J are true and accurate copies of the records showing the expenses incurred in this case and paid by the Firm. Exhibit J also accurately identifies the dates I traveled to the courthouse to attend trial, mediation or the pre-trial hearing and the corresponding round-trip mileage.

**VIII.   Other Matters**

36.     Additionally, while Plaintiffs' counsel understands that many district court judges are awarding fees at Appendix B rates, Plaintiffs' counsel had an expectation that, at this juncture, the matrix being nine years old, it would at least have been updated.

37.     When the Plaintiffs counsel began discovery in this case, they had 12 cases pending under the D.C. Wage Laws.  And when Plaintiffs' counsel began preparing for trial in this case, they had 23 cases under the D.C. wage laws pending. *Id*.

38.     For example, for all cases brought under the District of Columbia wage statutes, Omar Melehy and Suvita Melehy are entitled to receive, by statute, attorneys' fees at the rates specified in the Legal Services Index Laffey Matrix, which is currently $997 per hour for any attorney with 20 years of experience or more.

39. Plaintiffs were unknown to counsel until the Firm began to represent them in this case. The attorney-client relationship has been ongoing since July 2017. The Firm has not represented Plaintiffs in any other matters besides this case.

40. It was essential for Plaintiffs to have two trial counsel because of the number of witnesses and the dividing of roles. I examined Mr. and Mrs. Nguyen and Shania McDonald and took responsibility for closing argument, given his extensive knowledge of wage and hour law. Suvita Melehy took responsibility for the remaining witnesses. Moreover, we both actively participated in the trial, by examining witnesses and arguing objections.

41. The presence of Ms. Wilson, a litigation paralegal, was also necessary for note taking and the presentation of exhibits electronically. Ms. Wilson in fact assisted defense counsel at times with exhibit presentation. She was also the person most familiar with the exhibits because she prepared them and could quickly locate materials when they were needed by myself or Mrs. Melehy. By having Ms. Wilson in the courtroom, we were able to focus on trial strategy and ensure the seamless and orderly presentation of evidence in Plaintiffs' case in chief. This would not be possible if myself and Ms. Melehy had to manipulate the exhibits ourselves.

42. Mileage was calculated using the IRS reimbursement rate of $.65 cents per mile.

43. We seek the parking, and mileage costs incurred by myself and Suvita Melehy to travel to the pre-trial conference and trial, and also for Senior Paralegal Emily Wilson to travel to the trial. who assisted at trial. Parking expenses are sought for myself and Suvita Melehy and for Ms. Wilson to attend the pre-trial conference and the trial for 5 days. Plaintiffs are also seeking the cost of meals at trial and during trial preparation when we worked late into the evening and usually with Plaintiffs present. Suvita Melehy and I utilized the mealtimes to meet with the

Plaintiffs and prepare for examination and discuss trial strategy. Therefore, it was necessary to have the meals delivered to avoid everyone having to travel off-site to get meals.

On March 31, 2023, I hereby affirm under penalty of perjury that the above is true and correct.

/s/Omar Vincent Melehy
Omar Vincent Melehy