IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | |
|---|---|
| FLOR I. ARRIAZA DE PAREDES, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> ZEN NAILS STUDIO LLC, *et al.*, <br><br> *Defendants*. | Civil Action No.: 20-2432-TDC |

### DECLARATION OF SUVITA MELEHY

I, Suvita Melehy, am over the age of 18 and competent to testify about the matters contained in this Declaration of which I have personal knowledge.

1. I am a resident of the State of Maryland, admitted to practice law in the State of Maryland and the District of Columbia. I graduated from the University of Maryland School of Law in May 1995. I was admitted to the Maryland Bar on December 14, 1995, the Maryland Federal Bar on December 16, 1996, the District of Columbia Bar on February 6, 1998, and the District of Columbia Federal Bar on June 1, 2009.

2. I am the managing attorney at Melehy & Associates LLC, a private law firm located in Silver Spring, Maryland, which concentrates its practice in employment law, including employment discrimination and wage and hour cases such as this one.

3. I have practiced extensively in the area of employment law since 1996, and specifically handled wage and hour cases since 2000. In addition to employment-law cases, I have also practiced bankruptcy and family law. However, since approximately 2019, my primary focus has been on wage and hour cases such as this one.

4. I have individually handled approximately 48 bench trials or evidentiary hearings before the Maryland Circuit Court, Maryland District Court, the Superior Court for the District of

EXHIBIT H

Columbia, the United States Bankruptcy Court for the District of Maryland and the United States Bankruptcy Court for the District of Columbia.

5. I am also responsible for managing all facets of the discovery process for the Firm's cases, including this case. More specifically, I have substantial experience in the field of e-Discovery, and I take steps to stay abreast of recent developments in the field of e-Discovery.

6. I have taken approximately 68 depositions and I have argued numerous discovery motions and disputes before the Maryland Circuit Court, Maryland District Court, the Superior Court for the District of Columbia, and the Maryland and District of Columbia Federal District Courts. I argued all the discovery disputes in this case.

7. Defendants disputed nearly all issues in this case including: (1) Mr. and Mrs. Nguyen's Status as Employers; (2) whether Plaintiffs worked overtime; (3) whether Plaintiffs were employees, as opposed to contractors; (4) whether Defendants could claim an offset for de minimis tips Plaintiffs received; (5) whether they were entitled to the good faith defense under FLSA; (6) whether the violation was willful (though this was not an issue at trial, only during discovery); and (7) whether there was coverage (enterprise or individual) under the FLSA. Defendants also failed to provide accurate contact information for the 70-plus fact witnesses identified in discovery, making it extremely difficult for Plaintiffs to locate and contact these witnesses.

8. Because individual liability was disputed, Plaintiffs conducted discovery on the four elements of the economic reality test, including each Defendant's ownership interest in Zen Nails, and the control they each exercised over operations and corporate funds. Plaintiffs reviewed several thousand pages of records they obtained from two banks – TD and Truist – which showed Phonz and Lihn Nguyen had control over the corporate funds, regularly paid expenses and wrote checks to employees of Zen Nails.

9. Defendants denied Plaintiffs ever worked overtime or that they had any damages. They produced what they alleged were Plaintiffs' time records, showing Plaintiffs took 4-hour breaks daily and arrived and left work hours earlier than Plaintiffs had alleged. These records were fabricated and we proved this through discovery.

10. On October 29, 2021 (at P. Nguyen's deposition), He testified for the first time that Plaintiffs did not work past 7:00 p.m. because that is when the bus stopped running, and Plaintiffs needed to catch the bus to get home during part of the time they worked at Zen Nails. We obtained the bus schedules from WMATA which showed this was not true and that the buses ran into the late evening hours.

11. We were able to show the time records were fabricated and as a result, Defendants did not rely on them at trial. We did so by securing testimony from witnesses who said the hours in the records made no sense and were inconsistent with their recollection of the hours worked. We also hired a digital forensic document examiner to analyze the records and show they were modified after this case began and after Ms. Nguyen's deposition. Finally, we showed the time records were inconsistent with payroll records for Defendants' other employees. The initial time records Defendants provided in July 2021, were not time records at all but summaries of other records. It was not until September 30, 2021, that the actual records (at least as alleged by Defendants) were provided to us by Defendants.

12. Plaintiffs subpoenaed their own mobile telephone records from three different providers. They did so because the record would show Plaintiffs' location during the day when they made or received telephone calls, which is relevant to the issue of their work hours, and how often they communicated with the Nguyens and also whether it was likely they had 4 hours of down time each work day when they could use their phone – as claimed by Defendants.

13. On November 9, 2021, mere weeks before the close of discovery, Defendants took the position Plaintiffs were independent contractors. This required discovery relevant to the independent contractor analysis - which is factually complex.

14. Defendants testified that Plaintiffs received extra cash payments, which they could claim as an offset. But Defendants did not identify when the payments were made or the amount of the payments. Other than on very few sporadic occasions when the Plaintiffs received de minis amount in tips, the Plaintiffs denied that they received any regular cash payments from the Defendants. This required the Plaintiffs to conduct discovery relating to these alleged cash payments. Plaintiffs' counsel contacted or attempted to contact numerous nail technicians to refute the Defendants' contentions because the nail technicians had knowledge about the tips.

