FLOR I. ARRIAZA DE PAREDES, et al.   *   IN THE

        Plaintiffs   *   U.S. DISTRICT COURT

        v.   *   FOR THE DISTRICT OF MARYLAND

ZEN NAILS STUDIO, LLC, et al.   *

Defendants   *   Civil Action No.:  TDC-20-2432

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS AND DEFENDANTS' OPPOSITION/OBJECTIONS TO PLAINTIFFS' BILL OF COSTS

Defendants, by and through their undersigned counsel, hereby oppose Plaintiffs' Motion for Attorney's Fees and Costs and oppose/object to their Bill of Costs,[1] and state as follows:

## I. INTRODUCTION

Defendants want to start this Opposition by highlighting the 21-page Declaration of Howard B. Hoffman, who is an attorney practicing in the same county as Plaintiffs' counsel in this case -- Montgomery County -- and who practices the same type of law.  *See* Hoffman's May 3, 2023 Decl., submitted herewith as "Exhibit 1."  In his Declaration, Mr. Hoffman provides his own detailed analysis regarding the fees and costs being sought by Plaintiffs herein, and said analysis will hopefully serve as a valuable tool for this Court in determining the appropriate and reasonable level of recovery for Plaintiffs in relation to said fees and costs.  *See id*.  Undersigned counsel will touch on some of the same concepts in this Opposition, but Mr. Hoffman's Declaration is a worthwhile read, separate and apart from the arguments set forth herein.

Next, Defendants need to address, as a preliminary matter, Plaintiffs allegation in their Motion that Defendants "litigate[d] the case aggressively."  Pl.s' Memo. in Supp. of Mot. for Attorney's Fees and Costs at 1.  With all due respect, Defendants find this assertion to border on

---

[1] In relation to the opposition/objections to Plaintiffs' Bill of Costs, in particular, *see infra* Part III.C.

the absurd.  While undersigned counsel no doubt did his job in advocating for his clients and

seeking to defend their interests in the litigation, Plaintiffs had Defendants "chasing their tails"

for months on end with a seemingly never-ending barrage of requests for more and more.  The

only times Defendants ever really contested any of Plaintiffs' efforts in this regard were when

Plaintiffs endeavored to overly and unnecessarily expand the timeframe and/or scope of said

barrage[2] and at trial.[3]  In one of Defendants' rare filings with the Court in this case in which they

tried to contain one such desired expansion by Plaintiffs, Defendants made the following

comments to the Court, which have taken on added significance in light of Plaintiffs' pending

Motion wherein they are seeking a truly exorbitant sum of fees and costs:

> According to Plaintiffs' most recent Appendix B Report, they claim to have
> already incurred attorney's fees in excess of $95,000.00 – as of the end of
> September – and that's independent of their alleged litigation expenses.  While
> Defendants remain confident that they can prevail in this case, the fact remains
> that the statutory claims brought by Plaintiffs allow for fee-shifting.  *See
> generally* Pl.s' Complaint (ECF No.: 1).  Defendants are therefore keenly focused
> upon retaining the current boundaries that have been set for expert discovery –
> and discovery in general.  While every case has its nuanced differences to be sure,
> this is a relatively straightforward wage and hour dispute involving just two
> workers, *see id.*, and Defendants very much want and need the parameters of the
> discovery process to be reflective of that dynamic.  *See* Fed. R. Civ. P. 1 (stating
> that Federal Rules "should be construed, administered, and employed by the court
> and the parties to secure the just, speedy, and inexpensive determination of every
> action and proceeding.").  *See also id.* at 26(b)(1).
> ….
> The Court made clear that the current discovery period would not be lengthened,
> and Defendants are, frankly, relying upon that commitment by the Court in order
> to try to reign in the potential cost of this litigation arising out of its fee-shifting
> dynamic, which, in their assessment, has already become disproportionately high
> considering the facts and law at issue in the case.

Def.s' Oct. 26, 2021 Opp. at 3, 5.

---

[2]  *See, e.g.,* Def.s' Mar. 12, 2021 Status Report (ECF No. 27); Def.s' Oct. 26, 2021 Opp. (ECF No. 54); Court's Dec. 20, 2021 Order (ECF No. 68).

[3]  The trial will be addressed further below in this Opposition, but suffice it to say for now, Plaintiffs' obligation to meet their burdens of proof on a number of peripheral issues at trial, while perhaps technically contested by Defendants, was hardly a "heavy lift," as Plaintiffs certainly know.

As a review of the docket entries in the case readily demonstrates, Defendants remained, to the extent possible, passive throughout the litigation, just hoping Plaintiffs would stop. Indeed, as the docket shows, beyond moving to amend their Answer before the deadline under the Scheduling Order -- which was nonetheless initially contested by Plaintiffs, *see* Pl.s' June 2, 2021 Opp. (ECF No. 32)[4] -- Defendants burdened this Court with zero written filings affirmatively requesting relief[5] from the time undersigned counsel entered his appearance on February 19, 2021 until trial nearly two years later. *See* Feb. 19, 2021 Notice of Entry of Appearance (ECF No. 25). *See generally* Docket Entries. Defendants filed zero discovery motions and zero dispositive motions. *See id.* The only depositions they took were of the two Plaintiffs,[6] and they purposefully did so only <u>after</u> attending a settlement conference which did not resolve the case. *See* Docket Entry for Settlement Conf. on Aug. 18, 2021 (ECF No. 39). Defendants also hired no experts to provide testimony (though there were compelled to hire a non-testifying IT expert).[7] And once undersigned counsel became involved in the case in early

---

[4] Rather stunningly, Plaintiffs elected to oppose the would-be amendment to Defendants' Answer with this filing despite having themselves forecasted undersigned counsel's likely need to file such an amendment. Specifically, in their February 15, 2021 Status Report (ECF No. 24), Plaintiffs advised the Court, in relation to a then-proposed May 19th deadline to amend the pleadings, that they were seeking to "extend this deadline to May 19, 2021, to afford Defendants' substitute counsel, who enters the case between now and then, an opportunity to amend the Answer and/or Counter-Complaint if they wish to do so." Pl.s' Feb. 15, 2021 Status Report (ECF No. 24) at 1 n.1. That role of "substitute counsel" would later be filled by undersigned counsel, *see* Feb. 19, 2021 Notice of Entry of Appearance (ECF No. 25), and, as predicted, an amendment to the Answer was needed. Yet, it was still opposed by Plaintiffs. Following a June 25, 2021 Order by the Court (ECF No. 37), however, Plaintiffs let the amended Answer stand.

[5] The parties did have one teleconference with U.S. Magistrate Judge Sullivan at Defendants' request, which was necessitated by Plaintiffs' counsel having improperly advised her client not to respond to a question in deposition. *See* Nov. 10, 2021 Paperless Order (ECF No. 58).

[6] Conversely, Plaintiffs sought the Court's permission to take more than 10 depositions, though their request was denied. *See* Sept. 16, 2021 Order (ECF No. 45) at 2 ("Plaintiffs' request to increase the number of depositions from the presumptive limit of 10 per side, *see* Fed. R. Civ. P. 30(A)(2)(a), is denied without prejudice. Plaintiffs have not shown good cause to increase this limit.").

[7] *See* Def.s' Oct. 28, 2021 Letter to Judge Sullivan (ECF No. 54) at 1 ("[I]n light of comments in Your Honor's Letter Order, Defendants are actively working to digitally restore the redacted information, and they are doing so with the assistance of third-party forensic IT professionals who have been retained by

2021, the three Defendants had only one single attorney.  All of this was wholly intentional on the part of Defendants, who were seeking to keep their own attorney's fees and the amount of fees they would potentially have to pay to Plaintiffs in check.  *See infra* Footnote 8.  Conversely, the two Plaintiffs had multiple attorneys and support staff working on the case, and they used the <u>two</u> highest-priced attorneys in opposing counsel's firm to handle the trial, including one, in Omar Vincent Melehy, who was not even actively involved throughout the litigation and only entered his appearance right before trial.  *See* Jan. 13, 2023 Entry of Appearance (ECF No. 84). Plaintiffs were the driving force behind this litigation and the vast majority of its expense in relation to both fees and costs.  Plaintiffs left no stone unturned -- even when leaving such stones in place would have clearly sufficed.

## II.  SEQUENCE OF PERTINENT EVENTS

But let's now take a step back and review just some of the pertinent events in the litigation, many of which demonstrate how Plaintiffs' counsel spent an excessive amount of time (and timekeepers) on this case.  The case started with the filing of suit by the two Plaintiffs on August 24, 2020.[8]  *See* Pl.s' Aug. 24, 2020 Complaint.  In their Complaint, Plaintiffs sought the recovery of unpaid wages under the Fair Labor Standards Act (hereinafter "FLSA") and the Maryland Wage and Hour Law (hereinafter "MW&HL").  *See id*.  The Complaint alleged that Plaintiffs, in their roles as cleaning people in Defendants' nail salon, worked more than 40 hours per week at the salon and were not properly compensated for their services.  *See id*.

This was never going to be a case about whether or not Plaintiffs were exempt from the protections of the FLSA and MW&HL under the categories of exemptions like those associated

---

Defendants at considerable expense.").

