FLOR I. ARRIAZA DE PAREDES, et al.      *      IN THE

    Plaintiffs      *      U.S. DISTRICT COURT

   v.      *      FOR THE DISTRICT OF MARYLAND

ZEN NAILS STUDIO, LLC, et al.      *

Defendants      *      Civil Action No.:  TDC-20-2432

* * * * * * * * * * * * *

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEY'S
FEES AND COSTS AND DEFENDANTS' OPPOSITION/OBJECTIONS
TO PLAINTIFFS' BILL OF COSTS**

# Exhibit 1

**IN THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF MARYLAND
(Southern Division)**

FLOR I. ARRIAZA DE PAREDES, *et al.*   *

      **Plaintiff**            *

**v.**                       *       **Case No. 20-2432 (TDC)**

**ZEN NAILS STUDIO, LLC,** *et al.*    *

      **Defendants**       *

_____/

**<u>DECLARATION OF HOWARD B. HOFFMAN</u>**

1.  I, Howard B. Hoffman, Esq., am at least 18 years of age and competent to testify, and I am not a party to, or related to a party, in this action. I have never served as counsel to any party to this action. I am the principal attorney of Hoffman Employment Law, LLC.

2.  For the reason below, I believe I am qualified to testify as an expert witness in the following: (1) the general attorney rates for lawyers whose practice concentrate in employment law; (2) the general manner in which law firms reasonably litigate a claim by an individual for damages under the FLSA, particularly in a case such as this; (3) the education and work of legal assistants (and paralegals); (4) the overall reasonableness of fees requested by Plaintiffs, and my impression of what fees would be sufficient to incentivize counsel to undertake representation of the Plaintiffs in this case. Where appropriate, I have cited case law which may inform the basis for my opinion(s).

3.  It is my position that I am qualified to render an opinion in this case, as to each of these issues, to assist the Court in reaching a fair determination as to the parties' fee dispute. My opinions are informed by years of actual experience, as identified below, research, observations, and review of court decisions (including decisions in which I may have

Page 1

represented a party). This opinion is provided for use in this case alone, and I am receiving nominal consideration ($1,400.00) for my time in reviewing the Plaintiff's Fee Petition (and attachments) and preparing this Declaration.

### *My Background*

4.  It is my opinion that my experience and education is not unlike Plaintiff's two Declarants, Mr. Omar Melehy and Mrs. Suvita Melehy, although there are some differences. By way of background, I am an attorney in private practice, and I concentrate on employment law. From 1999 to 2002, I practiced in two prominent boutique employment law firms representing management clients. I have been practicing law since December 1999. I am admitted to the Maryland bar (since 1999), the District of Columbia bar (since 2007), and the Virginia bar (since 2015), as well as the U.S. Court of Appeals for the Fourth Circuit, the U.S. District Court for the District of Maryland,[1] the U.S. District Court for the District of Columbia, the U.S. District Court for Eastern District of Virginia and the U.S. District Court for the Western District of Virginia. I have extensive experience prosecuting and defending wage and hour cases and other employment law cases. I opened my own law practice in 2002, and on July 1, 2018, the practice began operating as Hoffman Employment Law, LLC ("Hoffman Law"). I employ one associate attorney, but at other times, have employed more than one associate attorney together with a law clerk.

5.  I am an honors graduate of University of Maryland School of Law (May, 1999), where I was the recipient of the "Shawe & Rosenthal" employment law prize, and the "Joseph Bernstein Prize" (for excellence in legal writing).

6.  I have been a Contributing Revisions Editor, Fair Labor Standards Act (BNA/ABA) from

---

[1]    I gained admission to this Court in January 2000.

2002 to 2020. I was asked to speak at a seminar in December 2012, for Maryland Employment Lawyers Association titled "Bringing Your First FLSA Collective Action: The Guts and Glory Of Overtime Wage Cases." I was selected to speak at a Lorman seminar in June 2013 to discuss principles of law under the FLSA. Most recently, I received the honor of being designated a "SuperLawyer"® in employment law in Maryland (2016-2023).