15. In discovery, Defendants identified dozens of individuals as possible witnesses with knowledge relevant to Plaintiffs' claims and their defenses. But they refused to narrow the list of witnesses and identify those on whose testimony they would rely. Plaintiffs attempted to contact the witnesses to avoid surprise at trial, but most of the telephone numbers and addresses provided by Defendants were incorrect or invalid. For example, the Defendants deliberately gave an incorrect telephone number for Michelle Williams, a former receptionist who testified at trial. The potential number of witnesses was approximately 77, as Defendants employed dozens of nail technicians and over a dozen receptionists and up to 8 cleaning people during the Plaintiffs' tenure at Zen Nails. Plaintiffs attempted to contact nearly all the 77 witnesses identified by Defendants. They did this to avoid surprise at trial since Defendants would not narrow their witnesses to those whose testimony they intended to rely upon. This was a tedious and difficult process because Defendants provided bad telephone numbers and addresses for most of the witnesses. Many of the witnesses did not speak English but spoke Spanish or Vietnamese and required the assistance of

an interpreter. In some instances, Plaintiffs were only able to locate a witness after extensive research of public records, speaking to other witnesses, sending letters to multiple addresses, attempting to serve them multiple times with a private process server, and repeated telephone calls and voicemails which often went unanswered. Plaintiffs were able to secure declarations from 5 witnesses which supported their testimony about the hours they worked, showed Defendants' time records were fabricated. Plaintiffs attempted to serve at least 6 witnesses with deposition subpoenas. They successfully served 4 witnesses and took the deposition of witness Shania McDonald, in addition to the Defendants. The following witnesses provided affidavit or deposition testimony which corroborated Plaintiffs' testimony about the hours they worked: (1) Mike Hau; (2) Yessly Vasquez; (3) Camille Davis; (4) Michelle Williams; and (5) Marcela Rodriguez.

16. Defendants raised the FLSA's good faith defense. This required discovery about Defendants' knowledge of FLSA, what advice they received about their FLSA obligations, their pay practices vis-à-vis other employees of Zen, prior and complaints against them for unpaid wages. This involved reviewing time and pay records as well as pay checks for numerous nail technicians, receptionists, and cleaning people who Defendants employed during the relevant statutory period to determine if they were paid lawfully.

17. Plaintiffs alleged Defendants' violation of the FLSA was willful thereby extending the limitations period (under FLSA) to 3 years instead of 2. Defendants denied that they committed a willful violation. Ultimately the Court determined that it did not need to decide the issue; however, it was an issue during the discovery phase.

18. Defendants disputed they were covered by FLSA. This required discovery of Defendants' financial records, including bank statements and checks from TD Bank and Truist Bank, and records from Defendants' merchant service processor (BB&T) to determine the amount

of Defendants' revenue along with whether it had employees engaged in commerce or the production of goods in commerce.

19. After receiving Defendants' responses to discovery, Plaintiffs sent two letters – a 19-page letter sent on 07/30/21 and 17-page letter sent on 08/06/21 - which identified deficiencies. We then conferred on July 13, 2021, and August 10, 2021, for 3.6 hours total. We discussed, *inter alia*, Defendants' refusal to identify which of 70 plus witnesses in this case they intended to call at trial and their failure to provide accurate contact information for most of the potential witnesses. We did not resolve this dispute. Also, during Lihn Nugyen's deposition on July 9, 2021, Mr. Lebowitz made speaking objections and instructed her not to answer certain questions about how Plaintiffs were paid, and withholdings from their pay, among other things. On September 8, 2021, We asked the Court to compel Ms. Nguyen to answer those questions. Plaintiffs also moved to extend discovery and expert deadlines.

20. Plaintiffs' digital forensic document examiner reviewed the metadata contained in the additional spreadsheets (produced on 09/20/21) and concluded they had been irreversibly modified after the deposition of Linh Nguyen, when their existence was first revealed.

21. Ultimately, after Plaintiffs hired a digital forensic document examiner who concluded the time records were altered, Defendants chose not to introduce them at trial.

22. Plaintiffs largely prevailed on all the discovery disputes noted above. For any dispute where Plaintiffs were not successful in obtaining any of the relief requested, they are not seeking fees for the corresponding time. Plaintiffs' efforts paid off. The additional, unaltered, Excel spreadsheets they obtained, for earlier periods before their employment began, were completely different than the supposed time records Defendants were relying on because they did not show the start and end times for hourly employees and only had information for nail

technicians. This compelling evidence solidified Plaintiffs' position that the time records were false.

23. Defendants' last two settlement offers were inadequate. The Defendants' last offer was for $175,000 inclusive of damages and attorney's fees and costs, and it was made on January 22, 2023, the day before trial. The previous offer was for $100,000, also inclusive of damages, fees and costs and it was made on March 16, 2022.

24. Further affiant sayeth not.

I HEREBY DECLARE, on this 31st day of March, 2023, under the penalty of perjury, that the foregoing is accurate, true and correct, to the best of my knowledge, information and belief.

_____
Suvita Melehy