[8]  This timeframe was a period in which the Covid-19 pandemic was still a major part of all of our lives and had caused Defendants to shut down their nail salon for several months earlier in that same year. Needless to say, it was a tough year personally and financially for Defendants, as it was for many of us.

with administrative, executive, or professional workers.  As I am sure the Court can appreciate, the exemption issue can often be nuanced and complex, and takes a great deal of time and effort by the parties in litigation -- but this was not such a case.  *See, e.g., Rodriguez v. Bowie Assisted Living, Inc.*, Civ. A. No. PJM-14-3186, 2015 WL 8137923, at *3 (D. Md. Dec. 8, 2015) ("Plaintiffs and Bowie agree at this point that the minimum wage and overtime claims 'are not of the more complex variety seen in FLSA cases as neither party claims any exemptions are at issue.'").  So, in terms of liability, what was left were the following issues, each of which was addressed in the Court's post-trial decision in this case: whether Defendants were each an employer under the applicable laws,[9] whether Plaintiffs were employees under said laws, and whether Plaintiffs regularly worked more than 40 hours in a given week.  Of these, the only issue that was ever seriously in controversy was the number of hours Plaintiffs worked per week.

Nonetheless, Plaintiffs were insistent upon creating a snow-topped mountain out of this modest molehill.  For instance, Plaintiffs are arguing in their pending Motion that their efforts to establish "enterprise coverage" under the FLSA "required discovery of Defendants' financial records, including bank statements and checks from TD Bank and Truist Bank, and records from Defendants' merchant service processor (BB&T) to determine the amount of Defendants' revenue along with whether it had employees engaged in commerce or the production of goods in commerce."  Pl.s' Memo. in Supp. of Mot. for Attorney's Fees and Costs at 20.  Yet, Defendant Zen Nails Studio, LLC's Answers to Interrogatories plainly stated as follows: "Defendant objects to this Interrogatory as it seeks wholly irrelevant and immaterial information

---

[9] On the subject of Defendants respective statuses as employers, this dynamic of the case was addressed, and all but resolved right out of the gate, in Plaintiffs' Complaint and Defendants' Answer thereto. *Compare* Pl.s' Aug. 24, 2020 Complaint at ¶¶ 3-5 *with* Def.s' Nov. 11, 2020 Answer (ECF No. 12) at ¶¶ 3-5; Def.s' June 29, 2021 First Am. Answer (ECF No. 38) at ¶¶ 3-5.  And Defendants' discovery responses were consistent with their Answer. *See, e.g.,* Def. Zen Nails Studio's June 29, 2021 Ans. to Interrog. Nos. 14-15, submitted herewith as "Exhibit 2."

in light of Defendants' Answer to Plaintiff's Complaint at ¶ 3.  Without waiving said objection, Plaintiffs are referred to the 1099-K's produced by Defendants in this case, which show credit card transactions by Zen Nails Studio, LLC in excess of $500,000 in each year from 2017 through 2020, which is every year during which Plaintiffs worked at the Studio."  Def. Zen Nails Studio's June 29, 2021 Ans. to Interrog. No. 14, submitted herewith as "Exhibit 2."  This was all Plaintiffs ever really needed, and they knew it.  They even used the 1099-K's from Defendants for this purpose at trial.  *See* Pl.s' Exhibit List (ECF No. 104) at Ex. 15-21.

Moreover, with respect to Plaintiffs' employee status, that issue only really ever came into play in terms of Defendants' good faith defense and the assessment of liquidated damages. *See* Court's Feb. 24, 2023 Findings of Fact & Conclusions of Law (ECF No. 107).

A good summary of the <u>actual</u> <u>issues</u> in the case can be culled from part of the Parties' Joint Pre-Trial Order, wherein <u>Defendants</u> stated as follows:

> First and foremost, Defendants will present evidence to support their position that Plaintiffs worked either zero or very few hours beyond 40 at Zen Nails Studio in the weeks that fell within the applicable statute of limitations timeframe. Defendants' evidence will show that Plaintiffs arrived to work later than they claim and that they left work significantly earlier than they claim.  The evidence will also show that Plaintiffs took sizeable breaks during which they were relieved of their duties such that the breaktime hours cannot be attributed to compensable hours worked.  And Plaintiffs worked on fewer days of the week than they are claiming in this filing. Long story short, as the Court will see, Plaintiffs' testimony about supposedly working from the wee hours of the morning until deep into the night for years on end without taking any breaks while barely consuming any food is simply not believable, nor is it accurate.  It's akin to tales told by one's grandparents about how they supposedly walked to school barefoot in the snow, uphill both ways.
>
> The evidence will also show that when Plaintiff occasionally did work a bit longer than usual on a given day at Zen Nails Studio, they would actually receive extra compensation for this extra time worked. In any weeks in which this extra time could have conceivably pushed them over the 40-hour threshold in a given week -- which Defendants do not concede -- this extra compensation would have covered any overtime pay that may arguably have been due.  As such, Plaintiffs have already received payment in relation to any overtime hours that they may be able to establish to the Court's satisfaction they worked.

> Lastly, the evidence will show that Defendants acted in good faith with respect to their belief that no violation of the FLSA or MWHL was committed such that any potential award of liquidated damages associated with any award for unpaid overtime will not be warranted. In a similar vein, this evidence will demonstrate a lack of willfulness for purposes of the FLSA's statute of limitations, though Maryland's three-year statute of limitations, as a practical matter, admittedly makes this less of a factor in the outcome of the case.

Jan. 11, 2023 Jt. Pre-Trial Order (ECF No. 78) at 18-19 (citations omitted).  Plaintiffs have -- and will undoubtedly again -- contend that this case was about so much more.  But it really wasn't.  All the Court needs to do is look at its own decision following the trial.  While the outcome of the trial was adverse to Defendants and, needless to say, the Court did not agree with Defendants entirely in relation to their positions on these issues, the issues themselves that were decided by the Court track almost exactly to what Defendants contended they were in this excerpt from the Pre-Trial Order above.  *Compare id. with* Court's Feb. 24, 2023 Findings of Fact and Conclusions of Law (ECF No. 107).  In a nutshell, the case was, from its inception, about the issue of the hours worked by Plaintiffs and little else.[10]

But that didn't stop Plaintiffs from litigating the case like a mass tort or major commercial litigation.  They assigned a whole team of lawyers and support staff and were relentless in seeking out information and documents, much of which didn't matter and/or was never used, which generated higher and higher levels of fees.  Some examples of this behavior are detailed below, presented largely in chronological order.

---

[10]  Indeed, it's the type of case that, frankly, could have been litigated in state District Court, rather than federal.  Admittedly, doing so would have required Plaintiff Lopez to forgo a portion of his damages, as the jurisdictional limit for damages in state District Court is $30,000.  Conversely, Plaintiff De Paredes could have secured the exact same recovery in state District Court as she did before this Honorable Court.  And both of their judgments would have come much sooner, presumably in early 2021, and at a tremendously lower cost in terms of attorney's fees and expenses.  Defendants are not saying this to suggest that Plaintiffs had to go this route.  Obviously, they did not.  Jurisdiction was proper before this Court, and Defendants recognize that Plaintiffs get to choose their forum.  Nonetheless, the fact remains that Plaintiffs having instead chosen to go to state District Court would have made the case eminently more efficient, resolvable, and cost-effective.

First up is the subject of the would-be early Settlement Conference. A Settlement Conference was scheduled to convene with Magistrate Judge Charles B. Day on May 13, 2021. *See* Feb. 11, 2021 Letter Order (ECF No. 23). As noted previously, undersigned counsel then entered his appearance eight days later on February 19, 2021, and he and his clients were pleased that such a Conference was on the horizon. However, without notifying Defendants, Plaintiffs emailed Judge Day a letter and sought a postponement of the Conference. *See* May 3-11, 2021 Email Exchange, submitted herewith as "Exhibit 3." When Defendants later learned of this email, it prompted undersigned counsel to email Judge Day's chambers and state as follows:

> Please be advised that, as of this writing, I have never seen the letter submitted to Judge Day by Plaintiffs' counsel. I was unaware that it was even submitted until I just received your email. I realize that ex parte communication is permitted with Judge Day in His Honor's role as the Settlement Conference Judge, though I would respectfully suggest that an attorney making a postponement request is something that should be shared with opposing counsel. Without even knowing that the letter had been submitted to Judge Day, I informed Plaintiffs' counsel, via email, yesterday (Tuesday) morning that "[m]y clients and I are not amenable to postponing the settlement conference date." I can only assume Judge Day is unaware of this fact, since the letter was submitted to His Honor on Monday afternoon. I would respectfully request the opportunity to at least see the letter submitted by Plaintiffs' counsel and be afforded time to respond thereto.

*Id.* In the end, Plaintiffs efforts were successful, as the Conference was postponed until August 2021. *See id. See also* Court's May 5, 2021 Paperless Corresp. (ECF No. 29); Court's May 12, 2021 Letter Order (ECF No. 30). And with the fees that Plaintiffs were able to accumulate in the intervening three-plus months, from May to mid-August,[11] the case became very difficult to settle, and an amicable resolution obviously was not reached by the parties at the Conference.[12]

---

[11]   Though an exact figure for Plaintiffs' alleged fees as of mid-August 2021 is not known to Defendants, they were advised by Plaintiffs soon thereafter that Plaintiffs' fees, as of the end of September (which was about six weeks after the Settlement Conference), were already allegedly at $95,000. *See* Pl.s' Oct. 14, 2021 Letter, submitted herewith as "Exhibit 4."