7. I have extensive experience in prosecuting and defending wage and hour lawsuits. Many of the well-known reported decisions in the District of Maryland addressing overtime and minimum wage rights, are cases that I have either prosecuted (represented the employee) or defended (represented the employer). These notable and widely cited decisions include, but are not limited to: Rose v. New Day Financial, et al., 816 F.Supp.2d 245, 2011 WL 4103276 (D. Md. Oct. 5, 2011) (Quarles, J.) (represented employer; motion to compel class-waiver arbitration granted); Chapman et al. v. Ourisman Chevrolet Co., Inc., 2011 WL 2651867 (D. Md. 2011) (Williams, J.) (representation of employee class in minimum wage dispute; summary judgment for employer denied); Williams et al. v. ezStorage Corp., 2011 WL 1539941 (D. Md. Apr. 21, 2011) (Bennett, J.) (conditional certification of FLSA collective action on behalf of employees); Gionfriddo et al. v. Jason Zink, LLC, et al., 769 F.Supp.2d 880 (D. Md. 2011) (Bennett, J.) (represented employer in FLSA case; granting motion for decertification); Dorsey et al. v. The Greene Turtle Franchising Corp., 2010 WL 3655544 (D. Md. 2010) (Blake, J.) (represented employees; grant of conditional certification of FLSA collective action); Williams et al. v. Long (d/b/a "Charm City Cupcakes"), 585 F.Supp.2d 679 (D. Md. 2008) (Grimm, J.) (represented employees; grant of conditional certification of FLSA collective action (widely cited in District)); Spencer

v. Central Services, LLC, et al., Case No. CCB-10-3469, 2012 WL 142978 (D. Md. Jan. 13, 2012) (grant of attorneys' fees and costs in FLSA case); Dorsey et al. v. TGT Consulting, LLC, 888 F.Supp.2d 670, 2012 WL 3629209 (D. Md. Aug. 20, 2012) (Blake, J.) (holding employee's earning statements were insufficient to inform employees of FLSA's tip credit requirements); Saman v. LDBP, Inc., 2012 WL 5463031 (D. Md. Nov. 7, 2012) (Chasanow, J.) (dismissal of supplemental state claim of wrongful discharge in FLSA case); and Hoffman v. Bear Chase Brewing Co., 21-1443 (TSE/WEF), 2023 WL 384293 (E.D. Va. Jan. 18, 2023) (denial of summary judgment in FLSA tip-retention case). Several of the aforementioned decisions resulted in additional precedent setting decisions in that same case, although they are not cited here. Many of the decisions further resulted in fee decisions awards either to my Firm, e.g., Dorsey, Chapman, Spencer, or awards to opposing counsel representing plaintiffs, e.g., Saman, Gionfriddo.

8.  As a member of the Virginia Bar, I take at least 12 hours of continuing legal education each year, with some hours dedicated to the issue of legal ethics, and most of the substantive courses dedicated to litigation and employment law.

9.  Based on my education and experiences, I consider myself knowledgeable of the ethics in billing fee paying clients and I consider myself knowledgeable in the litigation of legal fees (either on behalf of my client or defending a fee claim by an adversary).

10. Additionally, and like Mr. Melehy's claim of representing Section 1983 plaintiffs, in my twenty-three (23) years of practice, I have represented the interests of law enforcement whistleblowers, including in front of the U.S. Court of Appeals for the Fourth Circuit. The cases that I prosecuted on behalf law enforcement whistleblowers, include Andrew v. Clark, 561 F.3d 261 (4th Cir. 2009) (representation of law enforcement officer in claim of

First Amendment retaliation and due process); <u>Durham v. Jones</u>, 737 F.3d 291 (4th Cir. 2013) (affirming judgment of judgment was obtained in the amount of $1,112,200.00 against Somerset County Sheriff; defeating claims of qualified immunity in First Amendment retaliation case). Another very significant decision that I successfully handled, though not published, is <u>Lane v. Anderson</u>, 660 F. App'x 185, 196 (4th Cir. 2016) (reversing grant of 11th Amendment immunity for Baltimore City Sheriff).