[12]   Somewhat surprisingly, Plaintiffs addressed in their Motion the subject of Defendants' settlement offers. Having opened that door, Defendants will note that they made more than the two offers identified in Plaintiffs' Motion. Specifically, on pages 1-2 of their Memorandum, Plaintiffs mentioned offers by

Next, Defendants will turn to the issue of spreadsheets.  As the Court may know, Defendants, in conducing their business, used spreadsheets to track some types of information concerning their workers, and Plaintiffs took issue with just about every aspect of them.  I won't burden the Court with copies of the sizeable set of emails, letters, and discovery requests from Plaintiffs concerning this issue, but would ask the Court to again take a look at the Docket Entries to get a sense of just how much time and energy Plaintiffs spent on this issue, all the while accruing more and more attorney's fees and expenses.  Here is a list of the Docket Entries for filings, both in the form of submissions by the parties (though very little was submitted by Defendants) and Orders from the Court, which related, in whole or in part, to the spreadsheets issue:  ECF Numbers 41, 43, 44, 45, 46, 47, 50, 51, 52, 53, 54, 55, 56, 59, 60, 62, 63, 78, 79, 80, and 86.  Plaintiffs also identified experts concerning the spreadsheets who produced lengthy reports.  *See* Jan. 11, 2023 Joint Pre-Trial Order (ECF No. 78) at 30-31.  And how many experts testified and how many spreadsheets or reports were used as evidence in support of any dispositive motion or by either side during the 4.5-day trial?  Absolutely zero.  None whatsoever. While Plaintiffs contend in their Motion that all of the hoops they jumped through -- and made Defendants jump through -- concerning the spreadsheets provided "compelling evidence [which] solidified Plaintiffs' position that the time records were false," *see* Pl.s' Memo. in Supp. of Mot. for Attorney's Fees and Costs at 16, the reality is that this was always much ado about nothing.[13]

---

Defendants of $100,000 in March 2022 and $175,000 right before trial in 2023, but there was actually another offer in between those two, in the amount of $150,000.  *See* Def.s' Jan. 16, 2023 Letter, submitted herewith as "Exhibit 5."  It should also be noted that Defendants did not receive a response from Plaintiffs to their final pre-trial offer of $175,000, which seems entirely reasonable now given Plaintiffs' ultimate combined recovery of less than $67,000.

[13]  In this regard, Defendants commend to the Court to review their Responses to Requests for Admissions.  In these Responses, which were consistent with other discovery and deposition testimony, Defendants admitted, among other things, that they did not utilize a punch clock, did not formally track the precise points at which Plaintiffs started and stopped working, did not require Plaintiffs to track their own start and stop times, and did not formally track specific times when lunch breaks were taken, and Defendants further

But, yet again, Plaintiffs intentionally sought out rocks to overturn unnecessarily -- all at considerable unjustified cost -- and now they want Defendants to pay them for having done so.

Another indicator of Plaintiffs' massively over-the-top exertion of effort in discovery is just the sheer size of their document production in the case, the overwhelming majority of which came via the use of their own subpoenas and not because Defendants had asked for it.  Plaintiffs produced to Defendants in excess of 16,600 pages of documents!  *See* Jan. 12, 2023 Email from Pl.s' Counsel, submitted herewith as "Exhibit 8" (referring to consecutively Bates-stamped document numbers 16682-90 being produced by Plaintiffs).    Again, this was just a straightforward, run-of-the-mill overtime case involving two Plaintiffs who worked in a nail salon.  It was not a mass tort or commercial litigation matter.  Yet, that's how it was prosecuted.

Still another example of the levels of excess that Plaintiffs reached, on December 23, 2021, Plaintiffs served upon Defendants a total of more than 1,600 Requests for Admissions! *See* Pl.s' Req. for Admissions,[14] submitted herewith, collectively, as "Exhibit 9."  This was a massive violation of Local Rule 104.1.[15]  *See also Vales v. Preciado*, Civ. A. No.: CBD-05-3110, 2012 WL 115425, at *5 (D. Md. Jan. 13, 2012) (referring to service of a set of 224 Requests, which is far fewer than the number served by Plaintiff De Paredes in this case, as being "more

---

commented that, while the "overall allotted break time was tracked generally," they did not track when Plaintiffs' "allotted break time was used by Plaintiffs during a given day."  *See* Def. Zen Nails Studio, LLC's Resp. to Req. for Admissions Nos. 24-30, submitted herewith as "Exhibit 6."  *See also* Jan. 17, 2023 Email Exchange Between Counsel, submitted herewith as "Exhibit 7" (in response to email about the spreadsheets and Plaintiffs' motion related to same, undersigned counsel stated as follows: "your time would have been better spent working on other things and waiting to see what we actually might use as exhibits.  At this time, my plan is to include only 2 or 3 spreadsheets in my potential exhibits, and I may not even use them.  I am certainly not using the spreadsheets you've attached, and we did not even list the notebook as a potential exhibit.  You're wasting your time." (emphasis added)).

[14]  Rather than provide the Court will all of the Requests, Defendants will just submit excerpts that nonetheless demonstrate the vast quantity that were served upon Defendants.

[15]  In stark contrast to Plaintiffs' behavior -- and in compliance with this Local Rule -- Defendants served a grand total of 15 Requests for Admissions for each Plaintiff to answer which were focused very specifically on matters that were actually in controversy in the case.  *See* Def.s' Req. for Admissions, submitted herewith as "Exhibit 10."

than seven times the legal limit," "abusive on its face," and "inappropriate" in the "absence of an agreement between the parties"). Undersigned counsel had frankly never seen anything like this in his entire career, and Defendants probably should have sought Court intervention. But, as was often the case during the litigation, Defendants chose a more grassroots, low-key approach and just dealt with the situation without burdening the Court in an effort to try to stem the tide of Plaintiffs' fees. There were just little to no bounds to what Plaintiffs were willing to do in their efforts to vastly overcomplicate and over-litigate this case.

And, finally, there was the trial. As noted above, *see supra* Part I, Plaintiffs were represented by two high-fee attorneys at trial (plus a paralegal), whereas the three Defendants were represented by just one attorney. Why was this conceivably necessary, particularly considering the straightforward nature of the matters in controversy? *See* Appx. B to Local Rules (noting that the compensation of more than one attorney for trial "must depend upon the complexity of the case and the role that each lawyer is playing." (emphasis added)). At the rates Plaintiffs are seeking, every hour of the trial -- just for the lawyers let alone the paralegal -- was being charged at a rate of $1,200 per hour. How is that a reasonable and responsible amount to charge in a case in which one Plaintiff recovered unpaid wages of about $15,000 and the other less than $20,000, before the all-but-mandated doubling for liquidated damages? It's just not.[16] This is not an issue of proportionality, but one of common sense and billing judgment.

---

[16] Indeed, Defendants would ask this Court to look at how much Plaintiffs want Defendants to pay in attorneys' fees solely for their two lawyers and a paralegal to make the 10-mile drive each way to and from counsel's office to the courthouse for the five days of trial. *See* Pl.s' Ex. A to Mot. for Attorney's Fees and Costs at 51. It's truly startling, as the sum total of fees for this driving time alone is approaching the unpaid wage recovery of one of the Plaintiffs. Under Appendix B, if counsel and staff were all together talking about the case in the office, only one of them could charge for their time, but, somehow, it's fine for all of them to charge full hourly rates because they're in a car? This Court has previously ruled, in another case involving Plaintiffs' counsel, that it's not. *See. e.g., Carrera v. EMD Sales, Inc*., Civ. A. No. JKB-17-3066, 2021 WL 3856287, at *6 (D. Md. Aug. 27, 2021) (reducing counsel's rates so that they are within Appendix B ranges and then cutting those reduced rates in half for travel time). Defendants would hope that this Honorable Court does not reward these types of cavalier billing practices in the above-captioned case either.

All of this resulted in a request for attorney's fees of approximately $350,000 by Plaintiffs.[17]  *See* Pls.' Memo. in Supp. of Mot. for Attorney's Fees and Costs at 1.  Defendants would ask the Court to contrast this with another case that likewise "spanned more than two years, and involved fact discovery, settlement efforts, and a trial."  *Gonzalez v. New York Mart MD, Inc.*, Civ. A. No. TDC-20-0020, 2022 WL 3577394, at *3 (D. Md. Aug. 19, 2022).  The trial in *Gonzalez*, though a bit shorter than the one in this case, *see id*. at *1, involved a jury, which inherently increases the amount of time and attention an attorney must give due to things like jury selection and jury instructions that don't exist in bench trials.  Also, very much <u>unlike</u> the above-captioned case, the *Gonzalez* case involved a "novel set of facts."  *Id*.  Yet, plaintiffs counsel in *Gonzelez* sought less than $72,000 in attorney's fees and was awarded just under $65,000.  *See id*. at *1, *4.  As the Court can see, the amount sought in the *Gonzalez* case is about <u>20%</u> of the amount Plaintiffs' counsel herein claim they deserve to be paid.  Long story short, what Plaintiffs' counsel are seeking from Defendants in this case is just rather astonishing.

## III. ARGUMENT

### A. Plaintiffs' Counsel's History of Fee Petitions Before This Court

Plaintiffs' counsel is certainly no stranger to this Court in terms of its efforts to secure the recovery of attorney's fees and expenses in their many wage and hour cases.  It is important to highlight two dynamics in relation to those efforts.  First, it bears mentioning that Plaintiffs' counsel has not always sought fees in excess of those set forth in Appendix B of the Local Rules.