11. Moreover, my work frequently casts me into the spotlight. By way of example, I have been quoted, or my work has been featured, in the following news articles: "Deputy Gets Powers Back," The Maryland Daily Record, Pg. 1A, Aug. 14, 2013; "Tip & Fight; Famed Baltimore Restaurant Sip & Bite on the Hook for Unfair Labor Practices," Baltimore City Paper ("Mobtown Beat column"), Aug. 21, 2013; "Sheriff Owes Deputy $1.1M," The Maryland Daily Record, Pg. 1A, December 11, 2013; "Pet Peeve – Outcry Over Baltimore County Animal Shelter Erupts in Free-Speech Lawsuit," Baltimore City Paper ("Mobtown Beat column"), June 4, 2014; "State Courts Can Decide Overtime Disputes, Enhance Damages," The Maryland Daily Record, Pg. 1A, Aug. 18, 2014. While not employment related, my Section 1983 work on behalf of animal advocates in Baltimore County, <u>see</u> <u>Fancy Cats Rescue Team, Inc., et al. v. Baltimore County, Md., et al.</u>, JKB 14-1073, 2015 WL 268665 (D. Md. Jan. 21, 2015) gained nationwide attention. <u>See</u> <u>http://www.chicagotribune.com/lifestyles/pets/ct-pets-shelter-silence-0129-20150129-story.html</u> ("Bredar's decision could have implications around the country.").

12. Like Mr. Melehy, I have tried many jury trials, bench trials, administrative hearings, and the like. I received a jury verdict of over $1 million dollars in the <u>Durham</u> case, <u>supra</u>, affirmed on appeal. Ms. Melehy has not indicated in her Declaration substantial experience

before juries. She indicates that she has taken over 68 depositions, which for a lawyer with 27 years of experience, is nominal, because a busy employment litigator might take that many depositions within a three (3) to four (4) year period (although depositions are becoming less common, due to the expense associated with them). I would be hard pressed to come up with a number of depositions that I have taken in 23 years of active litigation practice, but they would be measured in the hundreds. I would like to know how many wage cases that Mrs. Melehy handled prior to 2018.

13. I have been opposite the Melehys in one current case pending Trial in the U.S. District Court for the District of Columbia. Romero v. RBS Constr. Corp., No. CV 18-00179 (EGS), 2022 WL 522989, at *18 (D.D.C. Feb. 22, 2022) ("Defendants are granted summary judgment on the lack of enterprise coverage under the FLSA for both Plaintiffs"). I respect Mr. Melehy's contention that as attorney, he is motivated to assist civil rights claimants. I certainly feel the same way. However, whatever our own personal motivations might be, I am unaware of any case law that determines the amount of a "reasonable fee" upon our willingness to represent victims of employment discrimination, retaliation, etc. It may provide some background as to the lawyer, and it might explain why some lawyers engage in precedent setting litigation (which this case is decidedly not), but motivations are not a useful yardstick to determine a reasonable fee.

### *General Attorney Rates In The Locality*

14. I represent employers and employees on an hourly basis, but it is not at all clear to me that Melehy & Associates, LLC ("M&A") does so – and at what degree of frequency and what level. I am aware of no cases where M&A represented an employer in any precedent setting case, but that might have occurred (I just know of none). My clients range from

large employers of (1,000 persons or more), to small "mom & pop" employers. Without an exception, fee paying employers push back on legal fees. My fee-paying employees are generally limited to those seeking advice and consultation regarding employment severance agreements. Employees are generally unable to pay legal fees for any litigation (although my practice does not generally involve the *defense* of non-competition agreements, where such a fee arrangement is more likely). If an employee has a viable claim, I generally will agree to take the case on a contingency/statutory-fee basis. If I am not enthusiastic enough to take an employee's claim on a contingency/statutory-fee basis, I will not take the case at all – even if the employee wanted to pay me – because I do not want to represent an employee who both loses their *case* and *their money*. Few employees, facing a career-ending termination, can afford representation, including risking so much in a case with little prospect of success. For that reason, I overwhelmingly do not charge employees for employment litigation (discrimination, terminations, retaliation, adverse actions), because employees are in a poor position to financially afford what is often years of litigation. Simply put, if I am unwilling to represent them on a contingency/statutory-fee basis, I am unwilling to take their "last dollar" to pursue a cause that likely will not have a successful outcome. For this reason, there may be a relatively rare occasion I might turn down a wealthy employee client who might want to "risk it all," but I do not think these persons form a sufficiently large percentage of the "market" of potential employee clients.