---

[17]  According to Plaintiffs' "Summary of Plaintiffs' Attorney's Fees," the "Grand Total Value of Charged Time" is actually $422,695.90.  *See* Pls.' Exhibit A to Mot. for Attorney's Fees and Costs at 54.  *See also* Pls.' Memo. in Supp. of Mot. for Attorney's Fees and Costs at 9 (same).  It bears mentioning that, in their Quarterly Report under Appendix B concerning their total fees through the end of December 2022, Plaintiffs' counsel indicated that their fees were at "$251,000."  *See* Pls.' Mar. 21, 2023 Letter, submitted herewith as "Exhibit 11."  Putting aside how outrageously high the $251,000 figure was, this means that Plaintiffs' fees, before any discounts, purportedly increased by more than <u>$171,000</u> in just January, February, and March of 2023 alone!  As will be detailed below, there is a compelling argument to be made that this whole case could have been litigated by Plaintiffs for less than that amount, and perhaps substantially less.

And, second, this Court has routinely reduced Plaintiffs' counsel's fees, both in terms of their hourly rates and the overall totals of hours spent on a given case.

With respect to cases wherein Plaintiffs' counsel has sought to recover fees at hourly rates <u>within</u> the ranges in Appendix B, one such example, from late 2016, is *Morataya v. Nancy's Kitchen of Silver Spring, Inc.*, Civ. A. No. GJH-13-01888, 2016 WL 6634856 (D. Md. Nov. 8, 2016). In that case, the Court noted as follows:

> Plaintiff asks the Court to award attorney's fees at the following rates: Omar Vincent Melehy: $475.00 (member of the bar since 1987); Suvita Melehy: $375.00 (worked as an attorney since 1997); Robert Porter: $300.00 (member of the bar since 2004); William Steinwedel: $175.00 (member of the bar since 2010); Aaron Robison: $175.00 (member of the bar since 2012); and paralegals: $110.00. ECF No. 89-1 at 12–14; Melehy Declr., ECF No. 80-4 at 2, 6–7. <u>These rates are within the ranges set forth in Appendix B</u>.

*Id.* at *3 (emphasis added). This was a case that proceeded to a bench trial, just like the above-captioned case. *See id.* at *1. The total fees awarded were $127,502.80, *see id.* at *6, a rather modest sum compared to what counsel wants Defendants herein to pay.[18] Another example is *Molina v. KP Stoneymill, Inc.*, Civ. A. No. 8:19-CV-1165. In that case, on or about December 3, 2020 -- at which point the above-captioned case was already pending -- Plaintiffs' counsel, like in *Morataya*, <u>did not seek</u> one cent above Appendix B rates. *See* Dec. 3, 2020 Memo. in Supp. of Mot. for Attorney's Fees and Costs (ECF No. 41-1) in *Molina*, Civ. A. No. 8:19-CV-1165.

---

[18] In another case that included a bench trial -- and even, unlike in the above-captioned case, a motion for summary judgment -- Plaintiffs' counsel was very recently awarded a nearly identical sum of $127,573.63 in fees by this Court. *See Ramnarine v. Rainbow Child Dev. Ctr. Inc.*, Civ. A. No. PWG-17-2261, 2022 WL 16709764, at *17 (D. Md. Nov. 4, 2022), *report and recommendation adopted by*, Civ. A. No. DKC-17-2261, 2023 WL 1416031 (D. Md. Jan 31, 2023). An appeal to the Fourth Circuit concerning this award has actually been filed by the <u>defense</u> in the case, presumably because they still believe this fee award was too high. *See* Def.s' Mar. 16, 2023 Notice of Appeal (ECF No. 190) in *Ramnarine*, Civ. A. No. DKC-17-2261.

Moreover, it bears mentioning that the fee awards in these cases -- *Morataya* and *Ramnarine* -- are much more in line with the $150,000 sum referenced in Mr. Hoffman's Declaration than what Plaintiff are seeking to be awarded. *See* Hoffman's May 3, 2023 Decl. at ¶ 50, submitted herewith as "Exhibit A" ("I believe that a fee of $150,000.00, would more than incentivize counsel to have taken this case and reward them for the time that it would have reasonably taken to prosecute this case. I believe that my associate Jordan S. Liew could have handled this case through Trial and the total fees would be well less than $150,000.00.").

The fact that Plaintiffs' counsel sought fees <u>within</u> Appendix B in these cases makes sense since, "[i]n Appendix B to its Local Rules, this Court has established rates that are deemed reasonable for lodestar calculations." *Hackett v. ADF Rests. Investments*, 259 F. Supp.3d 360, 368 (D. Md. 2016). Indeed, as recently stated in another case involving Plaintiffs' counsel, "the Guidelines' rates are more representative of a broader range of fees charged by practitioners appearing in federal court in Maryland." *Chaten v. Marketsmart LLC*, Civ. A. No. PX-19-1165, 2020 WL 4726631, at *6 (D. Md. Aug. 14, 2020) (internal quotation marks and citation omitted), *report and recommendation adopted without objection by*, 2020 WL 13569350, at *1 (D. Md. Sept. 17, 2020).[19]

Plaintiffs highlight that their counsel was recently awarded above Appendix B rates in the case of *Orellana v. ACL Cleaning, LLC*. *See* Pl.s' Memo. in Supp. of Mot. for Attorney's Fees and Costs at 31. What Plaintiffs herein neglect to mention is that the defendants in that case were *pro se* and that, despite the comment in the Court's ruling that the "issues have been briefed," arguably implying that an opposition of some sort had been filed, plaintiff's motion for fees in *Orellana* was actually <u>completely</u> <u>uncontested</u>, as review of the docket entries makes clear. *See Orellana v. ACL Cleaning, LLC*, Civ. A. No. DKC-19-2318, 2022 WL 3586513, at *1 (D. Md. Aug. 22, 2022). *See also* Docket Entries in *Orellana*, Civ. A. No. DKC-19-2318, at ECF Nos. 61-68. And even under those most favorable of circumstances for Plaintiffs' counsel, the Court in *Orellana*, just a matter of months ago, still cut down Mr. Balashov's proposed

---

[19] It is worth noting that, in the *Chaten* case, Plaintiffs' counsel did seek rates higher than Appendix B, but then did <u>not</u> <u>object</u> to the reduction of those rates to ones within the Appendix B ranges when afforded the chance to do so. *See Chaten v. Marketsmart LLC*, Civ. A. No. PX-19-1165, 2020 WL 4726631, at *7 (D. Md. Aug. 14, 2020) ("the hourly rates sought by Plaintiff's counsel, law clerk, and paralegals will be adjusted downward to comply with the Guidelines"), *report and recommendation adopted without objection by*, 2020 WL 13569350, at *1 (D. Md. Sept. 17, 2020).

hourly rate, commenting that "the [$350] rate requested for [him] is <u>too high</u>."[20]  *Orellana*, Civ. A. No. DKC-19-2318, 2022 WL 3586513, at *2 (emphasis added).

Moreover, it is useful to compare Judge Chasanow's decision in the *Orellana* case to Her Honor's very recent decision in another case involving these same attorneys, *Ramnarine v. Rainbow Child Dev. Ctr. Inc.*, Civ. A. No. DKC-17-2261, 2023 WL 1416031 (D. Md. Jan 31, 2023), *adopting report and recommendation of*, Civ. A. No. PWG-17-2261, 2022 WL 16709764 (D. Md. Nov. 4, 2022).  In *Ramnarine*, wherein, unlike the *Orellana* case, the motion for fees was actually <u>contested</u> by the defense, Judge Chasanow adopted the assigned U.S. Magistrate Judge's recommendation to reduce Plaintiffs' counsel's rates to ones <u>within the ranges of Appendix B</u>.  *See Ramnarine*, Civ. A. No. PWG-17-2261, 2022 WL 16709764, at *7 (D. Md. Nov. 4, 2022), *report and recommendation adopted by*, Civ. A. No. DKC-17-2261, 2023 WL 1416031 (D. Md. Jan 31, 2023).  The obvious conclusion, considering that the exact same Judge awarded fees in both cases, is that the higher rate was only awarded in *Orellana* due to the motion for fees being wholly uncontested.  In other words, the *Orellana* award is an outlier, easily distinguishable, and worthy of no consideration by this Court in the above-captioned case.

Plaintiffs also cite two other cases, at pages 30 to 31 of their Memorandum, for the proposition that this Court has awarded their counsel higher levels of fees in the past: *Quijano v.*

---

[20]  Plaintiffs' counsel is seeking this same rate -- $350 per hour -- once again for Mr. Balashov in the above-captioned case.  *See* Pl.s' Memo. in Supp. of Mot. for Attorney's Fees and Costs at 4.  It bears mentioning that $350 is the <u>ceiling</u> of hourly rates under Appendix B for attorneys admitted to the bar for <u>between nine and 14 years</u>.  *See* Appx. B to Local Rules.  To this day, Mr. Balashov still has not been admitted to the bar for nine years.  He first became a member of the Maryland bar in December 2015.  *See* www.mdcourts.gov/attysearch.  As such, he won't reach the nine-year mark until December of 2024.  And when the above-captioned case began in August 2020, he had actually been a bar member for less than five years, which has a range under Appendix B of $150-225.  *See* Appx. B to Local Rules.  As stated by Mr. Hoffman, who is significantly more experienced than Mr. Balashov, he still finds it "difficult to charge $350/hour to individuals and businesses, after 23 years of practice."  Hoffman's May 3, 2023 Decl. at ¶ 19.  Needless to say, to quote the Court in *Orellana*, a fee of $350 per hour for Ms. Balashov's service is simply too high.