15. I do believe, as a general matter, that an attorney's actual billing rate *may* be a useful starting point to evaluate a reasonable hourly rate. I also believe that opposing counsel's actual billing may be a useful starting point to evaluate a reasonable hourly rate. That said,

no one would expect a reasonable lodestar rate to be the claimed hourly rate of an attorney (or the opponent's lawyer's hourly rate).[2]

16. That said, in order to evaluate M&A's claim of fees, I would need to know more about their generalized claims that they charge $625.00/hour for Omar Melehy, for example, or $575/hour for Suvita Melehy, or $350/hour for Andrew Balashov. I would want to know about the number of such clients and the frequency in which they bill actual paying clients, and whether those invoices are heavily discounted. I have not encountered M&A doing defense (hourly) work, but perhaps they might do some. I would like to know whether Mrs. Melehy's hourly rate is for bankruptcy work.

17. I am aware of no lawyers in the Montgomery County, Maryland area that can generally command a rate of $625/hour in employment cases, especially representing individual employees. Charging $625/hour is difficult: as mentioned, individuals have been typically fired and do not have sufficient means, and businesses have many legal options as consumers. The competition for employers is fierce and obtaining that work often requires getting into "beauty contests" with law firms who have marketing prowess. My general awareness of market rates led me to conclude that well-seasoned lawyers, representing individuals and small to medium sized businesses in Montgomery County, Maryland, are between $275/hour and $475/hour. Large businesses with very established relationship who rely on "corporate" law firms, and who may be more dependent on those law firms, may charge more in hourly legal fees than $400/hour, perhaps as high (or even higher) as

---

[2]     My opinion is informed by research I have conducted in this area: "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success." City of Detroit v. Grinnell Corp., 495 F.2d 448, 470 (2d Cir. 1974), abrogated by Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000).

the amounts claimed by M&A, but I cannot say those hourly fees are reasonable. Moreover, it is my experience that fee paying clients of <u>any size</u> are extremely suspicious of the use of multiple time-keepers and aggressively review invoices when multiple time-keepers are used in a single case. To utilize a billing associate attorney, much less a billing paralegal in this billing environment, requires that the client see very clearly the value of that timekeeper (and often have developed a relationship of trust with them).[3]

18. I therefore do not agree that M&A should be awarded the requested hourly fees, because there is not sufficient information to inform my opinion as to their actual billing rates (based on generalized claims; anyone with a plaintiff's practice can set an hourly rate but how many actually pay it?) and the rates are not consistent with the heavy competition amongst lawyers and law firms for fee-paying clientele (and the quality of those seasoned lawyers competing for that work that charge between $275/hour and $475/hour).

19. I also do not agree that the hourly rate for Mr. Balashov is reasonable. I find it difficult to charge $350/hour to individuals and businesses, after 23 years of practice. (Even if you can charge $350/hour, there is usually a total limit that any legal consumer is able to spend/afford).

20. Thus, I do not believe – based on the information provided to me (ECF Doc. 112 and its attachments) that the claimed hourly rates are reasonable. Moreover, I do not believe that the hourly rates are reasonable for the additional following reasons:

---

[3] As an aside, this appears to be a growing trend among legal consumers, and it does not bode well for the economics of law firms in hiring lesser-experienced associate attorneys.

21. First, when I first began practicing as a solo lawyer, there were few lawyers in the State of Maryland taking FLSA cases.[4] Over the last twenty (20) years, the number has grown exponentially. The competition among lawyers for *Plaintiff side FLSA cases* is very substantial. There are many lawyers who take worker FLSA cases and do not otherwise take employment cases, principally because they believe the cases are easy. (This is not to say that they handle those cases well). If the goal is to achieve a fee that will incentivize counsel to take a case, query whether the competition for those cases should inform the reasonable hourly fee. Based on my review, this FLSA case could not have been more straightforward and that is true regardless of whatever the Defendants did to challenge the Plaintiffs – denials of coverage are easy to address in discovery and trial and claims of independent contractor status are relatively easy to evaluate and address in litigation.

22. In contrast, where an FLSA case is precedent setting, involve class action treatment, may face long and difficult odds, and where there are few (if any) lawyers looking to pursue such a case (lack of a "market"), then hourly rates that even *exceed* that requested by M&A would be entirely reasonable. This is because of the need for skilled legal services where no market for such service exists. A recent case from the US Court of Appeals for the Third Circuit, representing a precedent setting decision involving the rights of inmates under the FLSA, is one such clear example. *Burrell v. Staff*, 60 F.4th 25, 48 (3d Cir. 2023) ("Plaintiffs thus sufficiently allege that, while working at the Center, they were the employees of the County, the Authority, and the Corporation, acting as joint employers.").