*Mizpah Bldg. Svcs., LLC*, Civ. A. No. 19-00038-PJM,[21] and *Boyd v. SFS Comm's, LLC*, Civ. A. No. 15-cv-3068 PJM. However, this Court has also already explained, in other very recent cases involving these exact same attorneys, why these two cases do not have useful or broad application, and, more importantly, the reasons given by the Court in these other recent cases are equally applicable to the above-captioned case. *See Carranza v. Ramirez*, Civ. A. No. PWG-20-2687, 2022 WL 4080310, at *4-*5 (D. Md. Sept. 6, 2022) (in a case in which plaintiff's motion for fees was unopposed, Court found that *Boyd* was distinguishable because, among other things, it was "a class action suit against multiple defendants that lasted seven years," and that *Quijano* was likewise distinguishable because "[t]he majority of the hours for each attorney were billed at rates either within or slightly above the guidelines rates." The Court also noted that "Mr. and Mrs. Melehy's experience and level of skill, though significant, also does not warrant an enhancement here, because the case did not involve any novel or particularly difficult questions."). *See also Ramnarine v. Rainbow Child Dev. Ctr. Inc.*, Civ. A. No. PWG-17-2261, 2022 WL 16709764, at *5 n.2 (D. Md. Nov. 4, 2022) ("*Boyd* is distinguishable from this case in that the Plaintiffs were able to conditionally certify a class. Accordingly, it accords with the factors I sketch out below in which departure from the rates in Appendix B may be appropriate. Additionally, the parties stipulated to the awarding of rates which plaintiffs' counsel in that case requested." (citation omitted)), *report and recommendation adopted by*, Civ. A. No. DKC-17-2261, 2023 WL 1416031 (D. Md. Jan 31, 2023). The above-captioned case was not especially complex, did not involve any novel issues, was not a class or collective action, and Defendants are not stipulating to Plaintiffs' counsel's requested hourly rates. As such, *Quijano* and *Boyd*, just like *Orellano*, simply do not have any bearing on the issues before this Court in this case.

---

[21] It should also be noted that, in *Quijano*, defendants never appeared at all to contest anything, including the award of attorney's fees. As such, all of plaintiffs' requests for relief were unopposed. *See generally* Docket Entries in *Quijano*, Civ. A. No. 19-00038-PJM.

Turning next, briefly, to the issue of this Court's history of reducing Plaintiffs' counsel's requests for fees in other cases, there is a sizeable set of cases in which this has occurred, some of which are referenced hereinabove. Rather than "reinvent the wheel," however, undersigned counsel will adopt a listing of such cases generated by a fellow practitioner who is likewise representing an employer in opposing a motion for fees and costs by these same attorneys. *See* Nov. 14, 2022 Listing of "Melehy Fee Awards," submitted herewith as "Exhibit 12." In addition to the six cases involving some percentage of reduction by the Court listed therein,[22] there has since been a similar reduction imposed in the *Ramnarine* case mentioned above.

## B. *Johnson* Factors

As recently stated by this Court in a case involving Plaintiffs' counsel herein:

> The Supreme Court has explained that "[a] reasonable attorney's fee is one that is adequate to attract competent counsel, but ... [that does] not produce windfalls to attorneys." *Blum v. Stenson*, 465 U.S. 886, 897 (1984) (internal citation and quotation marks omitted). The amount of attorney's fees to be awarded is within this Court's "sound discretion." *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984).
>
> The Supreme Court has cautioned that "determination of fees 'should not result in a second major litigation.'" *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). As a result, although counsel for the prevailing plaintiff must submit the requisite proof of its entitlement to an award, "trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.*
>
> To determine what constitutes a reasonable award, courts use a three-step process. First, the Court calculates the lodestar amount, defined as "the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum*, 465 U.S. at 888. In calculating the lodestar, the Court Considers the factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013) (citing *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009)). The *Johnson* factors are as follows:
>
> (1) the time and labor required;

---

[22] The reductions by the Court range from between 21% to more than 50%. *See* Nov. 14, 2022 Listing of "Melehy Fee Awards," submitted herewith as "Exhibit 12."

(2) the novelty and difficulty of the questions;
(3) the skill requisite to perform the legal service properly;
(4) the preclusion of employment by the attorney due to acceptance of the case;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) time limitations imposed by the client or the circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation, and ability of the attorneys;
(10) the "undesirability" of the case;
(11) the nature and length of the professional relationship with the client; and
(12) awards in similar cases.

*Johnson*, 488 F.2d at 717–19. As the Supreme Court explained in *Perdue v. Kenny A. ex rel. Winn*, "the lodestar figure includes most, if not all, of the relevant factors constituting a reasonable attorney's fee." 559 U.S. 542, 553 (2010) (internal quotation marks omitted). Thus, "there is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Id.* at 554.

Second, the Court must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Robinson*, 560 F.3d at 244. Third, "the court should award 'some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.'" *McAfee*, 738 F.3d at 88 (quoting *Robinson*, 560 F.3d at 244).

*Carrera v. EMD Sales, Inc.*, Civ. A. No. JKB-17-3066, 2021 WL 3856287, at *3-*4 (D. Md. Aug. 27, 2021). Many of these points are already covered above, *see supra* Parts I, II, and III.A., as well as in Mr. Hoffman's Declaration, *see generally* Hoffman's May 3, 2023 Decl., all of which are incorporated herein by reference. And Defendants will further address the first listed factor -- "the time and labor required" -- at the end of this section of their Opposition. For now, Defendants will briefly further address the other *Johnson* factors.

### 1. Novelty and difficulty of questions (factor 2)

As made clear above, Defendants view nothing about this case to have been novel or particularly difficult, as they would hope the Court would agree. There is an interesting dynamic to be considered here, which is something undersigned counsel often felt as he was litigating this

case. The case was not complex. In fact, undersigned counsel (who practices almost exclusively plaintiff's-side employment law, as a review of his cases before this Court will readily demonstrate) would estimate that this was probably the most straightforward case he was handling during the time of its pendency. This case, unlike undersigned counsel's say, discrimination cases, did not involve issues of intent or causally connecting retaliatory behaviors with protected activity. It was about how many hours Plaintiffs worked and then "doing the math," if you will, to calculate the amounts owed in light of the wages paid and those not paid. There was, no doubt, work to be done to establish those hours by Plaintiffs' counsel, and by undersigned counsel in trying to assist his clients in defending against the claims, but it was just not an especially difficult case, relatively speaking. Yet, as described above, Plaintiffs, time and again, sought to make it difficult. But their over-the-top efforts don't make it so.

### 2. Skill requisite to perform legal service properly (factor 3)

Plaintiffs are certainly entitled to be represented by competent counsel and Plaintiffs' counsel is experienced and skilled in the wage and hour arena. Defendants would not suggest otherwise. An important point to be made here, however, is that the attorney who handled the case day-to-day in dealing with undersigned counsel, Mr. Balashov, clearly had the requisite experience and skill to handle the case through to the conclusion of the trial. Indeed, on the website for Plaintiffs' counsel's firm, he is marketed to potential clients with the following comment: "Mr. Balashov practices general civil litigation, including class and collective actions, with a primary focus on wage theft and other wage and hour disputes." *See* https://www.melehylaw.com/about-us/andrew-balashov2/ (emphasis added). The fact that he was entirely left out of the trial and replaced by not just one, but the two highest-priced attorneys in Plaintiffs' counsel's firm is what concerns Defendants. If Mr. Balashov alone handled the whole case (and especially if his hourly rate were reduced to an even more appropriate level), the

fees being sought by Plaintiffs would be dramatically lower.  That's what should have occurred.  *See* Hoffman's May 3, 2023 Decl. at ¶ 19, 23, 24.

And in lieu of Mr. Balashov handing the trial, clearly only Mrs. <u>or</u> Mr. Melehy needed to be present.  *See id.* at ¶ 48 ("I do not understand why both Mr. and Mrs. Melehy needed to be present at Trial.").  Indeed, Plaintiffs freely admit as much.  In their Motion, Plaintiffs state as follows: "'[i]t is not unreasonable that the number of attorneys used by the defendant at trial should serve as a gauge of the appropriateness of the plaintiff's use of multiple attorneys.'"  Pl.s' Memo. in Supp. of Mot. for Attorney's Fees and Costs at 21 (quoting *Finch v. Hercules Inc*., 941 F. Supp. 1395, 1425–26 (D. Del. 1996)).  As this Court certainly knows, the three Defendants in this case were represented at trial by undersigned counsel <u>alone</u>.  Applying the above standard cited by Plaintiffs themselves means that the two Plaintiffs should have likewise been represented by <u>one</u> attorney.  *See id*.  *See also* Hoffman's May 3, 2023 Decl. at ¶ 29 ("The fact that the Defendant[s] [were] represented by a solo attorney should provide some indication that the needs of this case were not so great as to demand nine (9) timekeepers.").

Just consider the following arguments by Plaintiffs in their Motion:

> [T]he fees sought are justified by the factual complexity of this case, the number of contested issues, witnesses and exhibits as well as the length of trial, and the presence of two attorneys on behalf of Plaintiffs justifies Plaintiffs' request for attorneys' fees for Mr. and Mrs. Melehy's attendance on each day of trial.  It was essential for Plaintiffs to have two trial counsel because of the number of witnesses and the dividing of roles.

Pl.s' Memo. in Supp. of Mot. for Attorney's Fees and Costs at 22.  There is almost nothing about these assertions that jibes with reality.  As Defendants would imagine this Court can appreciate, the case was not factually complex, there were only a handful of issues and some of them were not seriously in controversy, there weren't really that many exhibits and certainly <u>very few</u>

categories of exhibits,[23] and the trial wasn't especially long at 4.5 days.  Finally, Plaintiffs contention that "the presence of two attorneys on behalf of Plaintiffs justifies Plaintiffs' request for attorneys' fees for Mr. and Mrs. Melehy's attendance on each day of trial" is just nonsensical.