---

[4]      Mr. Melehy's partner, Phil Zipin, Esq., was one of them – but I did not understand that Mr. Melehy concentrated on unpaid wage claims. I certainly was not familiar with Mrs. Melehy until I represented a defendant that their clients sued.

23. Other examples perhaps exist, but this very straightforward case would be highly desirable amongst the employment bar representing employees, with liability being fairly transparent. I can think of multiple law firms and lawyers that would be very eager to represent the workers in this case, many of whom would be able to speak Spanish or not need translation services from a staff member. Simply put, the competition for this case is intense whereas the competition to advance other employment cases, such as termination/retaliation cases and inmate FLSA rights – not so much. I see this case requiring no specific skill set and I would have been able to handle this case quite easily five years out of law school. I would have staffed this case with just my associate Jordan S. Liew, Esq. as the lead, providing him with minimal supervision. It is my opinion that the issues and needs of this case only required a single lawyer with Mr. Balashov's experience and education to obtain a positive result.

24. Thus, the desirability of this case (competition amongst lawyers for FLSA cases), combined with the relatively straightforward and easy issues, does not warrant substantial hourly fees to incentivize counsel to accept this case. We would have accepted this case on a statutory fee basis, if we knew that liability was fairly certain and we would have been willing to do so applying our historical rates located in Appendix B rates (found in the US District Court's Local Rules). I strongly believe that other lawyers would similarly take this case if they could be awarded similar rates located in Appendix B (found in the US District Court's Local Rules).[5] Mr. Melehy should be compensated at $475/hour; Mrs.

---

[5] I do question Appendix B's emphasis on years of experience. In my opinion, a lawyer's level of experience is not a precise correlation to their skills and hourly rates that they may charge. In this case, where is the explanation of why Andrew Balashov, with seven years of experience, could not have tried this case? The better inquiry in setting a fee is to determine what fees would be sufficient to incentivize counsel to take the case, combined with the litigation needs of the case (skill required and tenacity of counsel), measured by the degree of success.

Melehy compensated at $400/hour; and Mr. Balashov compensated at $275/hour. (Paralegals to be discussed, *infra*). These rates, while nine years out of date and deserving of judicial review, would reasonably incentivize professional counsel to undertake this representation.

25. Finally, my opinion is not altered by the Plaintiff's use of affidavits from other lawyers. I am not very familiar with these lawyers but will say very brief research on my part located Mr. Omar Melehy issuing a fee affidavit in a Brown, Goldstein & Levy case, <u>Reyazuddin v. Montgomery Cnty., Maryland</u>, No. CV DKC 11-951, 2022 WL 4608331, at *12 (D. Md. Sept. 30, 2022). To be sure, Judges in this District frequently require support in this form to be filed in support of the reasonableness of a requested hourly rate. And, there is nothing wrong with Joe Espo giving Omar Melehy a Declaration regarding the reasonableness of hourly rates (and receiving one from Mr. Melehy). Yet one Court has found this practice to be a "you-scratch-my-back, I'll-scratch-yours" approach to fee setting. <u>Gilster v. Primebank</u>, 884 F. Supp. 2d 811, 873 (N.D. Iowa 2012), <u>rev'd and remanded,</u> 747 F.3d 1007 (8th Cir. 2014) ("I do not find these mini cottage industry, "you-scratch-my-back, I'll-scratch-yours" affidavits to be helpful in evaluating hours worked or the overall reasonableness of Gilster's requested fees."). I am not persuaded by a Declaration *in some other case* that the requested hourly rates *in this case* are reasonable and that my understanding of the market for fees, including market for counsel seeking employee-side FLSA cases, warrants such high rates to be charged.

### *General Manner In Which Law Firms Litigate Cases Such As This*

26. It is my opinion that a reasonable fee in an FLSA case should be informed by the needs of the FLSA case itself, and the needs are directly related to the complexity of the issues encountered and mostly the "militant" tone set by the Defendant. In this regard, I frequently think of the colorful language of the United States Court of Appeals for the First Circuit's widely cited decision, Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 298 (1st Cir. 2001) ("After setting such a militant tone and forcing the plaintiffs to respond in kind, it seems disingenuous for the Commonwealth to castigate the plaintiffs for putting too many troops into the field" and "[w]here tag teams of attorneys are involved, fee applications should be scrutinized with especial care. Moreover, the level of scrutiny should increase in direct proportion to the number of lawyers employed.").