Lastly, even if compensation for two attorneys is unexpectedly permitted by the Court in this case, at least one of them certainly should have been Mr. Balashov, with the rate charged by him being significantly reduced, as it was in a very recent decision by this Court.  *See Ramnarine*, Civ. A. No. DKC-17-2261, 2023 WL 1416031, at *4 (in case in which Plaintiff was represented at trial by Mr. Melehy and just his associate, Mr. Balashov, Court upheld recommendation of U.S. Magistrate in which the Magistrate had "analyze[d] the work performed by Mr. Balashov, discussed the propriety of attendance at trial by two attorneys, and ultimately reduced the rate for Mr. Balashov's trial time to $180 per hour.").

### 3. *Preclusion of employment by attorney due to acceptance of case (factor 4)*

Defendants are frankly unsure how this is an issue here.  It is an obvious proposition that Plaintiffs' counsel spending time on this case reduces the time they can spend on other cases. That is dictated by the finite structure of the passage of time.  Having said that, it is Plaintiffs' counsel who <u>chose</u> to spend so much time on this case and <u>chose</u> to assign so many lawyers and support staff to this case.  Those choices should not make this issue Defendants' problem. Moreover, Plaintiffs undercut their own argument by stating as follows: "When Plaintiffs' counsel began discovery in this case, they had 12 D.C. Wage Law cases.  And when Plaintiffs' counsel began preparing for trial in this case, they had 23 cases under the D.C. wage laws pending."  Pl.s' Memo. in Supp. of Mot. for Attorney's Fees and Costs at 26 (citations omitted). Putting aside Plaintiffs' reference to cases in a neighboring jurisdiction, it certainly seems like their counsel is not lacking in business due to this case, at all.

---

[23] *See* Plaintiffs' Exhibit List (ECF No. 104); Defendants' Exhibit List (ECF No. 105).

### 4. Customary fee (factor 5)

This issue is already fully addressed elsewhere in this Opposition and in Mr. Hoffman's Declaration. Defendants won't burden the Court unnecessarily with further argument here.

### 5. Whether fee is fixed or contingent (factor 6)

Plaintiffs Motion indicates that this factor is instead "expectations at the outset of the litigation," though their argument focuses heavily on the contingency basis of their representation in this case. *See id*. According to Plaintiffs, their counsel should be awarded a "risk premium" by virtue of their contingency-basis representation. *See id*. At the risk of being blunt, there is an obvious reason why wage and hour cases, particularly in relation to those where the exemptions are not an issue, are taken on a contingency basis. They are akin to personal injury cases (but even better due to the fee-shifting that exists in wage and hour cases). The odds in these cases are stacked heavily in a plaintiff's favor. Mr. Hoffman shares undersigned counsel's view, as demonstrated by his Declaration wherein he states as follows:

> The competition among lawyers for Plaintiff side FLSA cases is very substantial. There are many lawyers who take worker FLSA cases and do not otherwise take employment cases, principally because they believe the cases are easy. (This is not to say that they handle those cases well). If the goal is to achieve a fee that will incentivize counsel to take a case, query whether the competition for those cases should inform the reasonable hourly fee. Based on my review, this FLSA case could not have been more straightforward and that is true regardless of whatever the Defendants did to challenge the Plaintiffs - denials of coverage are easy to address in discovery and trial and claims of independent contractor status are relatively easy to evaluate and address in litigation.
> ....
> 23. Other examples perhaps exist, but this very straightforward case would be highly desirable amongst the employment bar representing employees, with liability being fairly transparent. I can think of multiple law firms and lawyers that would be very eager to represent the workers in this case, many of whom would be able to speak Spanish or not need translation services from a staff member. Simply put, the competition for this case is intense whereas the competition to advance other employment cases, such as termination/retaliation cases and inmate FLSA rights - not so much. I see this case requiring no specific skill set and I would have been able to handle this case quite easily five years

out of law school. I would have staffed this case with just my associate Jordan S. Liew, Esq. as the lead, providing him with minimal supervision. It is my opinion that the issues and needs of this case only required a single lawyer with Mr. Balashov's experience and education to obtain a positive result.

24. Thus, the desirability of this case (competition amongst lawyers for FLSA cases), combined with the relatively straightforward and easy issues, does not warrant substantial hourly fees to incentivize counsel to accept this case.

Hoffman's May 3, 2023 Decl. at ¶¶ 21, 23, 24 (footnote omitted).  In reality, there was little "risk" to Plaintiffs' counsel, and there should thus be no "premium" associated therewith.

### 6. *Time limitations imposed by clients or circumstances (factor 7)*

Here, somewhat oddly in Defendants' view, Plaintiffs focus on the implications of the three-year statute of limitations and lack of pre-judgment interest. *See* Pl.s' Memo. in Supp. of Mot. for Attorney's Fees and Costs at 27.  Neither of these dynamics have anything to do with Defendants, and Defendants certainly should not pay a heftier price tag due to the existence of statutory limitations on Plaintiffs' claims that are entirely beyond Defendants' control. Moreover, it bears mentioning, as the Court can see, that the running of the statute of limitations in this case cost Plaintiffs, collectively, an extremely *de minimum* amount of damages.

### 7. *Amount involved and results obtained (factor 8)*

According to Plaintiffs, "At trial, [they] sought total damages of $111,946.72 but received a total of $66,991.64 (60% of the amount sought)." *Id*. at 10.  While hardly ecstatic, Defendants are quite pleased that the Court saw fit to cut 40% off the inflated sum of damages sought by Plaintiffs.  Plaintiffs had clearly overestimated the hours they worked, and the Court recognized that fact.  That's a good thing.

Plaintiffs also focus in their Motion on the "public interest" being served by the outcome of this case, citing a series of cases from other jurisdictions. *See id*. at 27-28.  This Court adjudged in this case that Plaintiffs were underpaid by Defendants, and therefore ruled that they are entitled to receive unpaid wages and liquidated damages.  Plaintiffs now have an enforceable

judgment for their damages.  That serves their "interest."  However, Defendants would suggest that the "interest" of the "public" more broadly -- of which Defendants, just like Plaintiffs, are also a hard-working part -- are not served by the imposition of astonishingly high levels of fees and costs against employers.  *See Almendarez v. J.T.T. Enterprises Corp*., Civ. A. No. JKS-06-68, 2010 WL 3385362, at *4 (D. Md. Aug. 25, 2010) ("An award of attorney's fees is not designed to provide Plaintiffs' attorneys with a windfall.").  *See also* Hoffman's May 3, 2023 Decl. at ¶ 33.  The outcome of this case, especially considering the 60% success rate, does not warrant an award for fees and costs in the amounts sought by Plaintiffs, as doing so would be, in Defendants' view, both unjust and even punitive.

### 8.  *Experience, reputation, and ability of attorneys (factor 9)*

With one exception, this factor has already been adequately addressed above, and those prior arguments are incorporated herein by reference.  The one caveat is the comment by Plaintiffs that "Mr. and Mrs. Melehy served as lead counsel throughout the case."  *Id*. at 28.  As noted previously, undersigned counsel dealt day-to-day in the litigation with Ms. Balashov, though Mrs. Melehy took/defended depositions and communicated on behalf of Plaintiffs in teleconferences with the Court.  As for Mr. Melehy, there was essentially no communication by undersigned counsel with him prior to the lead up to trial and at trial, and he only entered his appearance in the case in January of this year.  *See* Jan. 13, 2023 Entry of Appearance (ECF No. 84).  More accurate is the comment made later by Plaintiffs in their Motion that "[a]ssociate attorney Andrew Balashov also worked extensively on this case."  Pl.s' Memo. in Supp. of Mot. for Attorney's Fees and Costs at 29.  Putting aside, for the moment, Defendants' position that Mr. Balashov worked <u>too</u> extensively on the case, this assertion is much more in line with the reality of the situation, from what Defendants could see.

### 9.  "Undesirability" of the case (factor 10)

Again, with one exception, this factor has already been adequately addressed above, and those prior arguments are incorporated herein by reference.  In their Motion, Plaintiffs make this off-handed comment about Defendants being an "usually well-financed employer-defendant." *Id*. at 30.  Defendants are not even exactly sure what that even means, but the "well-financed" part is just not true.

### 10.  Nature/length of professional relationship with clients (factor 11)

Defendants do not see how this factor has any bearing on this case and will simply incorporate herein their other arguments.

### 11.  Awards in similar cases (factor 12)

Plaintiff has already addressed this factor elsewhere in this Opposition and those arguments are incorporated herein by reference.

### 12.  Time and labor required (factor 1)

#### a.  Hourly rates requested by Plaintiffs' counsel far too high

Returning now to *Johnson* factor 1 -- the issue of the time and labor required for Plaintiffs' counsel to have litigated this case -- Defendants will start by further addressing the issue of the appropriate hourly rates for said "time and labor."  As detailed above, in essentially any case in which Plaintiffs' counsel's request for fees was contested on some level, and even sometimes when they were not, this Court has just about always reduced said counsel's rates to those within the applicable Appendix B ranges.  *See supra* Part III.A.  And the above-captioned case is certainly <u>not</u> the one in which to "break new ground."