27. I believe it is incumbent on lawyers pressing "private attorney general" actions to not employ commercial litigation law firm techniques, if they hope to properly present a fee petition and claim that it is reasonable. That, of course, may not be avoidable in certain cases where a "militant tone" is set by an employer. Gay Officers, supra.

28. Here, based on a review – albeit somewhat brief of the records – it is quite clear to me, to a reasonable degree of professional certainty, that: (a) Plaintiffs did not need as many as nine (9) timekeepers for this matter; and (b) the manner in which M&A is litigating a straightforward FLSA case is generally excessive, unreasonable, and does not deserve the number of hours requested. Instead, it appears that every effort is made to squeeze (and even stretch) every conceivable amount of time and cost out of this litigation. I am particularly **aghast** that the Plaintiffs would seek to recover the costs of their meals and

even **snacks** (e.g., cookies, popcorn, etc. from Costco) from the Defendants.  <u>See</u> (ECF Doc. 112-11, pg. 84- 90); <u>Lowery v. Cash's Cabanas, Inc.</u>, No. 3:08-CV-186-MCR-MD, 2011 WL 679457, at *8 (N.D. Fla. Jan. 4, 2011), <u>report and recommendation adopted,</u> No. 3:08CV186 MCR MD, 2011 WL 674800 (N.D. Fla. Feb. 16, 2011) (in an FLSA case, the Court observed that "from the first client contact, counsel could or should have known that defendants comprised a relatively small regional operation rather than a corporate giant committing nationwide FLSA violations. Instead, counsel's billing practice seems to have treated the case as an ATM machine.").  I would never charge a fee paying client for my snack cookies from Costco and couldn't conceive of what might happen if I was to file such a request with <u>any</u> Judge on this Court.  A more difficult question is the legal community's billing treatment with respect to foreign language translation.  Generally speaking, if I was looking to represent a group of Spanish-speaking workers (which we have done), we have arranged for translation but not charged opponents to use a translation service.  If I was going to concentrate on wage/hour cases involving foreign-language speaking clients (which I have *not done*), particularly at the volume that M&A *apparently* does, I would either (i) hire staff who would translate; or (ii) hire an interpreter.  Either way, I would consider the cost of translation to be a cost of doing business, as I cannot conceive of representing a fee-paying foreign language speaking client and charging them for translation.  In any event, when lawyers look to charge down to the chocolate chip cookie that they purchased, the Court can be absolutely sure that the most aggressive billing arrangement is being put into place – and that this billing arrangement does not represent the legal community at large's practices – nor importantly does it require repayment in order to sufficiently incentivize counsel to take this otherwise straightforward case.

29. It is my opinion that a single lawyer, perhaps with the assistance of a single paralegal (as defined below) or an associate attorney could have handled all aspects of this case, from pleading to trial. The fact that the Defendant was represented by a solo attorney should provide some indication that the needs of this case were not so great as to demand nine (9) timekeepers.

30. The billing statements represent a veritable swarm of entries, and I have not been retained to opine on them line-by-line, nor would it necessarily be useful or helpful. <u>Fox v. Vice</u>, 563 U.S. 826, 838, 131 S. Ct. 2205, 2216, 180 L. Ed. 2d 45 (2011) ("trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.).

31. Nevertheless, the time is clearly suspect and excessive.

32. You do not need to read much to reach this conclusion. There are individuals claimed to be "paralegals" who are billing for leaving a voicemail. <u>See</u> <u>e.g.</u> (ECF Doc. 122-2, pg. 22, 10/26/2021 time entry by Maria Aguilar, "Left voicemail for Flor De Paredes regarding deposition notice from Defendant."). When "paralegals" are being instructed to bill for a voicemail, that would indicate to me that a law firm has very carefully inculcated aggressive billing practices for its staff members. There is also the issue of bill or time-padding. For example, Mr. Balashov billed for research into enterprise coverage, but M&A has ample prior experience in that issue. (Indeed, their own Complaint pleads it). Every single piece of paper, every email, every "everything" appears to be read, touched, and billed by each available timekeeper. Plaintiffs even billed large amounts of time to accumulate and present their cost and fee records. In the past, I thought that was fair to ask

for – but when we have asked to be compensated for similar time spent preparing and organizing our fees and costs *in a far more time consuming class action*, our time was rejected.    Knox v. Hooper's Crab House, Inc., No. 1:17-CV-01853-JMC, 2019 WL 6117713, at *7 (D. Md. Nov. 18, 2019) ("attorneys typically do not bill clients for time they spend revising, reorganizing, reformatting, or editing bills, and there are multiple time entries reflecting such activities over and above what review might be necessary to support a particular argument. Accordingly, those entries are disallowed").