A fair and reasonable set of rates in this case are those proposed by Mr. Hoffman in his detailed and substantive Declaration, which are as follows: "Mr. Melehy should be compensated at $475/hour; Mrs. Melehy compensated at $400/hour; and Mr. Balashov compensated at

$275/hour." Hoffman May 3, 2023 Decl. at ¶ 24. Mr. Hoffman does not express a specific opinion about paralegal rates, but this Honorable Court, in similar recent cases involving Plaintiffs' counsel's firm, has repeatedly reduced their requested paralegal rate to $95/hour, which is the bottom of the Appendix B range for paralegals. *See, e.g., Carranza*, Civ. A. No. PWG-20-2687, 2022 WL 4080310, at *5; *Carrera*, Civ. A. No. JKB-17-3066, 2021 WL 3856287, at *6. Nonetheless, Defendants are agreeable to a rate of $125/hour for Plaintiffs' counsel's paralegals, which is north of the midway point of the applicable range in Appendix B.

b. *Hours allegedly spent by Plaintiffs' counsel likewise far too high*

Next, Defendants will turn to the various categories of allegedly billable work for which Plaintiffs are seeking attorney's fees. Defendants are asking this Court to apply the hourly rates recited in the preceding paragraph to the timekeepers at Plaintiffs' counsel's firm, and then further reduce the fees, dependent upon whether or not the fees can actually be charged to an employer-defendant such as Defendants and/or the pertinence of the underlying allegedly billable task to the litigation.

In relation to the issue of these further reductions, Defendants hope they have provided a useful tool to the Court by reciting their objections to Plaintiffs' counsel's various time entries. *See* Def.s' Objections to Time Entries, submitted herewith as "Exhibit 13." As the Court will see, Defendants used Plaintiffs listing of their own time entries in their Exhibit A to their Motion and then modified Plaintiffs' listing by adding numbers (in the "Category" field of the pages of said Exhibit A)[24] that correspond to a key of Defendants' various objection at the front of Defendants' Objections. *See id*. It should be noted that not every objection by Defendants is calling for an outright deletion of a given time entry. On the contrary, many of them, if granted

---

[24] Space was at a premium in Plaintiffs' Exhibit A, so this was the most efficient place to show Defendants' objections without having to shrink the text down even smaller than it already is.

by the Court, would only necessitate a reduction of the fee being sought by Plaintiffs (beyond Defendants requested hourly rate reduction) for a given task.  Also, while Defendants have tried their best to assert every applicable objection to Plaintiffs' very large array of time entries, they would ask the Court to nonetheless use its discretion to reduce or delete additional time entries that the Court, *sua sponte*, finds are inappropriate.

There are a handful of important concepts that warrant mentioning before delving into the various categories of time entries, though this should not be construed by the Court as an all-inclusive list.  First, "[t]he burden is on the prevailing party to provide time sheets sufficiently detailed to justify the hours sought."  *Carranza*, Civ. A. No. PWG 20-2687, 2022 WL 4080310, at *2 (emphasis added).  Second, "[c]lerical work is not properly billable as legal fees to one's adversary even if it is performed by a paralegal or assistant."  *Carranza*, Civ. A. No. PWG-20-2687, 2022 WL 4080310, at *3 (citation and internal quotations omitted).  Third, "[a] plaintiff may be entitled to recover fees incurred during an unsuccessful stage of the litigation, as long as that unsuccessful stage constituted a necessary step to ultimate victory.  In other words, plaintiffs are to be compensated for attorneys' fees incurred for services that contribute to the ultimate victory in the lawsuit."  *Jahn v. Tiffin Holdings, Inc.*, Civ. A. No. SAG-18-1782, 2020 WL 4436375, at *4 (Aug. 3, 2020) (citations and internal quotation marks and brackets omitted).  The implication of this principle is that, where fees were allegedly incurred but did not contribute to the "ultimate victory," they are not recoverable from the defense.  Fourth, on a related note:

> [o]nce the court has ascertained a reasonable hourly rate, the party seeking attorney's fees must show that the number of hours for which he seeks reimbursement is reasonable and does not include hours that are excessive, redundant, or otherwise unnecessary.  When analyzing the reasonableness of the number of hours claimed in a fee petition, the Supreme Court has observed,
> > The district court ... should exclude from this initial fee calculation hours that were not reasonably expended.  Cases may be overstaffed, and the skill and experience of lawyers vary widely.  Counsel for the prevailing party should make a good faith effort to

> exclude from a fee request hours that are excessive, redundant, or
> otherwise unnecessary, just as a lawyer in private practice ethically
> is obligated to exclude such hours from his fee submission.  In the
> private sector, billing judgment is an important component in fee
> setting.  It is no less important here.  Hours that are not properly
> billed to one's *client* also are not properly billed to one's *adversary*
> pursuant to statutory authority.

A court must adjust the number of hours to delete duplicative or unrelated hours,
and the number of hours must be reasonable and represent the product of billing
judgment.  To calculate reasonable hours, the essential consideration is whether a
reasonable attorney would have expended similar hours in pursuit of the case.  In
reducing a claim for time spent, the court may use a percentage deduction as a
practical means of trimming fat from a fee application.

*Carrera*, Civ. A. No. JKB-17-3066, 2021 WL 3856287, at *6-*7 (all internal citations and

quotation marks omitted) (emphasis in original).  Fifth, while individualized objections to

individualized time entries have some value, and have been painstaking provide herewith, they

have lesser significance in a case such as this where there are literally thousands of such entries

to pour over and hundreds of thousands of dollars in fees being sought for having allegedly

worked well over 1,000 billable hours.  *See, e.g., id.* at *8 n.7 ("Although Defendants raise

numerous specific objections to hours billed in each category of work for the case, the Court

declines to consider each objection specifically where Plaintiffs' fee petition comprises

thousands of hours of time entries and the Courts ultimate objective is to do rough justice, not to

achieve auditing perfection." (citation omitted)).  Finally, on a related note, this Honorable

Court, in a non-FLSA fee-shifting case, recently made clear that overstaffing -- such as that

which occurred in the above-captioned case, in Defendants' view -- "was a 'sound basis for

disallowing attorney hours spent.'"  *Parker v. Reema Consulting Svcs., Inc.*, Civ. A. No. TDC-

17-1648, 2022 WL 2905475, at *4 (D. Md. July 21, 2022) (quoting *Goodwin v. Metts*, 973 F.2d

378, 385 (4th Cir. 1992)).  And a reduction on this basis can be broad-based and quite

substantial.  *See, e.g., id.* at *4-*6; *Spell v. McDaniel*, 852 F.2d 762, 768-70 (4th Cir. 1988)

(cutting the hours billed by roughly 70% on account of overstaffing by attorneys).  With all of

that having been said, Defendants will next turn to Plaintiffs' categories of allegedly billable time.  In consideration of the above dynamics, Defendants, in their arguments below, will request percentage reductions of various categories of work performed by Plaintiffs' counsel rather than cuts based upon pinpoint dollar figures, which would border on the impossible.

### (1)  Case development

Defendants have only modest concerns about the 13.2 hours allegedly spent on case development.  Without conceding any concerns that the Court may have on its own, Defendants would request, following a reduction down to the hourly rates cited above, *see supra* Part III.B.12.a., that the Court further reduce the recovery of fees for this category of work by 10%.

### (2)  Pleadings

Again, without conceding any concerns that the Court may have on its own, Defendants will "pick their battles" and not quarrel specifically with the 7.5 "billed" hours spent on these tasks since it is a modest amount of time.  Having said that, Defendants do take issue, as they do for every category of Plaintiffs' counsel's time entries, with the hourly rates charged by the four timekeepers (Messrs. Melehy, Balashov, Grau, and Mrs. Melehy), and question, generally, why it takes four people to do this.  In sum, however, all that Defendants are requesting here is the reduction of hourly rated down to the rates cited above.  *See id*.

### (3)  Interpreting

This Court recently ruled, in a decision by Judge Chasanow involving Plaintiffs' counsel's firm, that "Ms. Aguilar's 'role as an interpreter of Plaintiff[s] Spanish … should <u>not</u> be accorded attorney's fees[.]'"  *Orellana*, Civ. A. No. DKC-19-2318, 2022 WL 3586513, at *3 (quoting *Saavedra v. Richards*, Civ. A. No. 10-cv-0856, 2012 WL 13128570, at *7 (S.D. Tex.

Mar. 22, 2012) (brackets and ellipsis in original) (emphasis added).[25]  Moreover, while of lesser significance than a ruling by Judge Chasnow, but certainly still of some value, Mr. Hoffman commented in his Declaration on this very subject and shared Her Honor's view:

> If I was going to concentrate on wage/hour cases involving foreign-language speaking clients (which I have *not done*), particularly at the volume that M&A *apparently* does, I would either (i) hire staff who would translate; or (ii) hire an interpreter.  Either way, I would consider the cost of translation to be a cost of doing business, as I cannot conceive of representing a fee-paying foreign language speaking client and charging them for translation.

Hoffman's May 3, 2023 Decl. at ¶ 28 (emphasis in original).  Moreover, Plaintiffs' counsel's firm markets itself to the Spanish-speaking community, expressly indicating in its website that the firm provides "legal services … in English and Spanish."  *See* melehylaw.com.  There is also a clickable prompt at the top of the website to convert the entire site into Spanish.  *See id*.  The firm should be expected, therefore, to bear the cost of translation with their Spanish-speaking clients as a cost of doing business.  For these reasons, the fee charged to Defendants for interpreting by Plaintiffs' counsel's staff should not be $24,422.50, but should instead be <u>zero</u>.