33. This is not to say that the Defendants are entirely blameless.  There was a Trial in this case, and liability was not conceded.  The Defendants violated the FLSA, but that does not allow them to be sanctioned with unreasonable attorneys' fees and costs.  But putting the Plaintiffs through whatever burdens of proof that they have is hardly an opportunity for the vigorous level of billing that is exemplified here.  And, despite the excessive nature of the litigation, the Plaintiffs cannot claim that their position was fully vindicated here.  It is my opinion that this case does not present any greater difficulty than any other contested FLSA case.

### *The Education and Work of Legal Assistants (Paralegals)*

34. I also seek to opine on the proper use of the term "legal assistant" and/or "paralegal" and how they are used in litigation and how a Court would properly compensate them. The use of the term "paralegal" is susceptible to various meanings, and this can result in excessive fee reimbursement requests, as the case is here.

35. As an initial matter, following my graduation from the University of Maryland, College Park, I received a graduate legal assistant certificate from Georgetown University (1993). I worked as a paralegal for two prominent law firms from 1994-1996.

36. In my view, a paralegal is to an attorney as a registered nurse is to a physician. Unlike a registered nurse, a paralegal does not need to be licensed, at least in the State of Maryland.

37. Paralegal education can be either at the associate degree level, the bachelor degree level, or the graduate level (typically a graduate certificate). See https://www.americanbar.org/groups/paralegals/profession-information/educational-information-for-paralegals/

38. My graduate paralegal studies were very similar to my first year of law school (the course titles, the reading of case law, the nature of the "Socratic" instruction, and the intensity). Indeed, my legal research and writing course was taught at the Georgetown Law Center by one of their instructors and it was an identical course. Like law students, we were trained to write appellate briefs.

39. It is my understanding that this same training occurs throughout ABA-approved paralegal programs. As such, a paralegal possesses the skills of a first year law student upon graduation and after several years, paralegals can possess the skills equal (or in many cases superior) to a first year associate.

40. But the use of the term "paralegal" or "legal assistant" are susceptible to abuse. A paralegal is not every member of a law firm who is not a lawyer. Just like registered nurses are more skilled than licensed practical nurses or nursing assistants, a paralegal is not a fancy title for a legal secretary. But, these issues may be confusing because there is no licensing requirement for paralegals and some lawyers believe that a paralegal can develop paralegal

skills "on the job." I do not agree, and in my opinion, I believe that paralegal education is a prerequisite to being identified as a paralegal.[6]

41. In my review of the paralegals that have been billed in this matter, I see only one that has completed paralegal education (Sarah Lorber is the only "paralegal" who has a Certificate in Paralegal Studies from Framingham University). (ECF Doc. 112-3, ¶23). Accordingly, in my opinion, there is only one paralegal timekeeper.

42. In addition, I do not see paralegal work being done. I see secretarial time being billed and even worse, being generally billed at the highest possible rates under Appendix B.

43. I would not bill my clients at $185/hour for high-school or undergraduate educated persons working as paralegals. The work of these individuals generally appears very junior and very unskilled, and there is staff turnover (the impact of which is not readily explained). None of these paralegals are doing paralegal tasks, such as drafting basic discovery or pleadings. Knox v. Hooper's Crab House, Inc., No. 1:17-CV-01853-JMC, 2019 WL 6117713, at *5 (D. Md. Nov. 18, 2019) ("Fees for work performed by paralegals are generally recoverable, *but only to the extent that they reflect tasks traditionally performed by an attorney* and for which the attorney would customarily charge the client.").