*(4)  Factual investigation*

In this factual investigation category, somewhat like the discovery category described below, the Court, hopefully aided by Defendants set of objections and their arguments throughout this Opposition, can begin to truly see how much excess as well as unnecessary and redundant efforts were undertaken by Plaintiffs' counsel in this case.  So, with respect to the 47.7 hours for which Plaintiffs are seeking fees in relation to this category, Defendants are requesting, following the reduction of the hourly rates to those set forth above, *see supra* Part III.B.12.a., that the Court further reduce the recovery of fees for this category of work by no less than 40%.

---

[25]  As noted previously, the motion for fees in the *Orellana* case was uncontested, and Judge Chasnow <u>still</u> would not allow this fee to be charged to the defense.  *See supra* Part III.A.

*(5)  Discovery motion*

With respect to discovery motions, Defendants concerns relate primarily to overstaffing, the assigning of an overly-experienced attorney to handle run-of-the-mill matters, the periodic lack of success by Plaintiffs, and the limited value of what they "achieved" when their desired relief was granted.  So, for the 35.4 hours for which fees are being sought in this category, Defendants would ask the Court, following the reduction of the hourly rates, *see supra* Part III.B.12.a., to further reduce the recovery of fees for this category of work by no less than 50%.

*(6)  Discovery*

With respect to their work in the area of discovery, Plaintiffs' counsel seeks $114,045.77 in fees, claiming to have spent 347.4 in billable hours on discovery.  *See* Pl.s' Memo. in Supp. of Mot. for Attorney's Fees and Costs at 16.  What strikes Defendants almost immediately upon their review of Exhibit A to Plaintiffs' Motion, which is their "Summary of Plaintiffs' Attorneys' Fees," are two interrelated dynamics.  The first one is just the sheer number of people working on the same things.  This is hardly efficient and inherently creates a duplication of efforts.  The second is how much of these efforts mattered either very little or not at all.  One of the quickest ways for the Court to make this assessment is to compare the massive array of topics involved in these efforts and then, bearing in mind that no dispositive motions were filed in the case, cross reference these topics of inquiry (or gathering and examinations of records on various topics) with the listing of exhibits that were actually used at trial by the parties.  *Compare id*. at Exhibit A *with* Plaintiffs' Exhibit List (ECF No. 104); Defendants' Exhibit List (ECF No. 105).  The exhibits actually used at trial were those very commonly offered and admitted in these types of cases -- things like paychecks and some text message exchanges.  *See* Plaintiffs' Exhibit List (ECF No. 104); Defendants' Exhibit List (ECF No. 105).  Conversely, the "Summary of Plaintiffs' Attorneys' Fees" reads like the discovery was instead related to some massive

commercial litigation involving many parties with millions of dollars at stake. Again, Defendants remind the Court, as noted above, that they were served in this case with more than 16,600 pages of documents by Plaintiffs! It's just plain amazing. The Court should also take into account that Plaintiffs took a grand total of three depositions, including Defendants Mr. and Mrs. Nguyen (though they tried to take more). *See* Pl.s' Memo. in Supp. of Mot. for Attorney's Fees and Costs at 19. And only a handful of witnesses beyond the Plaintiffs themselves testified in their case at trial. Yet, Defendants would ask the Court to just look at the many names of supposed witnesses who are referenced in the Summary. It is just unacceptable and unbelievable that any firm could generate the level of hours and fees that Plaintiffs' counsel are claiming. Beyond just reducing Plaintiffs' counsel's and their staff's hourly rates, *see supra* Part III.B.12.a., the total amount of hours should be further cut by the Court by no less than 50%.

*(7) Trial Preparation*

Continuing with this theme, Plaintiffs and their counsel were similarly reckless, in Defendants' view, when it came to the accruing of fees for trial preparation, which Plaintiffs' counsel claims to have spent 262.2 hours on. That's the equivalent of one lawyer, working 40 hours per week, spending more than six-and-a-half weeks getting ready for the trial in this case while working on nothing else. In this regard, Defendants would again suggest that the Court review the witnesses and exhibits that were offered for the Court's consideration at trial. It just cannot be reasonable to take this long to prepare for this type of case. In consideration of this dynamic, Defendants arguments herein, and their objections, Defendants request, following a reduction of rates in keeping with Part III.B.12.a. above, that the recoverable fees for this segment of Plaintiffs' counsel's work be further reduced by no less than 60%.

*(8)  Trial attendance*

Plaintiffs contend in their Motion that their counsel spent 120 hours at trial in this case. That's <u>three</u> 40-hour weeks just to attend a trial that lasted less than one!  Putting aside the shocking nature of that figure alone, it gets even worse when you consider how much Plaintiffs' counsel wants to charge to Defendants for each of those hours.  Whether it's the hourly rates, the number of lawyers, or the charging full hourly rates to drive the 10 miles to the courthouse, there is almost nothing reasonable about the amount of fees desired by Plaintiffs for their counsel's attendance at the trial in this case.  If the case had been handled by Mr. Balashov, at the proper rate, it would have cost astonishingly less.  For these reasons, following the downward adjustment of hourly rates, *see supra* Part III.B.12.a., Defendants are asking this Honorable Court to further lower the sum of recoverable fees by Plaintiffs by no less than 60%.

*(9)  Damages calculation*

Despite the fact that there was a late shift in the amounts of damages being sought by Plaintiffs, apparently due to an error by them and/or their counsel, undoubtedly causing a higher level of fees to be incurred with respect to the calculation of damages, Defendants will forgo a further reduction of the fees for these alleged 22.6 hours of work by Plaintiffs' counsel, beyond a lowering of the hourly rates.  *See supra id.*

*(10)  ADR/Settlement*

The time (49.5 hours) and fees attributed to ADR/Settlement by Plaintiffs is excessive. There were two formal Settlement Conferences and little in the way of informal settlement communications.  Plaintiffs' counsel, again, overstaffed and overworked this issue.  Beyond a reduction of the hourly rates of counsel, *see supra id.*, Defendants request a further lowering of the fees for this work by at least 50%.

*(11)  Hearing attendance*

With respect to the 6.9 hours allegedly spent by Plaintiffs counsel to attend hearings, there was again overstaffing and Plaintiffs had limited success.  Defendants seek the same relief as that sought with respect to discovery motions, since most of the hearings related to the same issues.  *See supra* Part III.B.12.b.(5).

*(12)  Fee petition*

The 65.1 hours of work allegedly performed on the fee petition involved a lot of clerical, non-billable tasks.  *See Knox v. Hooper's Crab House, Inc.*, Civ. A. No. JCM-17-1853, 2019 WL 6117713, at *7 (D. Md. Nov. 18, 2019).  Moreover, as demonstrated elsewhere in this Opposition, Plaintiffs' counsel has considerable experience in preparing such petitions, which should have substantially increased their level of efficiency in generating this one.  In consideration of these dynamics, Defendants would ask the Court, following the reduction of hourly rates, *see supra* Part III.B.12.a., to further lower the fees sought by Plaintiffs' counsel for their fee petition by no less than 50%.

**C.  Some of Plaintiffs' Costs are Excessive and/or Ineligible for Recovery**

As the prevailing party, Plaintiffs are no doubt entitled to recover certain reasonable costs, but it should not seen as an opportunity to gouge Defendants.  In <u>opposition/objection</u> to both the <u>Motion for Attorney's Fees and Costs and the Bill of Costs</u>, Defendants state as follows:

<u>Copy costs</u>:  The award copy costs should be dramatically reduced by the Court.  Plaintiffs' descriptions of the reasons for the copies are not sufficiently precise and, to the extent they can be deciphered, it is apparent to Defendants that Plaintiffs secured <u>far</u> in excess of the number copies than they would ever need to successfully litigate this case.  *See supra* Parts I, II, III.A., and III.B.  *See also Carrera*, Civ. A. No. JKB-17-3066, 2021 WL 3856287, at *9.

Process server:  Defendants should not be obligated to pay for costs or witness fees for service or attempts at service of witnesses who never actually testified.  This would omit all such costs/fees being requested by Plaintiffs except those associated with testifying deponent Shania McDonald and testifying trial witnesses Camille Davis.  *See Carrera*, Civ. A. No. JKB-17-3066, 2021 WL 3856287, at *9-*10.

Court reporter:  Defendants should not need to pay the reporter's fees for witnesses who did not appear for deposition, namely, Ms. Chavez, Ms. Robinson, and Ms. Eva Nguyen.  *See id.*

Expert witness:  Defendants should not have to pay for experts who reviewed documents that were not used at trial, prepared reports that were also not used, and did not testify.

Snacks and meals:  Defendants should not be obligated to pay for snacks and meals of Plaintiffs and their counsel at trial.  *See, e.g., Parker*, Civ. A. No. TDC-17-1648, 2022 WL 2905475, at *7.  *See also* Hoffman May 3, 2023 Decl. at ¶ 28.

Office supplies:  Plaintiffs are asking for Defendants to pay for a mobile hotspot despite the fact that the courthouse has WIFI.  *See* https://www.mdd.uscourts.gov/courthousecourtroom-technology.  This cost should not be charged to Defendants.

## IV.  CONCLUSION

Defendants respectfully request that this Honorable Court (and the Clerk, in relation to taxed costs) reduce or deny Plaintiffs' requested relief, for the reasons presented herein.

Respectfully submitted,


_____/s/  Neil R. Lebowitz_____
Neil R. Lebowitz, Bar No.: 25155
Lebowitz Law Firm
5850 Waterloo Road, Suite 140
Columbia, Maryland 21045
neil@lebowitzlegal.com
410-730-9010
Counsel for Defendants