44. Moreover, training for individuals, whether or not paralegal, should not be at the expense of an opponent.

45. To be sure, M&A appears to be making an effort to push down work, although they also appear to push that work *wide*. And, it could be said that some of the more ministerial tasks that was done by staff of M&A might have had to have been done by lawyers, in the absence of staff members. And unless the work is secretarial, there is nothing wrong with

---

[6] One could possibly do "paralegal-like" work, but a paralegal requires some paralegal training.

lawyers handling lesser-skilled tasks that might be assigned to more junior billers.  Brown v. Starrett City Assocs., No. 09-CV-3282 JBW, 2011 WL 5118438, at *5 n. 7 (E.D.N.Y. Oct. 27, 2011) ("It is inevitable in smaller law firms that more experienced attorneys must complete work that would be completed by a junior associate at a larger firm," and, in such circumstances, the hourly rate of an experienced attorney need not be reduced "simply because he performed legal research that could have been completed by a junior associate at a larger firm.") (quoting Serin v. N. Leasing Sys., Inc., No. 7:06-CV-1625, 2011 WL 1467560, at *11 (S.D.N.Y. Apr. 19, 2011), aff'd, 501 F. App'x 39 (2d Cir. 2012)).

46. In Knox, supra, we had an FLSA class action on behalf of 50 employees.  Inevitably, some of the work was paralegal-level work that we lawyers handled.  We asked the Court to award attorney time at $150/hour – not even the highest rate, as requested by M&A for non-lawyers.  The Court acknowledged our efforts at billing discretion, but still only awarded us $95/hour.  Knox v. Hooper's Crab House, Inc., No. 1:17-CV-01853-JMC, 2019 WL 6117713, at *5 (D. Md. Nov. 18, 2019) ("Plaintiffs' Counsel articulates that it was not required to delegate such tasks as ECF filings and has exercised billing discretion by charging these tasks at a lower rate. (ECF No. 166 at 10). The Court acknowledges that in certain cases, such tasks were billed at a paralegal rate (albeit $150/hour, not the $95/hour now ordered). However, after extensive review of the time entries, the Court agrees that some reclassification is justified, and includes those reclassifications in its order below. Further, in some cases, the Court has excluded the time sought altogether where purely administrative or clerical.").  The Court's approach in Knox informs my opinion herein, and I believe that to the extent that any of the claimed paralegal time is compensable, it

should be awarded at a lower rate.[7] There is insufficient information to support the highest rate claimed, based on the education and experience and skill-level of the work required of the time-keepers.

### *Impression of Appropriate Fee In This Case*

47. I do not believe that this case was properly staffed. I do not believe that this case required three lawyers, five (5) "paralegals" and a legal assistant, to vindicate the Plaintiffs' FLSA rights.

48. I do not understand why both Mr. and Mrs. Melehy needed to be present at Trial.

49. I cannot fathom how a law firm would bill a fee-paying client for snacks, and similarly cannot fathom how a firm proceeding on a statutory fee basis could bill its opponent for snacks. I think this speaks volumes as to the request overall. This is not at all normal and customary. In the course of representing businesses and some individuals, I include and bill to my clients any disbursements representing typical costs incurred in this case (e.g., filing fees, postage, copies, conference calls, court reporters, experts, etc.). We do not bill for WESTLAW (although I acknowledge that some law firms do engage in aggressively billing for that cost) and certainly not for snacks.

50. Time does not permit me to "green-eyeshade" every aspect of the Plaintiffs' fee and cost requests, i.e., the requested hourly rates and number of reasonable hours. However, I believe that a fee of $150,000.00, would more than incentivize counsel to have taken this case and reward them for the time that it would have *reasonably* taken to prosecute this

---

[7]     As I do not employ paralegals, I do not have sufficient basis to render an opinion on their market rates (aside from witnessing Law Firm's seeking reimbursement for experienced bankruptcy paralegals). That said, $95/hour for an entry level paralegal with no paralegal training, performing routine correspondence or review/assembly work would, in my view, be on the lower end of the market rates, potentially too low. By citing Knox, I certainly do not intend to suggest that the Court was correct that attorneys performing paralegal tasks should be paid $95/hour.

case. I believe that my associate Jordan S. Liew could have handled this case through Trial and the total fees would be well less than $150,000.00. I would leave it to the Court to determine what adjustment, if any, would occur based on the degree of success here, as I do not believe that is the proper subject of an expert opinion who did not witness all aspects of this case, including trial performance of counsel.

**AFFIANT FURTHER SAYETH NAUGHT**

I solemnly affirm under the penalties of perjury that the contents of the foregoing affidavit are true and correct.

Howard B. Hoffman, Esq.
May 3, 2023